ACCEPTED
03-14-00667-CV
4324209
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/2/2015 8:23:31 AM
JEFFREY D. KYLE
CLERK

## No. 03-14-00667-CV

IN THE

THIRD COURT OF APPEALS

AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/2/2015 8:23:31 AM
JEFFREY D. KYLE
Clerk

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY,
Appellant,
v.
EXXON MOBIL CORPORATION, EXXONMOBIL OIL CORPORATION,
PENNZOIL-QUAKER STATE COMPANY AND SHELL OIL COMPANY,
Appellees.

Appealed from the 345th Judicial District Court of
Travis County, Texas

## APPELLANT'S REPLY BRIEF

KEN PAXTON
    Attorney General of Texas
CHARLES E. ROY
    First Assistant Attorney
    General
JAMES E. DAVIS
    Deputy Attorney General for
    Civil Litigation

JON NIERMANN
    Chief, Environmental
    Protection Division
THOMAS H. EDWARDS
    Lead Counsel
    Assistant Attorney General
    Tex. Bar No. 06461800
    Thomas.Edwards@TexasAttorney
General.gov
    *(cont'd)*

## APPELLANT REQUESTS ORAL ARGUMENT

CRAIG J. PRITZLAFF
    Assistant Attorney General
    Tex. Bar No. 24046658
Craig.Pritzlaff@TexasAttorney
General.gov

LINDA SECORD
    Assistant Attorney General
    Tex. Bar No. 17973400
Linda.Secord@TexasAttorney
General.gov

Office of the Attorney General
Environmental Protection
    Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

ATTORNEYS FOR APPELLANT,
TEXAS COMMISSION ON
ENVIRONMENTAL QUALITY

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vi-

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. STATEMENTS OF FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   A. Appellant's Statement of Facts is not Controverted. . . . . . . . . . . . . 1
   B. Appellees' Statement of Facts Focuses on Irrelevancies. . . . . . . . . . 1

II. REPLY TO APPELLEES' SUMMARY OF THE ARGUMENT.. . . . . . . . 3

III. REPLY TO APPELLEES' STATEMENT OF JURISDICTION. . . . . . . . 3

IV. REPLY CONCERNING ISSUE ONE. . . . . . . . . . . . . . . . . . . . . . . . 5
   A. The plain language of § 361.322 limits that section to appeals
      of § 361.272 orders.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   B. The language and structure of the SWDA create separate
      orders and separate appeals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      1. *The current language of the statute correctly reflects the*
         *intent of the Legislature.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      2. *The pre-codification statutory history shows separate*
         *orders and separate appeals.* . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   C. Cross-references between subchapters do not merge the
      ordering sections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      1. *Section 361.188(b) merely incorporates provisions from*
         *other subchapters into § 361.188 orders.* . . . . . . . . . . . . . . . . . . 11
      2. *Section 361.322(e) does not merge the orders.* . . . . . . . . . . . . . . 11
   D. The term "person affected" does not limit § 361.321 to permit
      appeals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      1. *The definition of "person affected" is broad enough to*
         *cover persons named in Superfund orders.* . . . . . . . . . . . . . . . . 13

2.  Under Appellees' interpretation, there might be no appeal for § 361.188 orders. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

3.  Under Appellees' interpretation, only permit matters and § 361.272 orders could be appealed. . . . . . . . . . . . . . . . . . . . . . . . 15

E.  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.  REPLY CONCERNING ISSUE TWO. . . . . . . . . . . . . . . . . . . . . . . . . . . 16

A.  The content of the Order shows that it was issued under Subchapter F. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

B.  Contrary statements did not change the essential nature of the Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

C.  The State's prior pleadings did not waive, agree to, or confer jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1.  The State's pleadings did not create waivers of sovereign immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

2.  Prior judgments and motions did not create waivers of sovereign immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

3.  The State did not seek to obtain the advantages of a § 361.272 order by saying that it issued the Order under both sections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

D.  Section 361.322(e) does not merge § 361.188 and § 361.272 orders. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

E.  Reviewing this Order under § 361.322 would make Subchapter F redundant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

F.  The Order was properly issued under § 361.188. . . . . . . . . . . . . . . 28

G.  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

VI.  REPLY CONCERNING ISSUE THREE. . . . . . . . . . . . . . . . . . . . . . . . . 29

A.  The constitutionality of § 361.322 is not at issue. . . . . . . . . . . . . . . 31

1.  Tex. Gov't Code § 2001.174 restates existing law. . . . . . . . . . . . 31

2. The Legislature's decision to allow the review of this § 361.188 order under the "invalid, arbitrary or unreasonable" standard is consistent with the emerging law in this area. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

B. The Texas Supreme Court's decision in *City of Waco* is pertinent to this SWDA appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . 34

1. *City of Waco did not merely make a "threshhold determination"*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

C. The "invalid, arbitrary or unreasonable" standard of § 361.321(e) equates to the standard of Tex. Gov't Code § 2001.174. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

1. *Tex. Gov't Code § 2001.174 was intended to be a restatement of the law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

2. *Review under the substantial evidence standard does not require a contested case hearing.*. . . . . . . . . . . . . . . . . . . . 40

VII. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

VIII. PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

APPENDIX

# INDEX OF AUTHORITIES

## CASES

*Berry v. Tex. Democratic Party*, 449 S.W.3d 633 (Tex. App.—Austin 2014, no pet. h.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 33

*City of Waco v. Tex. Comm'n on Envtl. Quality*, 346 S.W.3d 781 (Tex. App.—Austin 2011), *rev'd*, 413 S.W.3d 409 (Tex. 2013).. . . . . . . . 19, 34, 40

*Commercial Life Ins. Co. v. Tex. State Bd. of Ins.*, 808 S.W.2d 552 (Tex. App.—Austin 1991, writ denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Comptroller v. Landsfeld,* 352 S.W.3d 171 (Tex. App.—Fort Worth 2011, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401 (Tex. 1997). . . . . . . . . . . . . . . . . . . 23

*G.E. Am. Commc'n v. Galveston Cent. Appraisal Dist.*, 979 S.W.2d 761 (Tex. App.—Houston [14th Dist.] 1998, no pet.). . . . . . . . . . . . . . . . . . . 41

*Gerst v. Nixon,* 411 S.W.2d 350 (Tex.1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Gilder v. Meno*, 926 S.W.2d 357 (Tex. App.—Austin 1996, writ denied). . . . 41

*Hosner v. DeYoung*, 1 Tex. 764 (1847). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Macias v. Rylander*, 995 S.W.2d 829 (Tex. App.—Austin 1999, no pet.). . . . 32

*McLane Co., Inc. v. Strayhorn*, 148 S.W.3d 644 (Tex. App.—Austin 2004, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Metzger v. Metzger,* No. 01-04-00893-CV, 2007 WL 1633445 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (mem. op.). . . . . . . . . . . [22](#)

*Mid-Century Ins. Co. of Tex. v. Kidd,* 997 S.W.2d 265 (Tex. 1999). . . . . . . . . . . [6](#)

*Prairie View A&M Univ. v. Chatha,* 381 S.W.3d 500 (Tex. 2012). . . . . . . . . . . [33](#)

*Ramirez v. Tex. State Bd. of Med. Exam'rs,* 927 S.W.2d 770 (Tex. App.—Austin 1996, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [40](#), [41](#)

*S. Canal Co. v. State Bd. of Water Eng'rs,* 318 S.W.2d 619 (Tex. 1958)). . . . . . [34](#)

*Saudi v. Brieven,* 176 S.W.3d 108 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [22](#)

*Sierra Club v. Tex. Comm'n on Envtl. Quality,* No. 03–11–00102–CV, 2014 WL 7463875 (Tex. App.—Austin Dec. 30, 2014, no pet. h.). . . . . . . . . . [38](#)

*Smith v. Houston Chem. Servs., Inc.,* 872 S.W.2d 252 (Tex. App.—Austin 1994, writ denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [42](#), [43](#)

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440 (Tex. 1993). . . . . . . [15](#)

*Tex. Comm'n on Envtl. Quality v. City of Waco,* 413 S.W.3d 409 (Tex. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [34](#)-[39](#), [41](#)

*Tex. Comm'n on Envtl. Quality v. Kelsoe,* 286 S.W.3d 91 (Tex. App.—Austin 2009, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [42](#), [43](#)

*Tex. Comm'n on Envtl. Quality v. Sierra Club,* No. 03-12-00335-CV, 2014 WL 7464085 (Tex. App.—Austin Dec. 30, 2014, no pet. h.). . . . . . . . [36](#)-[38](#)

*Tex. Dep't of Ins. v. State Farm Lloyds*, 260 S.W.3d 233 (Tex. App.—
    Austin 2008, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Tex. Natural Res. Conserv. Comm'n v. IT-Davy*, 74 S.W.3d 849 (Tex. 2002)
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Tex. Water Comm'n v. Lindsey*, 855 S.W.2d 750 (Tex. App.—Beaumont
    1993, writ denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006). . . . . . . . . . . . . . . . . . . . . 33

*Tourneau Houston, Inc. v. Harris Cnty. Appraisal Dist.*, 24 S.W.3d 907
    (Tex. App.—Houston [1st Dist.] 2000, no pet.. . . . . . . . . . . . . . . . . . . . 22

*United Copper Indus., Inc. v. Grissom*, 17 S.W.3d 797 (Tex. App.—Austin
    2000, pet. dism'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400 (Tex. 2007). . . . . . . . . . . . 6

*Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351 (Tex. 2005). . . . . . . . . . . . . 21

## STATUTES

Act of June 6, 1990, 71st Leg., 6th C.S., ch. 10, art. 2, § 29, 1990 Tex. Gen.
    Laws 47, 66-80 (amended 1997) (current version at Tex. Health &
    Safety Code §§ 361.181-.202). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws
    2230, 2616-64. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Act of May 24, 1989, 71st Leg., R.S., ch. 703, § 5, 1989 Tex. Gen. Laws
    3212, 3218-32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tex. Gov't Code § 2001.001-.902. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Tex. Gov't Code § 2001.174. . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32, 39, 42

Tex. Gov't Code § 311.034. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 33

Tex. Health & Safety Code ch. 361, subch. F. . 1, 7, 8, 10-12, 16-18, 26, 28, 29

Tex. Health & Safety Code ch. 361, subch. I, K and L. . . . . . . . . . . . . . 5, 11, 17

Tex. Health & Safety Code § 361.003. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Health & Safety Code § 361.003(24). . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Tex. Health & Safety Code § 361.188. . . . . 3, 8, 10-12, 14-19, 21, 25, 26, 28-30, 32, 33, 44

Tex. Health & Safety Code § 361.188(b). . . . . . . . . . . . . . . . . 5, 11, 17, 18, 25

Tex. Health & Safety Code § 361.252. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. Health & Safety Code § 361.271. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Health & Safety Code § 361.272. . 6, 8, 10-12, 14-17, 19-21, 25, 26, 28-30, 44

Tex. Health & Safety Code § 361.274. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Tex. Health & Safety Code § 361.276. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Tex. Health & Safety Code § 361.321. . . . . . . . . 4, 6, 9-16, 21, 24, 29, 32, 42-44

Tex. Health & Safety Code § 361.321(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Tex. Health & Safety Code § 361.321(c).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tex. Health & Safety Code § 361.321(e). . . . . . . . . . . . . . . . . . 6, 25, 32, 39, 42

Tex. Health & Safety Code § 361.322. . . . . . 4-6, 8, 10, 11, 14, 17, 24, 26, 30, 31

Tex. Health & Safety Code § 361.322(a). . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Tex. Health & Safety Code § 361.322(e). . . . . . . . . . . . . . . . . . 6, 10-12, 25, 26

Tex. Health & Safety Code § 361.322(g). . . . . . . . . . . . . . . . . . . . . . . . . . 6, 31

Tex. Health & Safety Code § 361.322(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tex. Health & Safety Code §§ 361.181-.188.. . . . . . . . . . . . . . . . . . . 2, 7, 16, 26

Tex. Rev. Civ. Stat. Ann. art. 4477-7, § 13. . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Tex. Rev. Civ. Stat. Ann. art. 4477-7, § 8(g).. . . . . . . . . . . . . . . . . . . . . . . . . 10

Tex. Rev. Civ. Stat. Ann. art. 4477-7, § 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tex. Rev. Civ. Stat. Ann. art. 4477-7, § 9(b).. . . . . . . . . . . . . . . . . . . . . . . 8, 10

Tex. Rev. Civ. Stat. Ann. art. 4477-7, § 9(c).. . . . . . . . . . . . . . . . . . . . . . . . . 10

Texas Solid Waste Disposal Act, Tex. Health & Safety Code § 361.001-
    .966 (West 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## RULES

Tex. R. App. P. 38.1(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# ARGUMENT AND AUTHORITIES

This case involves issues of first impression under the Texas Solid Waste Disposal Act, Tex. Health & Safety Code § 361.001-.966 (West 2010) (hereinafter "SWDA").

## I.    STATEMENTS OF FACTS

### A.    Appellant's Statement of Facts is not Controverted

Appellant showed the steps the TCEQ took in investigating, listing, preparing to remediate the Voda Site and issuing the Order (Appellant's Br. 1-5), in accordance with Subchapter F of the SWDA. (Appellant's Br. 23). Appellees do not contradict these facts, and they must be accepted as true. Tex. R. App. P. 38.1(g).

### B.    Appellees' Statement of Facts Focuses on Irrelevancies

Appellees focus on three areas in their Statement of Facts. Although none are relevant to this appeal, the State will address them to clarify the record.

Appellees describe response actions by the U.S. Environmental Protec-

1

tion Agency ("EPA") at the Voda Site, with the implication that the TCEQ need not have taken any further remedial action. (Appellees Br. 1-3.) However, Appellees ignore the fact that EPA contemplated a subsequent State-led investigation and remedial action to address soil contamination at depth, and groundwater contamination on and migrating off of the Site. (AR 61923-24, AR 943, AR 59594-60117 and AR 60253-83.)

Second, Appellees complain that they lacked the opportunity to be heard before the Commission. (Appellees Br. 3-5.)  Appellees had many opportunities to present information to the TCEQ during the 15-year Superfund process, *see* Tex. Health & Safety Code §§ 361.181-.188, and they submitted detailed input. (*See, e.g.,* CR 910-12, with references to the administrative record.)  Appellees chose not to appear at the Commission meeting regarding approval of the Order (AR 50382; video file), and not to join Luminant's Motion for Rehearing (AR 50864-89).

Finally, Appellees address the subsequent history of the appeal in the District Court, with the implication that the TCEQ's pleadings and state-

ments there are relevant to the issue of subject-matter jurisdiction. (Appellees Br. 6-8.) They are not relevant, however, because the TCEQ cannot confer jurisdiction by such statements. (*See infra* at sec. <u>V.C.1</u>.)

## II. REPLY TO APPELLEES' SUMMARY OF THE ARGUMENT

Appellees make various conclusory statements, none of which deny that the Order was issued under Subchapter F procedures and contained the "laundry list" of items required of a § 361.188 order. (Appellees' Br. 9-11.)

Appellees assert that, "Potentially responsible parties are entitled to their day in court.…" (Appellees' Br. 11.) This, together with statements in their Statement of Facts, suggests a Due Process argument. But this interlocutory appeal is only about subject-matter jurisdiction. The District Court can consider issues of equity and Due Process after this Court determines subject-matter jurisdiction.

## III. REPLY TO APPELLEES' STATEMENT OF JURISDICTION

Appellees' argument rests on an inference that a waiver of sovereign

immunity anywhere in a statute applies to all causes of action (or, in this case, appellate provisions) in the statute. To the contrary, waivers of sovereign immunity are strictly construed and must be expressed in clear and unequivocal terms. *See Berry v. Tex. Democratic Party*, 449 S.W.3d 633, 640 (Tex. App.—Austin 2014, no pet. h.) (citations omitted); *see also* Tex. Gov't Code § 311.034. Thus, a waiver limited to one action is inapplicable to other actions, even in the same statute.

Appellees argue that, "What the parties actually dispute is precisely what evidence the trial court may consider in reviewing the Order.… The State's plea is not a challenge to the trial court's subject matter jurisdiction.…" (Appellees' Br. 11-12.) To the contrary, the State is asserting that, for this type of order, the District Court has subject-matter jurisdiction under § 361.321 but not under § 361.322. (Appellant's Br. 32-38.) This is a plea to the jurisdiction, therefore, not merely a dispute over the evidence. Essentially, this Court is being asked to decide whether the District Court will exercise its original fact-finding jurisdiction or its appellate jurisdiction

4

over the Order.

Appellees further assert that, "the State cannot maintain a plea to the jurisdiction in this case because its own pleadings defeat its claim." (Appellees' Br. 12.) However, the State's pleadings cannot confer jurisdiction by consent, waiver or estoppel. (*See* sec. V.C.1, *infra.*)

## IV. REPLY CONCERNING ISSUE ONE

Appellees attempt to show that the two types of order, despite being in different sections of the statute and having different elements and procedures, are "not mutually exclusive." (Appellees' Br. 14.) They reason that "both types of orders share elements outlined in Subchapters I, K, and L of the Act, including but not limited to: … [a]n appellate provision. *Id.* at § 361.322." (Appellees' Br. 14-15.) To the contrary, while the orders have some elements in common (due to § 361.188(b)), they cannot both be appealed under § 361.322.

### A. The plain language of § 361.322 limits that section to appeals of § 361.272 orders

The plain language of the statute says that § 361.322 is limited to the

appeals of § 361.272 orders: "Any person subject to an administrative order *under Section 361.272* may appeal the order by filing a petition.…" SWDA § 361.322(a) (emphasis added). *See also id.* §§ 361.322(g) and (h) (referring to "the administrative order.")

Conversely, § 361.321 applies generally to a "ruling, order, decision, or other act of the commission," but contains the following exclusion: "Except as provided by Section 361.322(e) *[read 361.322(g)]*, in an appeal from an action of the commission … the issue is whether the action is invalid, arbitrary, or unreasonable." *Id.* § 361.321(e). (*See* Appellant's Br. 13 concerning the outdated reference to § 361.322(e).) Thus, the two appellate sections are separate and have different standards of review.

The fact that § 361.322 refers to § 361.272 orders, and does not mention any others, indicates that the Legislature did not intend for it to apply to any other type of order. *See United Servs. Auto. Ass'n v. Brite,* 215 S.W.3d 400, 403 (Tex. 2007), citing *Mid-Century Ins. Co. of Tex. v. Kidd,* 997 S.W.2d 265, 273–74 (Tex. 1999) (referring to the "doctrine of *expressio unius est*

*exclusio alterius*—the inclusion of a specific limitation excludes all others—a statutory interpretation tool of some use under [certain] circumstances."). Each appellate section stands alone.

### B. The language and structure of the SWDA create separate orders and separate appeals

#### 1. *The current language of the statute correctly reflects the intent of the Legislature*

Appellees refer to the statutory history in an attempt to show that both types of order have always been subject to the same appellate standards. (Appellees' Br. 15-29.) One problem with this analysis is that what is now Subchapter F, including §§ 361.181-.188, was substantially rewritten in 1989-90, and the appellate cross-references were codified at the same time.

The Legislature codified the SWDA in the Regular Session of 1989. *See* Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2616-64. (App. 1:2616-64.) In that same session, it enacted amendments that were not codified. *See* Act of May 24, 1989, 71st Leg., R.S., ch. 703, § 5, 1989 Tex. Gen. Laws 3212, 3218-32. (App. 2:3218-32.) Those amendments

7

included a substantial rewriting of § 13 (now Subchapter F), to the extent that they practically created a new program. *Id.* (App. 2:3218-32.)  The next year, in the Sixth Called Session, the Legislature codified the new amendments. *See* Act of June 6, 1990, 71st Leg., 6th C.S., ch. 10, art. 2, § 29, 1990 Tex. Gen. Laws 47, 66-80 (amended 1997) (current version at Tex. Health & Safety Code §§ 361.181-.202). (App. 3:66-80.)

In the same act that codified the new Subchapter F, the Legislature also incorporated the uncodified amendment to § 9(b) (now § 361.322(a)) and included this reference: "Any person subject to an administrative order under Section 361.272 may appeal the order by filing a petition.…" *Id.* § 28, 1990 Tex. Gen. Laws 64-65 (current version at Tex. Health & Safety Code § 361.322(a)). (App. 3:64-65.)  They also amended § 361.321(c) with the cross-reference, "[e]xcept as provided by Section 361.322(a)...." *Id.* at 64 (current version at Tex. Health & Safety Code § 361.321(c)).

If the Legislature had wanted § 361.188 orders to be appealed under § 361.322, this was the perfect opportunity to say so. But they did not, and

instead left § 361.188 orders to be appealed under § 361.321, the general appellate section. The relevant language has not changed in the intervening 25 years.

The legislative intent is clear from the text, and the statutory history does not show a different intent before codification. The plain language shows that each separate ordering section has an independent appellate section.

2. *The pre-codification statutory history shows separate orders and separate appeals*

Even if there were some ambiguity in the current text, and a review of the statutory history were necessary, that history does not support the conclusions Appellees attempt to draw.

First, Appellees provide an extensive statutory history (Appellees' Br. 13-22), only to draw the same conclusions, as to the pre-codification statute, that they drew regarding the current statute (*compare* Appellees' Br. 15 *with id.* at 21). That history does not alter any conclusions about the meaning of the statute.

For example, after the 1985 amendments, the "preponderance of the evidence" clause of § 9(c) (now § 361.322(e)) was made applicable only to § 8(g) (now § 361.272) orders; the "invalid, arbitrary or unreasonable" standard of § 9 (now § 361.321) applied to all the rest (e.g., to § 361.188). That language carries forward to the present statute. In other words, the codifiers correctly carried forward the prior meaning to the current statute.

Appellees acknowledge that the 1989 amendments limited the applicability of § 9(b) (now § 361.322) appeals to "any person subject to an administrative order under 8(g)" (now § 361.272). (Appellees' Br. 21.) The same bill, they acknowledge, allowed the TCEQ to continue the remedial action program under § 13 (now Subchapter F), unless enjoined, and added the other provisions now found at § 361.322. (Appellees' Br. 22.) However, they do not acknowledge the obvious conclusion: that the pre-codified statute, like the current version, had separate appellate provisions for the different types of orders.

## C. Cross-references between subchapters do not merge the ordering sections

### 1. Section 361.188(b) merely incorporates provisions from other subchapters into § 361.188 orders

Appellees argue that § 361.188 and § 361.272 orders are not mutually exclusive, although they appear in different sections and use different language. (Appellees' Br. 23.) One reason, they say, is that § 361.188(b) incorporates the provisions of Subchapters I, K and L into § 361.188 orders, "including the same appellate provisions." (Appellees' Br. 23-24.) This is illogical, however, since *both* §§ 361.321 and 361.322 are in Subchapter K—and both cannot apply to the same § 361.188 order. The difference is that § 361.322 appeals are expressly limited to § 361.272 orders, while § 361.321 appeals are applicable generally.

### 2. Section 361.322(e) does not merge the orders

Appellees point out that § 361.322(e) allows the Subchapter F process to continue even after a § 361.272 order is appealed (unless enjoined). (Appellees' Br. 24.) However, this clause does not make the orders any less

11

separate or distinct.

Section 361.272 orders are useful in certain circumstances:

(1)   When an order is needed quickly to address exigent circumstances, and there is insufficient time to complete the exhaustive Subchapter F procedures;

(2)   When the remedy is fairly obvious and straightforward (such as the removal of all contaminated material), because a full-blown remedial investigation would be unnecessary; and

(3)   When a stopgap is needed initially to stabilize the site while the full Superfund process is carried out under Subchapter F.

Section 361.322(e) is designed to facilitate option (3). The fact that the TCEQ can conduct a full investigation and issue a § 361.188 order, while a § 361.272 order is on appeal, does not make the orders any less separate or distinct. In fact, it shows that they are separate orders.

## D.   The term "person affected" does not limit § 361.321 to permit appeals

Appellees assert that the SWDA appellate provisions distinguish between Superfund and permitting orders, not between different kinds of Superfund orders. (Appellees' Br. 25.)  The reason, they say, is that the

12

term "person affected" in § 361.321 limits that section to permitting appeals. (Appellees' Br. 25-27.) They say, "[b]oth its statutory history and its current role in the SWDA demonstrate clear legislative intent that § 361.321 is the appellate provision for the permitting program, not the Superfund program." (Appellees' Br. 27, citations omitted.)

To the contrary, while it is undoubtedly true that the definition of "person affected" in § 361.003(24) applies to permitting decisions, it does not follow that the same term in § 361.321 limits that section to the appeals of permit matters.

1. *The definition of "person affected" is broad enough to cover persons named in Superfund orders*

A person named in a Superfund order is affected by the order. That person is required to be responsible for a share of the response costs incurred at the site, and thus has an economic interest in the outcome. That person can "demonstrate[] that the person has suffered or will suffer actual injury or economic damage," within the meaning of *id.* § 361.003(24). Likewise, the person named in the Superfund order was determined to

have done business at the site (*see* definition of "Person Responsible for Solid Waste" at *id.* § 361.271), and was therefore "doing business … in the county" within the meaning of *id.* § 361.003(24)(B).

Definitions in the SWDA apply "unless the context requires a different definition." *Id.* § 361.003. In context, this definition is broad enough to encompass persons named in Superfund orders, for purposes of appeals under § 361.321.

### 2. *Under Appellees' interpretation, there might be no appeal for § 361.188 orders*

Appeals under § 361.322 are limited, by the plain language of that section, to orders issued under § 361.272.  If § 361.321 were restricted to non-Superfund matters, then there would be no clear, unambiguous waiver of immunity for § 361.188 orders. Since this Order was procedurally and substantively a § 361.188 order (*see* Issue Two, sec. V, *infra*), Appellees would have no appeal in the present case.

The TCEQ does not argue that the Legislature intended for there to be no appeal for a § 361.188 order. The most reasonable interpretation is that

"persons affected," in the case of a § 361.188 order, is meant to include the persons named in the order.

      3.     *Under Appellees' interpretation, only permit matters and § 361.272 orders could be appealed*

Appellees undoubtedly overstate their argument in saying that "§ 361.321 is the appellate provision for the permitting program… ." (Appellees' Br. 27.) In fact, § 361.321 is the general appellate provision for the SWDA.

Matters other than permitting decisions have been appealed under § 361.321. *See, e.g., Tex. Water Comm'n v. Lindsey*, 855 S.W.2d 750, 752 (Tex. App.—Beaumont 1993, writ denied) (appeal of an agency letter determining PRP status; appeal may be taken under § 361.321 and venue is proper in Travis County.) *See also, Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 441, n.2 at 442, 450 (Tex. 1993) (a constitutional review of administrative penalty sections in several statutes, including the then-existing § 361.252 of the SWDA; assuming that such orders could be appealed, but holding that prepayment procedures violated the Open

15

Courts doctrine.)

## E. Conclusion

The Legislature contemplated, considered, and enacted two different types of administrative orders for Superfund actions. Section 361.188 orders are issued when the TCEQ completes the procedures set forth in Subchapter F, whereas § 361.272 orders are reserved for situations where circumstances demand quicker action. Each order has its own independent mechanism for appeal. Appellees' arguments that the appellate remedies set forth in § 361.321 are restricted to non-Superfund actions are erroneous.

## V. REPLY CONCERNING ISSUE TWO

Appellees' response to Issue Two is notable for what it does not say. It does not assert that the TCEQ failed to do any of the things required under §§ 361.181-.188, or that the Order is missing any of the "laundry list" of requirements in § 361.188. It does not contradict the facts the TCEQ set out in this regard (Appellant's Br. 1-5). The TCEQ asserts that this is a § 361.188 order because it was issued in accordance with all the procedural and

substantive requirements of Subchapter F of the SWDA. Appellees do not controvert this argument.

Appellees' argument is otherwise, and somewhat contradictory. First, they assert that the Order "was issued under both § 361.188 and § 361.272 of the SWDA." (Appellees' Br. 29.) Then they say, "the AO for the Voda Site was issued under § 361.272, making application of § 361.322 appropriate for this Order." (Appellees' Br. 30.)

Their reasoning depends on two arguments: First, that the TCEQ made various statements, both at the agency level and before the District Court, to the effect that the Order was issued under both sections. Second, they say that certain provisions of Subchapters I, K and L have been incorporated into the Order pursuant to § 361.188(b), and this converts the Order to a § 361.272 order. However, neither of these arguments challenges the essential nature of the Order or affects the subject-matter jurisdiction of the courts.

## A. The content of the Order shows that it was issued under Subchapter F

Appellees assert that several parts of the Order incorporate authorities from subchapters other that Subchapter F. (Appellees' Br. 30.) These include the definition of "solid waste" as well as "hazardous substances" among the materials at the Site, the definition of "responsible parties," the divisibility of the release, the list of Chemicals of Concern, etc. (Appellees' Br. 30-32.) They conclude that "these provisions flatly contradict the State's position that the AO was issued solely under § 361.188." (Appellees' Br. 31.)

This argument, however, ignores the language of § 361.188(b)—that "[t]he provisions in Subchapters I, K, and L relating to administrative orders apply to orders issued under this section." SWDA § 361.188(b). Appellees have admitted that this clause "is open ended and inclusive, and demonstrates that the Legislature intended all 'administrative orders' of the SWDA to share common procedural attributes.…" (Appellees' Br. 24.) The fact that § 361.188(b) incorporates elements from other subchapters

18

does not turn the Order into a § 361.272 order.

## B. Contrary statements did not change the essential nature of the Order

Appellees refer to various statements by the TCEQ to the effect that the Order was issued under both sections. These statements all relate back to a boilerplate clause in the preamble to the Order itself, which said that the Executive Director's requested relief included a Superfund order "as authorized by Sections 361.188 and 361.272 of the Act." (AR 50383.)

Prior to the Supreme Court's opinion in *City of Waco,* Texas case law held that, "substantial-evidence review on an agency record is simply 'not possible' absent the opportunity to develop that record through a contested-case or adjudicative hearing." *City of Waco v. Tex. Comm'n on Envtl. Quality,* 346 S.W.3d 781, 818 (Tex. App.—Austin 2011), *rev'd,* 413 S.W.3d 409 (Tex. 2013). The parties believed that, if the matter were appealed, some judicial fact-finding was inevitable in the trial court. The agenda notice and the statement by the staff attorney simply reflected the boiler-plate in the preamble to the Order, and were not statements about the

anticipated standard of review on appeal. In presenting the Order to the Commission, the staff attorney summarized the actions the TCEQ took in compliance with the Subchapter F program. (AR 50382; video file, oral statement at 1:18.)

The TCEQ's statement in its Reply to Luminant's Motion for Rehearing (concerning the lack of need for an adjudicative hearing) did not affect substantive rights. (*See* Appellees' Br. 32-33; AR 49650.) The TCEQ reasoned that no hearing was required for a § 361.272 order, by virtue of Tex. Health & Safety Code § 361.274—however, no hearing was required for either type of order. (AR 49650.) The TCEQ was *not* saying that a hearing was precluded by the combined effects of both ordering sections, simply that no hearing was required under either section. Substantive rights were not affected by any assertion about the Order being issued under both sections.

The TCEQ cannot waive sovereign immunity though its own statements. (*See* sec. V.C.1, *infra*.) The Order is defined by its substance and the

procedures used to create it, and the Appellees do not contest that it has all the characteristics of a § 361.188 order. It follows from the plain language of the statute that appeal is under § 361.321. The TCEQ lacks the power to waive sovereign immunity and admit that the Order is something that it is not, or that appeal is proper under a different section.

### C. The State's prior pleadings did not waive, agree to, or confer jurisdiction

Appellees refer to various pleadings and agreed judgments in which the State said that the Order was issued under both §§ 361.188 and 361.272. (Appellees' Br. 33-34.) However, the State's prior pleadings cannot defeat this plea.

#### 1. *The State's pleadings did not create waivers of sovereign immunity*

The parties to lawsuits—in their pleadings or otherwise—cannot waive, agree to, or confer jurisdiction. *See, e.g., Comptroller v. Landsfeld,* 352 S.W.3d 171, 174 (Tex. App.—Fort Worth 2011, pet. denied) (subject matter jurisdiction "may not be conferred by waiver or estoppel.") (citing *Van*

21

*Indep. Sch. Dist. v. McCarty,* 165 S.W.3d 351, 354 (Tex. 2005)). *See also*

*Metzger v. Metzger,* No. 01-04-00893-CV, 2007 WL 1633445, *7 (Tex.

App.—Houston [1st Dist.] 2007, pet. denied) (mem. op.) ("Subject-matter

jurisdiction cannot be conferred by consent, waiver, or estoppel at any

stage of a proceeding."), citing *Saudi v. Brieven,* 176 S.W.3d 108, 113 (Tex.

App.—Houston [1st Dist.] 2004, pet. denied) (quoting *Tourneau Houston,*

*Inc. v. Harris Cnty. Appraisal Dist.,* 24 S.W.3d 907, 910 (Tex. App.—Houston

[1st Dist.] 2000, no pet.)).

Only the Texas Legislature, and not an agency, can waive sovereign

immunity:

> This Court has long recognized that it is *the Legislature's sole prov-*
> *ince* to waive or abrogate sovereign immunity.… The Legislature
> may consent to suits against the State by statute or by resolu-
> tion.… Legislative consent to sue the State must be expressed in
> clear and unambiguous language.

*Tex. Natural Res. Conserv. Comm'n v. IT-Davy,* 74 S.W.3d 849, 853-54 (Tex.

2002) (citations and internal quotation marks omitted, emphasis added).

*See also McLane Co., Inc. v. Strayhorn,* 148 S.W.3d 644, 649 (Tex. App.—

22

Austin 2004, pet. denied) ("It is *for the legislature alone* 'to waive or abrogate sovereign immunity.'") (emphasis added), citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997).

2. *Prior judgments and motions did not create waivers of sovereign immunity*

Appellees refer to two agreed final judgments and two motions for default judgment, which recited that the Order was issued under both sections. (Appellees' Br. 34-35.) However, Appellees do not say how the parties to those judgments were affected by those statements, nor how Appellees themselves were affected. In fact, those statements simply reflected the boilerplate statement in the preamble to the Order. The scope and type of order, and the appellate provisions applicable to each type of order, were not at issue in any of those proceedings.

Neither the identity of the Order nor the language it contains has ever been in dispute. In the agreed final judgments, all causes of action related to the Order were being compromised and settled. (The judgments were severed and filed in separate cases. However, the text of each can be seen

23

with the TCEQ's notices of lodging. (*See* CR 275-436, 458-556.))  All claims related to the Order were being dismissed. Neither the settling parties' nor Appellees' rights were affected by the boilerplate statements.

Appellees also refer to a statement in the TCEQ's Third Amended Original Answer that the "sole method for appealing the Order" is at Tex. Health & Safety Code § 361.322. (Appellees' Br. 35, CR 678.)  That statement was in the context of a plea to the jurisdiction seeking to dismiss a claim under the Uniform Declaratory Judgment Act on the grounds of redundancy. (CR 677-79.)  The motion should have said that the "sole method" of appeal was under § 361.321. However, the underlying argument was still sound—that the UDJA action offered nothing but redundant remedies. In context, the statement did not draw a distinction between two different sections of the SWDA, but between remedies offered in the UDJA versus the SWDA. Moreover, the statement did not create a waiver of sovereign immunity.

If any party's pleadings are to be binding, it is those of Appellees—

who expressly limited their prayer for relief to whether "the TCEQ's Administrative Order is invalid, arbitrary, or unreasonable and therefore must be overturned pursuant to Texas Health & Safety Code § 361.321(e)." (CR 25.)

3. *The State did not seek to obtain the advantages of a § 361.272 order by saying that it issued the Order under both sections*

Appellees assert that, "the Commission invoked § 361.272 in an attempt to hold the [potentially responsible parties ("PRP's")] for the Voda Site jointly and severally liable under the SWDA." (Appellees' Br. 37.) To the contrary, the TCEQ did not invoke § 361.272 for that reason, because it was not necessary to do so. Section 361.276 ("Apportionment of Liability") is made applicable to § 361.188 orders by virtue of § 361.188(b). The fact that the TCEQ asserted there is joint and several liability for this Order does not make it a § 361.272 order.

## D. Section 361.322(e) does not merge § 361.188 and § 361.272 orders

Appellees say that, "the issuance of an order under § 361.272 does not

preclude the Commission from the listing process of § 361.181-188." (Appellees' Br. 37, citing § 361.322(e).)  While this is true, it does not lead to the conclusion that the ordering sections are somehow merged. (*See* discussion of § 361.322(e) at sec. IV.C.2, *supra.*)

The TCEQ may work through the Subchapter F process, and even issue a § 361.188 order, *after* the issuance and appeal of a § 361.272 order. Appellees imply that this has some relevance to the current situation, but it does not. In the present case, the TCEQ did the Subchapter F process *first*, and *then* issued the § 361.188 Order. Section 361.322(e) is irrelevant.

## E. Reviewing this Order under § 361.322 would make Subchapter F redundant

In a trial court brief, the TCEQ asserted that "[r]eview under Section 361.322 would render Subchapter F redundant." (CR 1091.)  The reason was that the TCEQ would not go through the "elaborate, time-consuming and expensive," Subchapter F process if it had to re-prove liability at trial by preponderance of the evidence anyway. (CR 1092.)  "That practical consideration would turn Subchapter F into surplusage, which would be

contrary to the intent of the Legislature." *Id.* In the present case, it would mean that the TCEQ had wasted 15 years, and a lot of money, establishing findings that would have to be re-established by a preponderance of the evidence.

Appellees do not address this argument directly. Instead, they respond by complaining that they were not offered a contested-case hearing before the agency, and did not have the opportunity to show that they were not "persons responsible for solid waste." (Appellees' Br. 38-39.)  However, Appellees had numerous opportunities to show that they were not PRP's and present other information to the TCEQ. The Legislature did not provide a redundant contested-case hearing as part of that process.

Appellees do not address the question of subject-matter jurisdiction; instead, they complain about the supposed effects of a substantial evidence review. When they suggest that the Order will be "the final word on liability," (Appellees' Br. 39), they grossly overstate the applicable standard of review. Appellees' arguments about their own liability are premature in

this interlocutory appeal.

Further, their distinction between agency expertise on liability versus remedy selection is misplaced. (*See* Appellees' Br. 38-39.)  Essentially, they are saying that they question the agency's expertise when it comes to determining their own liability. However, the agency has expertise in determining PRP status; it must go through the relevant procedures set out in Subchapter F, and did so for this Order in detail. (AR 12512-16706.)

### F.    The Order was properly issued under § 361.188

The TCEQ asserted that: "[a] single order cannot arise under both Sections 361.188 and 361.272." (Appellant's Br. 18.)  The rationale was that, "[t]he orders must be separate and distinct because they have different deadlines for appeal," and "each appellate section provides for a different standard of review." *Id.*

From this, Appellants illogically conclude that the remedy is "to overturn the Order as a violation of law." (Appellees' Br. 40.)  They arrive at this conclusion only by assuming that the TCEQ issued the Order

28

"under both § 361.188 and § 361.272." (Appellees' Br. 41.) Since that is the matter in controversy, their argument lacks logic and must fail. This Order was properly issued under § 361.188—not § 361.272, and not both.

### G. Conclusion

The TCEQ's boilerplate language in the preamble to the Order is not controlling or dispositive as to the nature of the Order, nor are the TCEQ's statements or pleadings. What is controlling is the substance of the Order and the process the TCEQ followed leading up to its entry. Appellees do not dispute that the TCEQ completed the procedures set forth in Subchapter F. If the TCEQ had intended to issue a § 361.272 order, it would have done so early in the process rather than at the end. The Order was properly issued under § 361.188 and is properly reviewed under § 361.321.

## VI. REPLY CONCERNING ISSUE THREE

The TCEQ asserted that "[b]ecause of the doctrine of Sovereign Immunity, the courts lack jurisdiction to review the Order under any section other than Section 361.321." (Appellant's Br. 32.) The premises of that

argument were that (a) the ordering sections are mutually exclusive, and

(b) this Order was issued under § 361.188. (Appellant's Br. 32.)

Appellees respond that "[j]udicial review of the Administrative Order

for the Voda Site is constitutional and appropriate under § 361.322 of the

[SWDA]." (Appellees' Br. -ix-.) However, they start with different pre-

mises. They posit that "the substantial evidence review procedures found

in the APA are not applicable to this appeal" (Appellees' Br. 41), and then

argue that "judicial review under § 361.322 does not violate the separation

of powers doctrine." (Appellees' Br. 42.)

In other words, Appellees are saying that an order issued under

§ 361.272 is properly appealed under § 361.322, and there is no constitu-

tional impediment to doing so. Even assuming that argument to be sound,

it is irrelevant here because the present case involves a § 361.188 order—as

established in Issues One and Two, above. Appellees do not controvert the

essence of the TCEQ's jurisdictional argument.

## A. The constitutionality of § 361.322 is not at issue

### 1. *Tex. Gov't Code § 2001.174 restates existing law*

The TCEQ asserted that "[u]nder the Separation of Powers Doctrine, the courts review administrative orders only as to matters of law." (Appellant's Br. 35.) That was in the context of an argument showing that the Texas Administrative Procedure Act ("APA") (specifically, Tex. Gov't Code § 2001.174) codified the Legislature's understanding of the existing law of judicial review of state agency actions. (Appellant's Br. 35-37.)

Appellees do not controvert the proposition that Tex. Gov't Code § 2001.174 restated existing law. Instead, they argued that "the separation of powers doctrine only prohibits the Legislature from authorizing *de novo* judicial review of quasi-legislative acts that address broad questions of public policy or promulgate rules for future application." (Appellees' Br. 42.)

However, issues concerning the constitutionality of the "preponderance of the evidence" requirement in § 361.322(g) are irrelevant here. Given

that this Order was issued under § 361.188, it is properly reviewed under the "invalid, arbitrary or unreasonable" standard of § 361.321(e). (*See also*, argument and authorities at sec. VI.C.1, *infra*.)

Appellees cite cases in which statutes required trials de novo for certain agency decisions. (Appellees' Br. 43-46, citing *Commercial Life Ins. Co. v. Tex. State Bd. of Ins.,* 808 S.W.2d 552 (Tex. App.—Austin 1991, writ denied) and *Macias v. Rylander,* 995 S.W.2d 829 (Tex. App.—Austin 1999, no pet.). The issue in each case was whether those requirements violated the Separation of Powers doctrine (they did not). *See Commercial Life,* 808 S.W.2d at 554-55; *Macias,* 995 S.W.2d at 832-33. Again, however, that is irrelevant here because § 361.321 does not require a trial de novo.

Meanwhile, in the present case, the TCEQ has shown that the review of this Order under the "invalid, arbitrary or unreasonable" standard of § 361.321(e) is conducted in the same manner as review under the provisions of Tex. Gov't Code § 2001.174. (Appellant's Br. 37-38.)

2. *The Legislature's decision to allow the review of this § 361.188 order under the "invalid, arbitrary or unreasonable" standard is consistent with the emerging law in this area*

The issue in this interlocutory appeal is whether the courts have subject-matter jurisdiction to consider an appeal of an agency order under one section of a statute, when the only proper appeal is under a different section. This raises a question of Sovereign Immunity, since the State has not waived its immunity generally. Each waiver must be in "express and unequivocal terms." *See Berry*, 449 S.W.3d at 640, quoting *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex. 2012); *see* Tex. Gov't Code § 311.034. "'[N]o state can be sued in her own courts without her consent, and then only in the manner indicated by that consent.'" *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006) quoting *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847).

The Separation of Powers doctrine, which is similar but not identical, holds that judicial review (when authorized) may not re-determine the facts found by the agency. The distinction was explained by this Court, as

follows:

> [A]n administrative agency's order made within its discretionary statutory and constitutional authority is ordinarily shielded by sovereign immunity from suit, such that there is no right to judicial review, unless and until the Legislature has waived that immunity by conferring a right of judicial review…. However, even while the Legislature generally has the prerogative to waive sovereign immunity to permit judicial review, Texas courts have long held separation-of-powers principles bar the judiciary—even where the Legislature has purported to grant such broad review powers—from redetermining the fact findings of agencies exercising their administrative functions.

*City of Waco,* 346 S.W.3d at 815 (Tex. App.—Austin 2011), *rev'd on other grounds,* 413 S.W.3d 409 (Tex. 2013) (citing *Gerst v. Nixon,* 411 S.W.2d 350, 353–54 (Tex.1966) and *S. Canal Co. v. State Bd. of Water Eng'rs,* 318 S.W.2d 619, 622-24 (Tex. 1958)) (other citations omitted). That distinction is still valid.

## B. The Texas Supreme Court's decision in *City of Waco* is pertinent to this SWDA appeal

The TCEQ asserted that "[a] contested case hearing is not required for review of this Order under substantial evidence," referring to the Supreme Court's *City of Waco* decision. (Appellant's Br. 38-39, citing *Tex. Comm'n on*

*Envtl. Quality v. City of Waco,* 413 S.W.3d 409 (Tex. 2013).) Appellees

responded that "[t]he Texas Supreme Court's decision in *City of Waco* is not

controlling in this SWDA appeal." (Appellees' Br. 48.) To the contrary, the

Supreme Courts rulings in that case—and this Court's subsequent applica-

tions of those rulings—define the proper approach here.

1. *City of Waco did not merely make a "threshhold determina-*
*tion"*

Appellees would limit the applicability of *City of Waco* by saying that

the case "is limited to a threshold determination of whether a third-party

seeking to intervene in a permitting case is an 'affected person' sufficient to

trigger a contested-case hearing." (Appellees' Br. 10, 48.) However, that

was not the relevant characteristic of the case. The case actually turned on

the finding that the amended permit would not "significantly increase or

materially change the authorized discharge of waste" and would therefore

qualify for a statutory exemption from the contested-case requirement. *City*

*of Waco,* 413 S.W.3d at 424-25 (Tex. 2013). The TCEQ made a fact-based

determination from the information, evidence, documents, and arguments

that interested parties presented to the agency, and the Court upheld that determination. *Id.* ("We conclude that there is evidence in the record to support the Commission's determination.…") In the present case, the TCEQ made a similar determination respecting the Site remedy and Appellees' status as PRP's.

In *City of Waco,* the Texas Supreme Court upheld TCEQ's decision because there was reasonable support in the agency record for the decision. *Id.* at 424-25. Ultimately, that is what the TCEQ is requesting in the present case. When applying the Supreme Court's holding and analysis, this Court has recognized that an agency's decision is often found not to be arbitrary or capricious if the factual basis for the decision is supported by substantial evidence in the agency record. *See Tex. Comm'n on Envtl. Quality v. Sierra Club,* No. 03-12-00335-CV, 2014 WL 7464085, *5 (Tex. App.—Austin Dec. 30, 2014, no pet. h.)

Appellees attempt to distinguish *City of Waco* by saying that, "the present case has no connection to the Texas Water Code, permitting, or the

standing of third parties.…" (Appellees' Br. 51.)  However, these distinctions are irrelevant. Appellees are still making the assumption that the "preponderance of the evidence" burden of proof applies. (Appellees' Br. 51.)  But it does not, and such analysis is beside the point. After *City of Waco,* the courts can review an agency order by the "abuse of discretion" standard (including the substantial evidence component), even in the absence of a contested case or adjudicative hearing below. The relevant provision, § 361.321, mandates such a standard of review. That is the holding and the relevance of *City of Waco.*

Appellees attempt to distinguish the recent *Sierra Club* case, which follows the *City of Waco* precedent. (*See* Appellees' Br. 52-53, citing *Sierra Club,* 2014 WL 7464085.)  Appellees admit that, "[a]pplying the holding from *City of Waco,* [this Court] held it must review 'a TCEQ determination regarding affected-person status for an abuse of discretion.'" (Appellees' Br. 52, citing *Sierra Club,* 2014 WL 7464085 at *4.)  Appellees do not say why that case is distinguishable from the present case—presumably because it

involves party standing in a permit matter. But this Court cited *City of Waco* throughout the opinion and noted that, "[i]n making a decision regarding affected-person status, TCEQ enjoys the discretion to weigh and resolve matters that may go to the merits of the underlying application.…" *Sierra Club*, 2014 WL 7464085 at *5, citing *Sierra Club v. Tex. Comm'n on Envtl. Quality*, No. 03–11–00102–CV, 2014 WL 7463875 at *12 (Tex. App.—Austin Dec. 30, 2014, no pet. h.) (other citations omitted).

To summarize, this Court has recently considered two different TCEQ decisions—each within the agency's discretion, on the substance of the applications, without contested case hearings—and reviewed them on the administrative record based on the abuse of discretion standard. These precedents support the TCEQ's interpretation of *City of Waco*.

Finally, Appellees mischaracterize the State's position as saying that "all TCEQ decisions—including those with specific statutory appellate provisions to the contrary—are subject to review only through pure substantial evidence." (Appellees' Br. 53.) By contrast, the State's actual

position is that *City of Waco* and its progeny allow a substantial evidence

review on appeal, even without a contested case hearing before the agency,

when the relevant statute provides for such review. That is entirely consis-

tent with precedent, and describes the present situation.

C. **The "invalid, arbitrary or unreasonable" standard of § 361.321(e) equates to the standard of Tex. Gov't Code § 2001.174**

1. *Tex. Gov't Code § 2001.174 was intended to be a restatement of the law*

Appellees argue that the provisions of the APA contained at Tex.

Gov't Code § 2001.174 do not apply here, because of the express terms of

that section. (Appellees' Br. 53-54.)  But this ignores the TCEQ's actual

argument: that the Legislature intended the APA to be a restatement of

existing law, not a new form of judicial review of agency actions. (Appel-

lant's Br. 36.)  Following this argument, the "invalid, arbitrary or unreason-

able" standard of § 361.321(e) simply means that the Order must be re-

viewed under the standards of APA § 2001.174, of which substantial

evidence is an important part. (Appellant's Br. 37.)  Appellees do not

controvert the TCEQ's actual argument.

      2.    *Review under the substantial evidence standard does not require a contested case hearing*

Appellees argue that "Outside of threshold standing questions, pure substantial evidence requires a true contested-case record under the APA." (Appellees' Br. 55-59.) However, they cite several cases that have been effectively overruled. One is *Ramirez v. Tex. State Bd. of Med. Exam'rs*, 927 S.W.2d 770, 773 (Tex. App.—Austin 1996, no writ), which rejected the argument that the Legislature created a right of judicial review under the substantial evidence rule while depriving parties of an opportunity for a contested case hearing. However, that case was cited in this Court's opinion in *City of Waco*, 346 S.W.3d at 818, and was thus effectively over-ruled by the Supreme Court's subsequent opinion. (*See* Appellant's argument at CR 1099-1100.)

Appellees also cite *Tex. Dep't of Ins. v. State Farm Lloyds*, 260 S.W.3d 233, 245 (Tex. App.—Austin 2008, no pet.) ("Absent an administrative record, no substantial evidence review is required or even possible.").

(Appellees' Br. 59.) Like *Ramirez,* that case has been effectively overruled by *City of Waco.*

Appellees then cite *G.E. Am. Commc'n v. Galveston Cent. Appraisal Dist.,* 979 S.W.2d 761, 767 (Tex. App.—Houston [14th Dist.] 1998, no pet.), and quote: "Substantial evidence review cannot have been the proper standard because there is no record from the appraisal review board hearing." (Appellees' Br. 56.) The Fourteenth Court of Appeals concluded that, because there was no record to review, the correct standard of review was substantial evidence de novo—so that the court could create a record. *G.E. Am.,* 979 S.W.2d 767. However, substantial evidence de novo has been rejected by this Court as the default standard of review. *See Gilder v. Meno,* 926 S.W.2d 357, 361 (Tex. App.—Austin 1996, writ denied). In addition, like the *Ramirez* case, the holding has been effectively overruled by the Supreme Court in *City of Waco.* Finally, the TCEQ has compiled an exhaustive record in this case, and thus the rationale of *G.E. American* does not apply. *G.E. American* is simply not a good precedent here. (*See* CR 1101.)

Appellees attempt to distinguish various cases that are, in fact, good law. *See, e.g., Smith v. Houston Chem. Servs., Inc.*, 872 S.W.2d 252, 257 n.2 (Tex. App.—Austin 1994, writ denied). *Smith* interprets § 361.321—the same section that defines the standard of review in the present case—and found that the language of § 361.321(e) implies substantial evidence review under the provisions of § 2001.174 of the APA. *Smith* is on point because it interprets the exact section that is at issue in the present case. *Smith*, 872 S.W.2d at 257 n.2 ("To render [this statute] understandable, and to protect against its possible violation of the separation-of-powers mandate of the Constitution of the State of Texas, we construe subsection (a) [of § 361.321] as authorizing suits for judicial review in a district court of Travis County in accordance with APA § 2001.001-.902.").

Appellees also argue that the *Kelsoe* case was not decided on substantive grounds. (Appellees' Br. 57, citing *Tex. Comm'n on Envtl. Quality v. Kelsoe,* 286 S.W.3d 91, 97 (Tex. App.—Austin 2009, pet. denied) (petitioner asserted that "section 361.321 of the health and safety code only appl[ies]

after a contested case hearing, but the plain language of the statute[] does not support that conclusion; the statute[] speak[s] of seeking review of any 'ruling, order, decision, or other act.'"). *Kelsoe,* 286 S.W.3d at 95. Even so, the case shows this Court's recent interpretation of the section that is at issue here; thus, it has precedential value.

*Smith* and *Kelso* are not distinguishable on the basis of contested case hearing because those appeals were filed under the broad language of § 361.321.

Appellees attempt to distinguish *United Copper Indus., Inc. v. Grissom,* 17 S.W.3d 797 (Tex. App.—Austin 2000, pet. dism'd), principally on the grounds that it is limited to "affected person" issues. (Appellees' Br. 57-58.)  However, the TCEQ cited that case for various propositions—principally, that "the APA, interpreting existing law, supports the proposition that the Order must [be] reviewed under the substantial evidence standard." (Appellant's Br. 37.)  This is a general interpretation of the statute, and is not limited to issues of party status.

## VII.    CONCLUSION

Appellant has shown that there are two separate ordering provisions within the SWDA, and that each has a separate appellate provision. The proposition that these sections are merged is not supported by the plain language of the statute, its history, or by case law.

Appellees essentially admit that the order was procedurally and substantively issued under § 361.188, but then argue that it was also issued under § 361.272 because those sections were merged. This proposition is likewise unsupported by statutory interpretation or existing precedents.

Given that this Order was issued under § 361.188, and that the statute provides for appeal under § 361.321, it follows that appeal under any other section is beyond the subject-matter jurisdiction of the courts. This conclusion is entirely consistent with emerging precedents in administrative law.

## VIII.    PRAYER

Appellant prays that the District Court's denial of its Plea to the Jurisdiction be reversed, for the reasons stated in its initial brief and this

Reply Brief.

Respectfully submitted this 2nd day of March, 2015.

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

JON NIERMANN
Chief, Environmental Protection
Division

 /s/  *Thomas H. Edwards*
THOMAS H. EDWARDS
Assistant Attorney General
Tex. Bar No. 06461800
Thomas.Edwards@TexasAttorney
General.gov

CRAIG J. PRITZLAFF
Assistant Attorney General
Tex. Bar No. 24046658
Craig.Pritzlaff@TexasAttorney
General.gov

45

LINDA SECORD
Assistant Attorney General
Tex. Bar No. 17973400
[Linda.Secord@TexasAttorney](mailto:Linda.Secord@TexasAttorneyGeneral.gov)
[General.gov](mailto:Linda.Secord@TexasAttorneyGeneral.gov)

Office of the Attorney General
Environmental Protection Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

ATTORNEYS FOR APPELLANT,
THE TEXAS COMMISSION ON
ENVIRONMENTAL QUALITY

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Word Perfect 13.0 and contains 7,471 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ *Thomas H. Edwards*
THOMAS H. EDWARDS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served by electronic service on the following parties or attorneys of record on the 2nd day of March, 2015, and by email the same day.

| Attorneys | Parties |
|---|---|
| John R. Eldridge<br>HAYNES AND BOONE, L.L.P.<br>1221 McKinney St., Ste. 2100<br>Houston TX  77010-2020<br>Telephone: (713) 547-2000<br>Facsimile: (713) 547-2600<br>John.Eldridge@haynesboone.com | Exxon Mobil Corporation,<br>ExxonMobil Oil Corporation,<br>Pennzoil-Quaker State Company<br>and Shell Oil Company |
| Adam H. Sencenbaugh<br>HAYNES AND BOONE, L.L.P.<br>600 Congress Ave., Ste. 1300<br>Austin TX  78701-2579<br>Telephone: (512) 867-8489<br>Telecopier: (512) 867-8606<br>Adam.Sencenbaugh@<br>haynesboone.com | " |
| Janessa M. Glenn<br>R. Steven Morton<br>MOLTZ MORTON & GLENN, LLP<br>5113 Southwest Pkwy, Ste. 120<br>Austin TX  78735-8969<br>jglenn@mmandg.com | Cabot Norit Americas, Inc. |

| | |
|---|---|
| John E. Leslie<br>JOHN LESLIE \| PLLC<br>1216 Florida Dr., Ste. 140<br>Arlington TX  76015-2393<br>Tel: (817) 505-1291<br>Arlingtonlaw@aol.com | Howard Freilich, d/b/a Quick Stop<br>Brake and Muffler |
| Cynthia J. Bishop<br>C BISHOP LAW PC<br>P.O. Box 612994<br>Dallas TX  75261-2994<br>cbishop@cbishoplaw.com | Baxter Oil Service |
| Paul Craig Laird II<br>ASHLEY & LAIRD, L.C.<br>800 W. Airport Fwy., Ste. 880<br>Irving TX  75062-6274<br>pcl880@aim.com | Frank Kosar, d/b/a Rite Way<br>Truck Rental |
| George E. Kuehn<br>BUTZEL LONG<br>301 E. Liberty St., Ste 500<br>Ann Arbor MI  48104-2283<br>Tel: 734-213-3257<br>Fax: 734-995-1777<br>kuehn@butzel.com | SBC Holdings, Inc., f/k/a The Stroh<br>Brewery Company |

 /s/  *Thomas H. Edwards*
THOMAS H. EDWARDS

# APPENDIX

**APPENDIX TO APPELLANT'S REPLY BRIEF**
**TABLE OF CONTENTS**

**Tab**

1      Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2616-64

2      Act of May 24, 1989, 71st Leg., R.S., ch. 703, § 5, 1989 Tex. Gen. Laws 3212, 3216-32

3      Act of June 6, 1990, 71st Leg., 6th C.S., ch. 10, art. 2, §§ 28, 29, 1990 Tex. Gen. Laws 47, 64-80 (amended 1997) (current version at Tex. Health & Safety Code §§ 361.181-.202, 361.322(a))

# TAB 1

## CHAPTER 678

### H.B. No. 2136

AN ACT

relating to the adoption of a nonsubstantive revision of the statutes relating to health and safety, including conforming amendments, repeals, and penalties.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1. ADOPTION OF CODE. The Health and Safety Code is adopted to read as follows:

### HEALTH AND SAFETY CODE

#### Contents

TITLE 1. GENERAL PROVISIONS

Chapter 1. General Provisions

[Chapters 2-10 reserved for expansion]

TITLE 2. HEALTH

SUBTITLE A. TEXAS DEPARTMENT OF HEALTH

Chapter 11. Organization of Texas Department of Health

Chapter 12. Powers and Duties of Texas Department of Health

Chapter 13. Health Department Hospitals and Respiratory Facilities

[Chapters 14-30 reserved for expansion]

SUBTITLE B. TEXAS DEPARTMENT OF HEALTH PROGRAMS

Chapter 31. Primary Health Care

Chapter 32. Maternal and Infant Health Improvement

Chapter 33. Phenylketonuria and Other Heritable Diseases

Chapter 34. Hypothyroidism

Chapter 35. Chronically Ill and Disabled Children's Services

Chapter 36. Special Senses and Communication Disorders

Chapter 37. Abnormal Spinal Curvature in Children

Chapter 38. Pediculosis of Minors

Chapter 39. Children's Outreach Heart Program

Chapter 40. Epilepsy

Chapter 41. Hemophilia

Chapter 42. Kidney Health Care

Chapter 43. Oral Health Improvement

[Chapters 44-60 reserved for expansion]

SUBTITLE C. INDIGENT HEALTH CARE

Chapter 61. Indigent Health Care and Treatment Act

[Chapters 62-80 reserved for expansion]

SUBTITLE D. PREVENTION, CONTROL, AND REPORTS OF DISEASES

[Sections 361.253–361.270 reserved for expansion]

SUBCHAPTER I.  ENFORCEMENT; ADMINISTRATIVE ORDERS CONCERNING
IMMINENT AND SUBSTANTIAL ENDANGERMENT

Sec. 361.271.  PERSONS RESPONSIBLE FOR SOLID WASTE
Sec. 361.272.  ADMINISTRATIVE ORDERS CONCERNING IMMINENT AND SUB-
STANTIAL ENDANGERMENT
Sec. 361.273.  INJUNCTION AS ALTERNATIVE TO ADMINISTRATIVE ORDER
Sec. 361.274.  NO PRIOR NOTICE CONCERNING ADMINISTRATIVE ORDER
Sec. 361.275.  DEFENSES
Sec. 361.276.  APPORTIONMENT OF LIABILITY
Sec. 361.277.  JUDGMENT BY STATE AGAINST NONSETTLING PARTY;  ACTION
FOR CONTRIBUTION BY NONSETTLING PARTY
Sec. 361.278.  LIABILITY OF ENGINEER OR CONTRACTOR
Sec. 361.279.  CONTRACTS WITH STATE
Sec. 361.280.  REMEDIES CUMULATIVE

[Sections 361.281–361.300 reserved for expansion]

SUBCHAPTER J.  ENFORCEMENT; EMERGENCY ORDER;
CORRECTIVE ACTION

Sec. 361.301.  EMERGENCY ORDER
Sec. 361.302.  ISSUANCE OF ORDER BY COMMISSION
Sec. 361.303.  CORRECTIVE ACTION

[Sections 361.304–361.320 reserved for expansion]

SUBCHAPTER K.  APPEALS; JOINDER OF PARTIES

Sec. 361.321.  APPEALS
Sec. 361.322.  APPEAL OF ADMINISTRATIVE ORDER ISSUED UNDER SECTION
361.272;  JOINDER OF PARTIES
Sec. 361.323.  JOINDER OF PARTIES IN ACTION FILED BY STATE

[Sections 361.324–361.340 reserved for expansion]

SUBCHAPTER L.  COST RECOVERY

Sec. 361.341.  COST RECOVERY BY STATE
Sec. 361.342.  COST RECOVERY BY APPEALING OR CONTESTING PARTY
Sec. 361.343.  APPORTIONMENT OF COSTS
Sec. 361.344.  COST RECOVERY BY LIABLE PARTY OR THIRD PARTY
Sec. 361.345.  CREATION OF RIGHTS

CHAPTER 361.  SOLID WASTE DISPOSAL ACT

SUBCHAPTER A.  GENERAL PROVISIONS

Sec. 361.001.  SHORT TITLE. This chapter may be cited as the Solid Waste Disposal
Act.  (V.A.C.S. Art. 4477-7, Sec. 1 (part).)

Sec. 361.002.  POLICY. It is this state's policy and the purpose of this chapter to
safeguard the health, welfare, and physical property of the people and to protect the
environment by controlling the management of solid waste, including accounting for
hazardous waste that is generated.  (V.A.C.S. Art. 4477-7, Sec. 1 (part).)

Sec. 361.003.  DEFINITIONS. Unless the context requires a different definition, in
this chapter:

(1) "Apparent recharge zone" means that recharge zone designated on maps pre-
pared or compiled by, and located in the offices of, the commission.

(2) "Board of health" means the Texas Board of Health.

(3) "Class I industrial solid waste" means an industrial solid waste or mixture of industrial solid waste, including hazardous industrial waste, that because of its concentration or physical or chemical characteristics:

    (A) is toxic, corrosive, flammable, a strong sensitizer or irritant, or a generator of sudden pressure by decomposition, heat, or other means; and

    (B) poses or may pose a substantial present or potential danger to human health or the environment if improperly processed, stored, transported, or otherwise managed.

(4) "Commission" means the Texas Water Commission.

(5) "Commissioner" means the commissioner of health.

(6) "Composting" means the controlled biological decomposition of organic solid waste under aerobic conditions.

(7) "Department" means the Texas Department of Health.

(8) "Disposal" means the discharging, depositing, injecting, dumping, spilling, leaking, or placing of solid waste or hazardous waste, whether containerized or uncontainerized, into or on land or water so that the solid waste or hazardous waste or any constituent thereof may be emitted into the air, discharged into surface water or groundwater, or introduced into the environment in any other manner.

(9) "Executive director" means the executive director of the commission.

(10) "Garbage" means solid waste that is putrescible animal and vegetable waste materials from the handling, preparation, cooking, or consumption of food, including waste materials from markets, storage facilities, and the handling and sale of produce and other food products.

(11) "Hazardous waste" means solid waste identified or listed as a hazardous waste by the administrator of the United States Environmental Protection Agency under the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C. Section 6901 et seq.).

(12) "Industrial solid waste" means solid waste resulting from or incidental to a process of industry or manufacturing, or mining or agricultural operations.

(13) "Local government" means:

    (A) a county;

    (B) a municipality; or

    (C) a political subdivision exercising the authority granted under Section 361.165.

(14) "Management" means the systematic control of the activities of generation, source separation, collection, handling, storage, transportation, processing, treatment, recovery, or disposal of solid waste.

(15) "Municipal solid waste" means solid waste resulting from or incidental to municipal, community, commercial, institutional, or recreational activities, and includes garbage, rubbish, ashes, street cleanings, dead animals, abandoned automobiles, and other solid waste other than industrial solid waste.

(16) "Notice of intent to file an application" means the notice filed under Section 361.063.

(17) "Person" means an individual, corporation, organization, government or governmental subdivision or agency, business trust, partnership, association, or any other legal entity.

(18) "Person affected" means a person who demonstrates that the person has suffered or will suffer actual injury or economic damage and, if the person is not a local government:

    (A) is a resident of a county, or a county adjacent or contiguous to the county, in which a solid waste facility is to be located; or

    (B) is doing business or owns land in the county or adjacent or contiguous county.

(19) "Processing" means the extraction of materials from or the transfer, volume reduction, conversion to energy, or other separation and preparation of solid waste for

reuse or disposal. The term includes the treatment or neutralization of hazardous waste designed to change the physical, chemical, or biological character or composition of a hazardous waste so as to neutralize the waste, recover energy or material from the waste, render the waste nonhazardous or less hazardous, make it safer to transport, store, or dispose of, or render it amenable for recovery or storage, or reduce its volume. The term does not include activities concerning those materials exempted by the administrator of the United States Environmental Protection Agency under the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C. Section 6901 et seq.), unless the commission or department determines that regulation of the activity under this chapter is necessary to protect human health or the environment.

(20) "Radioactive waste" means waste that requires specific licensing under Chapter 401 and the rules adopted by the board of health under that law.

(21) "Release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, escaping, leaching, dumping, or disposing into the environment. The term does not include:

(A) a release that results in an exposure to a person solely within a workplace, concerning a claim that the person may assert against the person's employer;

(B) an emission from the engine exhaust of a motor vehicle, rolling stock, aircraft, vessel, or pipeline pumping station engine;

(C) a release of source, by-product, or special nuclear material from a nuclear incident, as those terms are defined by the Atomic Energy Act of 1954, as amended (42 U.S.C. Section 2011 et seq.), if the release is subject to requirements concerning financial protection established by the Nuclear Regulatory Commission under Section 170 of that Act;

(D) for the purposes of Section 104 of the federal Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. Section 9601 et seq.), or other response action, a release of source, by-product, or special nuclear material from a processing site designated under Section 102(a)(1) or 302(a) of the Uranium Mill Tailings Radiation Control Act of 1978 (42 U.S.C. Sections 7912 and 7942); and

(E) the normal application of fertilizer.

(22) "Remedial action" means an action consistent with a permanent remedy taken instead of or in addition to a removal action in the event of a release or threatened release of a hazardous waste into the environment to prevent or minimize the release of hazardous waste so that the hazardous waste does not migrate to cause an imminent and substantial danger to present or future public health and safety or the environment. The term includes:

(A) actions at the location of the release, including storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous waste or contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive waste, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, on-site treatment or incineration, provision of alternate water supplies, and any monitoring reasonably required to assure that those actions protect the public health and safety or the environment; and

(B) the costs of permanent relocation of residents, businesses, and community facilities if the administrator of the United States Environmental Protection Agency or the executive director determines that, alone or in combination with other measures, the relocation:

(i) is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction, or secure disposition off-site of hazardous waste; or

(ii) may otherwise be necessary to protect the public health or safety.

(23) "Removal" includes:

(A) cleaning up or removing released hazardous waste from the environment;

(B) taking necessary action in the event of the threat of release of hazardous waste into the environment;

(C) taking necessary action to monitor, assess, and evaluate the release or threat of release of hazardous waste;

(D) disposing of removed material;

(E) erecting a security fence or other measure to limit access;

(F) providing alternate water supplies, temporary evacuation, and housing for threatened individuals not otherwise provided for;

(G) acting under Section 104(b) of the federal Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. Section 9601 et seq.);

(H) providing emergency assistance under the federal Disaster Relief Act of 1974 (42 U.S.C. Section 5121 et seq.); or

(I) taking any other necessary action to prevent, minimize, or mitigate damage to the public health and welfare or the environment that may otherwise result from a release or threat of release.

(24) "Rubbish" means nonputrescible solid waste, excluding ashes, that consists of:

(A) combustible waste materials, including paper, rags, cartons, wood, excelsior, furniture, rubber, plastics, yard trimmings, leaves, and similar materials; and

(B) noncombustible waste materials, including glass, crockery, tin cans, aluminum cans, metal furniture, and similar materials that do not burn at ordinary incinerator temperatures (1,600 to 1,800 degrees Fahrenheit).

(25) "Sanitary landfill" means a controlled area of land on which solid waste is disposed of in accordance with standards, rules, or orders established by the board of health or the commission.

(26) "Sludge" means solid, semisolid, or liquid waste generated from a municipal, commercial, or industrial wastewater treatment plant, water supply treatment plant, or air pollution control facility, excluding the treated effluent from a wastewater treatment plant.

(27) This subdivision expires on delegation of the Resource Conservation and Recovery Act authority to the Railroad Commission of Texas. "Solid waste" means garbage, rubbish, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility, and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, municipal, commercial, mining, and agricultural operations and from community and institutional activities. The term does not include:

(A) solid or dissolved material in domestic sewage, or solid or dissolved material in irrigation return flows, or industrial discharges subject to regulation by permit issued under Chapter 26, Water Code;

(B) soil, dirt, rock, sand, and other natural or man-made inert solid materials used to fill land if the object of the fill is to make the land suitable for the construction of surface improvements; or

(C) waste materials that result from activities associated with the exploration, development, or production of oil or gas or geothermal resources and other substance or material regulated by the Railroad Commission of Texas under Section 91.101, Natural Resources Code, unless the waste, substance, or material results from activities associated with gasoline plants, natural gas or natural gas liquids processing plants, pressure maintenance plants, or repressurizing plants and is hazardous waste as defined by the administrator of the United States Environmental Protection Agency under the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act, as amended (42 U.S.C. Section 6901 et seq.).

(28) This subdivision is effective on delegation of the Resource Conservation and Recovery Act authority to the Railroad Commission of Texas. "Solid waste" means garbage, rubbish, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility, and other discarded material, including solid,

liquid, semisolid, or contained gaseous material resulting from industrial, municipal, commercial, mining, and agricultural operations and from community and institutional activities. The term does not include:

(A) solid or dissolved material in domestic sewage, or solid or dissolved material in irrigation return flows, or industrial discharges subject to regulation by permit issued under Chapter 26, Water Code;

(B) soil, dirt, rock, sand, and other natural or man-made inert solid materials used to fill land if the object of the fill is to make the land suitable for the construction of surface improvements; or

(C) waste materials that result from activities associated with the exploration, development, or production of oil or gas or geothermal resources and other substance or material regulated by the Railroad Commission of Texas under Section 91.101, Natural Resources Code.

(29) "Solid waste facility" means all contiguous land, including structures, appurtenances, and other improvements on the land, used for processing, storing, or disposing of solid waste. The term includes a publicly or privately owned solid waste facility consisting of several processing, storage, or disposal operational units such as one or more landfills, surface impoundments, or a combination of units.

(30) "Solid waste technician" means an individual who is trained in the practical aspects of the design, operation, and maintenance of a solid waste facility in accordance with standards, rules, or orders established by the board of health or commission.

(31) "Storage" means the temporary holding of solid waste, after which the solid waste is processed, disposed of, or stored elsewhere. (V.A.C.S. Art. 4477-7, Sec. 2 (part).)

[Sections 361.004–361.010 reserved for expansion]

## SUBCHAPTER B. POWERS AND DUTIES OF TEXAS DEPARTMENT OF HEALTH AND TEXAS WATER COMMISSION

Sec. 361.011. DEPARTMENT'S JURISDICTION: MUNICIPAL SOLID WASTE. (a) The department is responsible for the management of municipal solid waste, excluding hazardous municipal waste, and shall coordinate municipal solid waste activities, excluding activities concerning hazardous municipal waste.

(b) The board of health shall guide the department in its management of municipal solid waste, excluding hazardous municipal waste.

(c) The department shall accomplish the purposes of this chapter by controlling all aspects of the management of municipal solid waste, excluding management of hazardous municipal waste, by all practical and economically feasible methods consistent with its powers and duties under this chapter and other law.

(d) The department has the powers and duties specifically prescribed by this chapter and all other powers necessary or convenient to carry out its responsibilities under this chapter.

(e) In matters under the department's jurisdiction, the department shall consult with:

(1) the commission concerning water pollution control and water quality aspects; and

(2) the Texas Air Control Board concerning air pollution control and ambient air quality aspects. (V.A.C.S. Art. 4477-7, Sec. 3(a).)

Sec. 361.012. DEPARTMENT'S JURISDICTION: MUNICIPAL SOLID WASTE AND INDUSTRIAL SOLID WASTE. When both municipal solid waste and industrial solid waste, except Class I industrial solid waste that is not routinely collected with municipal solid waste and hazardous waste, are involved in any activity of management of solid waste, the department has jurisdiction over the activity. (V.A.C.S. Art. 4477-7, Sec. 3(c) (part).)

Sec. 361.013. SOLID WASTE FACILITY FEE. (a) The department shall charge an annual fee for each solid waste facility authorized by the department to be operated or maintained under this chapter.

(b) The board of health shall adopt fees according to a schedule in which the amount of the fees is reasonably related to one or more of the following factors:

(1) the population served by the facility;

(2) the volume of waste handled by the facility; or

(3) the type and size of the facility.

(c) The board of health shall set the amount of fees under this section and Sections 361.014 and 361.065 to collect enough revenue to meet the expenses of performing the solid waste management, control, and permit duties of the department.

(d) The fees collected under this section shall be deposited to the credit of the general revenue fund. (V.A.C.S. Art. 4477-7, Secs. 4(k)(2), (4).)

Sec. 361.014. SOLID WASTE TRANSPORTATION FEE. (a) The department shall charge an annual fee to transporters of solid waste who are required to register with the department by rule adopted under this chapter.

(b) The board of health by rule shall adopt fees according to a schedule in which the amount of the fees is reasonably related to:

(1) the volume or the type of waste transported; or

(2) both the volume and type of waste.

(c) The board of health shall set the amount of the fees under this section and Sections 361.013 and 361.065 to collect enough revenue to meet the expenses of performing the solid waste management, control, and permit duties of the department. (V.A.C.S. Art. 4477-7, Secs. 4(k)(3), (4) (part).)

Sec. 361.015. DEPARTMENT'S JURISDICTION: RADIOACTIVE WASTE. The department is the state agency under Chapter 401 that regulates radioactive waste activities not preemptively regulated by the federal government. (V.A.C.S. Art. 4477-7, Sec. 3(d) (part).)

Sec. 361.016. MEMORANDUM OF UNDERSTANDING BY BOARD OF HEALTH. The board of health by rule shall adopt:

(1) any memorandum of understanding between the department and any other state agency; and

(2) any revision of a memorandum of understanding. (V.A.C.S. Art. 4477-7, Sec. 3(i).)

Sec. 361.017. COMMISSION'S JURISDICTION: INDUSTRIAL SOLID WASTE AND HAZARDOUS MUNICIPAL WASTE. (a) The commission is responsible for the management of industrial solid waste and hazardous municipal waste and shall coordinate industrial solid waste activities and hazardous municipal waste activities.

(b) The commission shall accomplish the purposes of this chapter by controlling all aspects of the management of industrial solid waste and hazardous municipal waste by all practical and economically feasible methods consistent with its powers and duties under this chapter and other law.

(c) The commission has the powers and duties specifically prescribed by this chapter and all other powers necessary or convenient to carry out its responsibilities under this chapter.

(d) In matters under the commission's jurisdiction, the commission shall consult with:

(1) the department concerning the public health aspects; and

(2) the Texas Air Control Board concerning the air pollution control and ambient air quality aspects. (V.A.C.S. Art. 4477-7, Sec. 3(b).)

Sec. 361.018. COMMISSION'S JURISDICTION OVER HAZARDOUS WASTE COMPONENTS OF RADIOACTIVE WASTE. (a) The commission has the powers under this chapter necessary or convenient to carry out its responsibilities concerning the regulation

of the management of hazardous waste components of radioactive waste under the department's jurisdiction.

(b) The commission shall consult with the department concerning regulation and management under this section.

(c) The commission may not adopt rules or engage in management activities under this section that conflict with state or federal laws and rules concerning the regulation of radioactive waste. (V.A.C.S. Art. 4477-7, Sec. 3(d) (part).)

Sec. 361.019. APPROVAL BY APPROPRIATE STATE AGENCY IF MIXING CERTAIN WASTES. (a) Class I industrial solid waste and hazardous waste may be accepted in a municipal solid waste facility if authorized in writing by the department with the written approval of the commission.

(b) Solid waste under the department's jurisdiction may be accepted in an industrial solid waste facility if authorized in writing by the commission with the written approval of the department. (V.A.C.S. Art. 4477-7, Sec. 3(c) (part).)

Sec. 361.020. STATE SOLID WASTE PLANS. (a) The department and the commission are each authorized to develop a state solid waste plan for solid waste under their respective jurisdictions and the state agencies shall coordinate the solid waste plans.

(b) In developing a solid waste plan for solid waste under its jurisdiction, the department shall consider the preference of municipal solid waste management methods under Section 361.022.

(c) Before the department or the commission adopts its solid waste plan or makes significant amendments to the plan, the Texas Air Control Board must have the opportunity to comment and make recommendations on the proposed plan or amendments and shall be given such reasonable time to do so as specified by the agency. (V.A.C.S. Art. 4477-7, Sec. 4(b).)

Sec. 361.021. INTERAGENCY COORDINATION COUNCIL. (a) The interagency coordination council shall coordinate the activities of its member agencies concerning the regulation of solid waste and solid waste management facilities and the enforcement of the applicable solid waste laws and rules.

(b) The council is composed of the executive head, or the executive head's designated representative, of the following agencies:

(1) the commission;

(2) the department;

(3) the Texas Air Control Board; and

(4) the Railroad Commission of Texas.

(c) The commission's representative is the council chairman.

(d) The council shall meet at least quarterly to review the solid waste regulatory and enforcement activities of the previous quarter and coordinate planned activities in the interest of efficiency and cooperation, including:

(1) the consideration of the use of waste exchange programs;

(2) the establishment of a clearinghouse for scientific and engineering information concerning hazardous waste management;

(3) the coordination of hazardous waste research and development activities;

(4) the coordination and development of consistent agency rules relevant to the regulation of hazardous waste activities;

(5) the evaluation of means to assist small quantity hazardous waste generators and affected communities in the effective and safe management and disposal of their regulated waste;

(6) the assessment of any preapplication public interactions with applicants to evaluate their effectiveness and to consider developing rules to incorporate those activities if appropriate;

(7) the consideration of the use of incentives to encourage waste minimization and reusing and recycling waste, and the use of resource recovery and detoxification equipment; and

(8) the evaluation of the feasibility of household hazardous waste collection and disposal programs.

(e) The chairman shall prepare a report summarizing each quarterly meeting. The report shall be submitted for approval by a majority of agencies represented on the council. The report is a public document. (V.A.C.S. Art. 4477-7, Secs. 3(g)(1), (2).)

Sec. 361.022. PUBLIC POLICY CONCERNING MUNICIPAL SOLID WASTE AND SLUDGE. (a) To protect the public health and environment, it is the state's public policy that, in generating, treating, storing, and disposing of municipal solid waste or municipal sludge, the methods listed under Subsections (b) and (c) are preferred to the extent economically and technologically feasible and considering the appropriateness of the method to the type of solid waste material or sludge generated, treated, disposed of, or stored.

(b) For municipal solid waste, not including sludge, the following methods are preferred, in the order listed:

(1) minimization of waste production;

(2) reuse or recycling of waste;

(3) treatment to destroy or reprocess waste to recover energy or other beneficial resources if the treatment does not threaten public health, safety, or the environment; or

(4) land disposal.

(c) For municipal sludge, the following methods are preferred, in the order listed:

(1) minimization of sludge production and concentrations of heavy metals and other toxins in sludge;

(2) treatment of sludge to reduce pathogens and recover energy, produce beneficial by-products, or reduce the quantity of sludge;

(3) marketing and distribution of sludge and sludge products if the marketing and distribution do not threaten public health, safety, or the environment;

(4) applying sludge to land for beneficial use;

(5) land treatment; or

(6) landfilling.

(d) In adopting rules to implement public policy concerning municipal solid waste management, the board of health shall consider the preference of municipal solid waste management methods under this section. (V.A.C.S. Art. 4477-7, Secs. 3(e)(3), (4); 4(c) (part).)

Sec. 361.023. PUBLIC POLICY CONCERNING HAZARDOUS WASTE. (a) To protect the public health and environment, it is the state's public policy that, in generating, treating, storing, and disposing of hazardous waste, the following methods are preferred to the extent economically and technologically feasible, in the order listed:

(1) minimization of waste production;

(2) reuse or recycling of waste, or both;

(3) treatment to destroy hazardous characteristics;

(4) treatment to reduce hazardous characteristics;

(5) underground injection; and

(6) land disposal.

(b) Under Subsection (a)(3), on-site destruction is preferred, but it shall be evaluated in the context of other relevant factors such as transportation hazard, distribution of risk, quality of destruction, operator capability, and site suitability. (V.A.C.S. Art. 4477-7, Secs. 3(e)(1), (2).)

Sec. 361.024. RULES AND STANDARDS. (a) The board of health and the commission may each adopt rules consistent with this chapter and establish minimum standards of operation for the management and control of the solid waste under their respective jurisdictions under this chapter.

(b) In developing rules concerning hazardous waste, the commission shall consult with the State Soil and Water Conservation Board, the Bureau of Economic Geology of The University of Texas at Austin, and other appropriate state sources.

(c) The minimum standards set by the commission for on-site storage of hazardous waste must be at least the minimum standards set by the manufacturer of the chemical.

(d) Rules adopted by the commission under Section 361.036 and Sections 361.097-361.108 for solid waste facilities may differ according to the type or hazard of hazardous waste managed and the type of waste management method used. (V.A.C.S. Art. 4477-7, Sec. 4(c) (part).)

Sec. 361.025. EXEMPT ACTIVITIES. (a) The commission and the Railroad Commission of Texas shall jointly prepare an exclusive list of activities that are associated with oil and gas exploration, development, and production and are therefore exempt from regulation under this chapter.

(b) The list shall be adopted by rule and amended as necessary. (V.A.C.S. Art. 4477-7, Sec. 3(f) (part).)

Sec. 361.026. ASSISTANCE PROVIDED BY DEPARTMENT AND COMMISSION. (a) The department and the commission may individually or jointly:

(1) provide educational, advisory, and technical services concerning solid waste management to other state agencies, regional planning agencies, local governments, special districts, institutions, and individuals; and

(2) assist other state agencies, regional planning agencies, local governments, special districts, and institutions in acquiring federal grants for:

(A) the development of solid waste facilities and management programs; and

(B) research to improve solid waste management.

(b) The department or the commission individually may engage in the programs and activities under this section only as the participation by it concerns the management and control of the solid waste under its jurisdiction.

(c) If the department and the commission do not participate jointly, each shall coordinate efforts undertaken individually so that separate but similar programs and activities are compatible. (V.A.C.S. Art. 4477-7, Sec. 4(h) (part).)

Sec. 361.027. TRAINING OF SOLID WASTE TECHNICIANS. (a) The department and the commission may each:

(1) develop a program to train solid waste technicians to improve the competency of those technicians; and

(2) issue letters of competency.

(b) The owner or operator of a solid waste facility is encouraged to employ as site manager a solid waste technician holding a letter of competency from the appropriate agency.

(c) The department and the commission may each:

(1) prescribe standards of training required for the program;

(2) determine the duration of the letter of competency;

(3) award one or more categories of letters of competency with each category reflecting a different degree of training or skill;

(4) require a reasonable, nonrefundable fee, in an amount determined from time to time by the agency, to be paid by participants, deposited to the credit of the general revenue fund, and used to administer the program;

(5) extend or renew letters of competency issued by the agency; and

(6) withdraw a letter of competency for good cause, which may include a violation of this chapter or a rule of the agency concerning the technician's duties and responsibilities. (V.A.C.S. Art. 4477-7, Sec. 4(g).)

Sec. 361.028.  INDUSTRIAL SOLID AND HAZARDOUS WASTE MATERIALS EXCHANGE. (a) The commission shall establish an industrial solid and hazardous waste materials exchange that provides for the exchange, between interested persons, of information concerning:

(1) particular quantities of industrial solid or hazardous waste available in this state for recovery;

(2) persons interested in acquiring certain types of industrial solid or hazardous waste for purposes of recovery; and

(3) methods for the treatment and recovery of industrial solid or hazardous waste.

(b) The industrial solid and hazardous waste materials exchange may be operated under one or more reciprocity agreements providing for the exchange of information described by Subsection (a) for similar information from a program operated in another state.

(c) The commission may contract for a private person or public entity to establish or operate the industrial solid and hazardous waste materials exchange.

(d) The commission may prescribe rules concerning the establishment and operation of the industrial solid and hazardous waste exchange, including the setting of a necessary subscription fee to offset the cost of participation in the program.

(e) The commission may seek grants and contract support from federal and other sources to the extent possible and may accept gifts to support its purposes and programs. (V.A.C.S. Art. 4477-7, Sec. 4A, as added by Ch. 139, Acts 70th Leg., Reg. Sess., 1987.)

Sec. 361.029.  COLLECTION AND DISPOSAL OF HOUSEHOLD MATERIALS THAT COULD BE CLASSIFIED AS HAZARDOUS WASTE. (a) The board of health and the commission shall provide by rule for interested persons to engage in activities that involve the collection and disposal of household materials that could be classified as hazardous waste.

(b) The rules must specify the necessary requirements concerning the training of persons involved in the collection and disposal of those household materials.

(c) A person is not liable for damages as a result of any act or omission in the course of advertising, promoting, or distributing educational materials concerning the collection or disposal of those household materials in accordance with the rules. This subsection does not preclude liability for damages as a result of gross negligence of or intentional misconduct by the person. (V.A.C.S. Art. 4477-7, Sec. 4(n).)

Sec. 361.030.  FEDERAL FUNDS. The department or commission may individually or jointly accept funds from the federal government for purposes concerning solid waste management and spend money received from the federal government for those purposes in the manner prescribed by law and in accordance with agreements as are necessary and appropriate between the federal government and the agency. (V.A.C.S. Art. 4477-7, Sec. 4(h) (part).)

Sec. 361.031.  FINANCIAL ASSISTANCE TO LOCAL GOVERNMENTS. (a) The department and the commission may administer and spend state funds provided to them by legislative appropriations, or otherwise, to make grants to local governments for:

(1) solid waste planning;

(2) installation of solid waste facilities; and

(3) administration of solid waste programs.

(b) The grants made under this chapter shall be distributed in a manner determined by the state agency to which the appropriation is made.

(c) The amount of financial assistance granted by the state through the department or commission to a local government under this chapter must be matched by local government funds at least in equal amounts. (V.A.C.S. Art. 4477-7, Sec. 4(i).)

Sec. 361.032. INSPECTIONS; RIGHT OF ENTRY. (a) The department and the commission are each authorized to inspect and approve solid waste facilities used or proposed to be used to store, process, or dispose of the solid waste under the agency's jurisdiction.

(b) Agents or employees of the department, the commission, or local governments have the right to enter at any reasonable time public or private property in the governmental entity's jurisdiction, including a municipality's extraterritorial jurisdiction, to inspect and investigate conditions concerning solid waste management and control.

(c) Agents or employees may not enter private property with management in residence without notifying the management, or the person in charge at the time, of their presence and presenting proper credentials.

(d) Agents or employees inspecting an establishment shall observe the establishment's rules on safety, internal security, and fire protection. (V.A.C.S. Art. 4477-7, Secs. 4(d), 7(a).)

Sec. 361.033. INSPECTIONS REQUIRED BY ENVIRONMENTAL PROTECTION AGENCY. (a) The commission shall inspect regulated hazardous waste management and disposal facilities periodically as required by the United States Environmental Protection Agency under the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C. Section 6901 et seq.).

(b) In supplementing the inspections under Subsection (a), the commission shall give priority to inspecting and reinspecting those facilities, including generators, considered most likely to be in noncompliance or most likely to pose an environmental or public health threat, regardless of whether the facilities are characterized as major or non-major facilities.

(c) The commission may randomly perform less comprehensive checks of facilities to supplement the more comprehensive inspections required by the United States Environmental Protection Agency. (V.A.C.S. Art. 4477-7, Sec. 7(c).)

Sec. 361.034. REPORTS. (a) The commission shall submit a report to the presiding officers of the legislature and the governor not later than January 1 of each odd-numbered year. The report must include:

(1) a summary of a performance report of the imposed hazardous waste permit and disposal fees, if the fees are approved by the legislature, and related activities to determine the appropriateness of the fee structure;

(2) an evaluation of progress made in accomplishing the state's public policy concerning the preference of waste management methods under Section 361.023; and

(3) projections for three years from the due date of the report of the volume of waste by type of waste, disposition of waste, and remaining waste disposal capacity.

(b) To develop the reports required under Subsection (a), the commission shall adopt rules requiring a person who generates, stores, treats, or disposes of hazardous waste to submit annually to the commission a report detailing projections of waste volume, disposition, and remaining capacity, concerning each facility owned or operated by the person. The report required under this subsection shall be submitted to the commission by March 1 of each year. (V.A.C.S. Art. 4477-7, Sec. 3(h) (part).)

Sec. 361.035. RECORDS AND REPORTS; DISPOSAL OF HAZARDOUS WASTE. (a) The commission by rule shall require operators of solid waste facilities for disposal of hazardous waste to maintain records and to submit to the commission reports necessary for the commission to determine the amount of hazardous waste disposal.

(b) The commission by rule shall establish the date on which a report required by this section is to be submitted. (V.A.C.S. Art. 4477-7, Sec. 13a.)

Sec. 361.036. RECORDS AND MANIFESTS REQUIRED; CLASS I INDUSTRIAL SOLID WASTE OR HAZARDOUS WASTE. The commission by rule shall require a person who generates, transports, processes, stores, or disposes of Class I industrial solid waste or hazardous waste to provide recordkeeping and use a manifest or other appropriate system to assure that the waste is transported to a processing, storage, or disposal facility permitted or otherwise authorized for that purpose. (V.A.C.S. Art. 4477-7, Sec. 4(c) (part).)

Sec. 361.037. ACCESS TO HAZARDOUS WASTE RECORDS. (a) Authorized agents or employees of the commission have access to and may examine and copy during regular business hours any records pertaining to hazardous waste management and control.

(b) Except as provided by this subsection, records copied under Subsection (a) are public records. If the owner of the records shows to the satisfaction of the executive director that the records would divulge trade secrets if made public, the commission shall consider the copied records confidential.

(c) Subsection (b) does not require the commission to consider the composition or characteristics of solid waste being processed, stored, disposed of, or otherwise handled to be held confidential. (V.A.C.S. Art. 4477-7, Secs. 7(b), (d).)

Sec. 361.038. ANNUAL INSPECTION REPORT. (a) In January of each year, the commission shall publish an annual inspection report that:

(1) summarizes the commission's inspection strategy and the results of inspections conducted during the previous fiscal year; and

(2) lists each hazardous waste treatment, storage, and disposal facility not inspected.

(b) The report must identify each hazardous waste facility inspected and include a list of:

(1) each facility that is in compliance with hazardous waste regulations, including each facility with an exemplary record of compliance over the preceding three years;

(2) each facility that has only minor or clerical violations; and

(3) each facility that has substantive, nonclerical violations, including each facility that has been adjudicated during the preceding three years to have committed substantive, nonclerical violations resulting in an actual release of hazardous waste that presented an imminent and substantial endangerment to the public health and safety or the environment.

(c) The report must identify the substantive, nonclerical violations and either summarize corrective actions or describe the status of unresolved violations.

(d) The report shall be submitted to the governor, lieutenant governor, and speaker of the house. The commission shall provide notice of the report's availability by publishing notice in the Texas Register. (V.A.C.S. Art. 4477-7, Secs. 7(e), (f), (g).)

Sec. 361.039. CONSTRUCTION OF OTHER LAWS. Except as specifically provided by this chapter, this chapter does not diminish or limit the authority of the department, the commission, the Texas Air Control Board, or a local government in performing the powers, functions, and duties vested in those governmental entities by other law. (V.A.C.S. Art. 4477-7, Sec. 14.)

[Sections 361.040–361.060 reserved for expansion]

## SUBCHAPTER C.  PERMITS

Sec. 361.061. PERMITS; SOLID WASTE FACILITY. Except as provided by Section 361.090 with respect to certain industrial solid waste, the department and the commission may each require and issue permits authorizing and governing the construction, operation, and maintenance of the solid waste facilities used to store, process, or dispose of the solid waste over which it has jurisdiction under this chapter. (V.A.C.S. Art. 4477-7, Sec. 4(e) (part).)

Sec. 361.062. COMPATIBILITY WITH COUNTY'S PLAN. (a) Before the department issues a permit to construct, operate, or maintain a solid waste facility to process, store, or dispose of solid waste in a county that has a local solid waste management plan approved by the board of health under Chapter 363 (Comprehensive Municipal Solid Waste Management, Resource Recovery, and Conservation Act), the department must consider whether the solid waste facility and the proposed site for the facility are compatible with the county's approved local solid waste management plan.

(b) Until a local solid waste management plan is approved by the board of health and adopted by rule, the department may not consider the plan and its contents in the review of an application for a solid waste facility permit. (V.A.C.S. Art. 4477-7, Sec. 4(o).)

Sec. 361.063. PREAPPLICATION LOCAL REVIEW COMMITTEE PROCESS. (a) The department and the commission shall encourage applicants for solid waste facilities under the jurisdiction of the department or for hazardous waste management facilities to enter into agreements with affected persons to resolve issues of concern. During this process, persons are encouraged to identify issues of concern and work with the applicant to resolve those issues.

(b) The agreement shall be made through participation in a local review committee process that includes a good faith effort to identify issues of concern, describe them to the applicant, and attempt to resolve those issues before the hearing on the permit application begins. A person is not required to be a local review committee member to participate in a local review committee process.

(c) If an applicant decides to participate in a local review committee process, the applicant must file with the department or commission, as appropriate, a notice of intent to file an application, setting forth the proposed location and type of hazardous waste management facility. A copy of the notice shall be delivered to the county judge of the county in which the facility is to be located. In addition, if the proposed facility is to be located in a municipality or the extraterritorial jurisdiction of a municipality, a copy of the notice shall be delivered to the mayor of the municipality. The filing of the notice with the department or commission, as appropriate, initiates the preapplication review process.

(d) Not later than the 15th day after the date the notice of intent is filed under Subsection (c), the local review committee shall be appointed. The board of health and commission shall adopt rules concerning the composition and appointment of a local review committee.

(e) The local review committee shall meet not later than the 21st day after the date the notice of intent is filed under Subsection (c). The preapplication review process must continue for 90 days unless the process is shortened or lengthened by agreement between the applicant and the local review committee.

(f) The commission, as appropriate, may award to a person, other than the applicant, who has participated in the local review committee process under this section concerning an application for a hazardous waste management facility all or a part of the person's reasonable costs for technical studies and reports and expert witnesses associated with the presentation of evidence at the public hearing concerning issues that are raised by the person in the local review committee process and that are unresolved at the beginning of the hearing on the permit application. The total amount of awards granted to all persons under this subsection concerning an application may not exceed $25,000. In determining the appropriateness of the award, the commission shall consider whether:

(1) the evidence or analysis provided by the studies, reports, and witnesses is significant to the evaluation of the application;

(2) the evidence or analysis would otherwise not have been provided in the proceeding; and

(3) the local review committee was established in accordance with commission rules.

(g) Except as provided by Subsection (k), if an applicant has not entered into a local review committee process, the commission, in determining the appropriateness of an award of costs under Subsection (f), shall waive any requirement that the person affected has participated in a local review committee process.

(h) Except as provided by Subsection (k), costs awarded by the commission under Subsection (f) are assessed against the applicant. Rules shall be adopted for the award of those costs. Judicial review of an award of costs is under the substantial evidence rule as provided by the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes).

(i) A local review committee shall:

(1) interact with the applicant in a structured manner during the preapplication review stage of the permitting process and, if necessary, during the technical review stage of the permitting process to raise and attempt to resolve both technical and nontechnical issues of concern; and

(2) produce a fact-finding report documenting resolved and unresolved issues and unanswered questions.

(j) The applicant must submit the report required under Subsection (i)(2) to the agency with its permit application.

(k) If an applicant, after reasonable efforts to determine if local opposition exists to its proposed facility, including discussing the proposed facility with the county judge and other elected officials, does not enter into a local review committee process because of no apparent opposition or, because a local review committee is not established despite the applicant's good faith efforts, costs may not be assessed against the applicant under Subsection (f).

(l) This section does not apply to:

· (1) a solid waste or hazardous waste management facility for which an application was filed, or that was authorized to operate, as of September 1, 1985;

(2) amendments to applications that were pending on September 1, 1987; or

(3) changes in waste storage or processing operations at existing sites at which waste management activities were being conducted on September 1, 1987. (V.A.C.S. Art. 4477-7, Sec. 4(e)(12).)

Sec. 361.064. PERMIT APPLICATION FORM AND PROCEDURES. If the department or the commission exercises the power to issue permits for solid waste facilities under this subchapter, the agency exercising the power, to the extent not otherwise provided by this subchapter, shall prescribe:

(1) the form of and reasonable requirements for the permit application; and

(2) the procedures for processing the application. (V.A.C.S. Art. 4477-7, Sec. 4(e) (part).)

Sec. 361.065. PERMIT APPLICATION FEE. (a) The department shall charge a fee for the submission to and review by the department of a permit application under this subchapter.

(b) The board of health by rule shall adopt fees according to a schedule in which the amount of the fees is reasonably related to one or more of the following:

(1) the population to be served by the facility;

(2) the volume of waste to be handled by the facility;

(3) the type and size of the facility; or

(4) the cost of the permit application review.

(c) The board of health shall set the amount of the fees under this section and Sections 361.013 and 361.014 to collect enough revenue to meet the expenses of performing the solid waste management, control, and permit duties of the department.

(d) The fees collected under this section shall be deposited to the credit of the general revenue fund. (V.A.C.S. Art. 4477-7, Secs. 4(k)(1), (4).)

Sec. 361.066. SUBMISSION OF ADMINISTRATIVELY COMPLETE PERMIT APPLICATION. (a) An applicant must submit any portion of an application that the department or the commission determines is necessary to make the application administratively complete not later than the 270th day after the applicant receives notice from the department or the commission that the additional information or material is needed.

(b) If an applicant does not submit an administratively complete application as required by this section, the application is considered withdrawn, unless there are extenuating circumstances. (V.A.C.S. Art. 4477-7, Sec. 4(e)(4)(B) (part), as amended by Ch. 299, Acts 70th Leg., Reg. Sess., 1987.)

Sec. 361.067. REVIEW OF PERMIT APPLICATION BY OTHER GOVERNMENTAL ENTITIES. (a) If the department or the commission determines that a permit application submitted to it is administratively complete, it shall mail a copy of the application or a summary of its contents to:

(1) the Texas Air Control Board;

(2) the other state agency;

(3) the mayor and health authority of a municipality in whose territorial limits or extraterritorial jurisdiction the solid waste facility is located; and

(4) the county judge and the health authority of the county in which the facility is located.

(b) A governmental entity to whom the information is mailed shall have a reasonable time, as prescribed by the state agency to which the application was originally submitted, to present comments and recommendations on the permit application before the agency acts on the application. (V.A.C.S. Art. 4477-7, Sec. 4(e)(1).)

Sec. 361.068. WHEN APPLICATION IS ADMINISTRATIVELY COMPLETE. A permit application is administratively complete when:

(1) a complete permit application form and the report and fees required to be submitted with a permit application have been submitted to the department or the commission; and

(2) the permit application is ready for technical review in accordance with the rules of the board of health or commission. (V.A.C.S. Art. 4477-7, Sec. 2(1).)

Sec. 361.069. DETERMINATION OF LAND USE COMPATIBILITY. The department or the commission in its discretion may, in processing a permit application, make a separate determination on the question of land use compatibility, and, if the site location is acceptable, may at another time consider other technical matters concerning the application. A public hearing may be held for each determination in accordance with Section 361.088. (V.A.C.S. Art. 4477-7, Sec. 4(e)(2) (part).)

Sec. 361.070. SOLE PERMIT HEARING. (a) Except for a permit described under Section 361.071, all participation in the review of a permit application must be through one agency hearing, which shall be the sole permit hearing.

(b) The department or the commission shall conduct the hearing as the lead agency in accordance with the division of their jurisdiction. (V.A.C.S. Art. 4477-7, Sec. 4(e)(4)(A)(i) (part).)

Sec. 361.071. PERMIT FROM OTHER AGENCIES. The owner or operator of a hazardous waste or solid waste management facility is not required to obtain a permit from any agency of the state other than the department or commission to store, process, treat, dispose of, or destroy solid waste or hazardous waste unless:

(1) a permit is required under the new source review requirements of Part C or D, Title I, of the federal Clean Air Act (42 U.S.C. Section 7401 et seq.) for a major source or a major modification; or

(2) a permit is required by the Railroad Commission of Texas under Chapter 27, Water Code. (V.A.C.S. Art. 4477-7, Sec. 4(e)(4)(A)(i) (part).)

Sec. 361.072. JOINT RULES OR MEMORANDA OF AGREEMENT WITH DEPARTMENT OR COMMISSION. (a) The Texas Air Control Board and other agencies that might otherwise have jurisdiction for permitting hazardous or solid waste facilities shall enter into joint rules or memoranda of agreement with the department or the commission.

(b) The joint rules or memoranda of agreement:

(1) must include the criteria that the Texas Air Control Board or other agency that might otherwise have jurisdiction may prescribe for use by the lead agency in addressing the concerns of the Texas Air Control Board or other agency in the permitting process; and

(2) shall at a minimum be consistent with the applicable requirements of the United States Environmental Protection Agency for state program authorization under the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C. Section 6901 et seq.).

(c) Consistent with Section 361.070, the joint rules or memoranda of agreement must provide for the incorporation of provisions in the permits of the department or the commission for off-site waste management facilities concerning units that are:

(1) not otherwise subject to the permitting requirements of the department or commission; and

(2) subject to the permitting requirements of the Texas Air Control Board or other relevant agency.

(d) It is the intent of the legislature that:

(1) to the extent practicable in conformance with Sections 361.070–361.078, the lead agency shall defer to the policies, rules, and interpretations of the Texas Air Control Board on the effect on air quality of the proposed hazardous waste or solid waste management activities; and

(2) the Texas Air Control Board remain the state's principal authority in matters of air pollution control. (V.A.C.S. Art. 4477–7, Secs. 4(e)(4)(A)(i) (part), (ii) (part).)

Sec. 361.073. AIR CONTROL BOARD REVIEW OF PERMIT APPLICATION. (a) Except as otherwise provided by Sections 361.070–361.083, the Texas Air Control Board shall perform a technical review of the air quality aspects of a permit application for a solid waste or a hazardous waste management facility concerning the criteria established under Section 361.072.

(b) Except for a permit application for a facility that incinerates or burns solid or hazardous waste, this section does not apply to an application for:

(1) a hazardous waste management facility that existed on September 1, 1987; or

(2) the expansion of a hazardous waste land disposal facility that existed on September 1, 1987.

(c) The Texas Air Control Board shall complete its review under this section and forward recommendations or proposed permit provisions to the lead agency within the time established by the lead agency rules for the completion of technical review of the application.

(d) The lead agency shall incorporate into its proposed action all recommendations or proposed permit provisions submitted by the Texas Air Control Board, unless the lead agency determines that the recommendations or proposed permit provisions are less stringent than applicable requirements of the United States Environmental Protection Agency for state program authorization under the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C. Section 6901 et seq.). If the Texas Air Control Board's proposed permit provisions conflict with provisions proposed by the lead agency technical staff, the staffs of the two agencies shall attempt to resolve the conflict before the technical review of the application ends.

(e) If a contested case hearing on a permit application is not held by the lead agency, the Texas Air Control Board's recommendations or proposed permit provisions shall be incorporated into the permit issued by the lead agency. If a contested case hearing is held, the Texas Air Control Board shall develop and present the state's evidence and testimony concerning the air quality aspects of the application. Any party, including the lead agency, is entitled to cross-examine any testifying witness of the Texas Air Control Board.

(f) At the conclusion of the presentation of testimony, the hearing examiner shall give the Texas Air Control Board at least 30 days in which to submit:

(1) proposed findings of fact and conclusions of law; and

(2) if applicable, proposed permit language, concerning the air quality aspects of the application that relate to the criteria established under Section 361.072.

(g) The hearing examiner and the final decision-making body of the lead agency must accept the information submitted by the Texas Air Control Board under Subsection (f) unless that body finds that the recommendations of the Texas Air Control Board are not supported by a preponderance of the evidence.

(h) The Texas Air Control Board may seek judicial review of the air quality aspects of a final decision of the lead agency. Both the lead agency and the Texas Air Control Board

may enforce the terms of a permit issued by the lead agency concerning air quality. (V.A.C.S. Art. 4477-7, Sec. 4(e)(4)(A)(ii) (part).)

Sec. 361.074. CERTAIN PERMIT APPLICATIONS NOT AFFECTED. (a) Permit applications for hazardous waste or solid waste management facilities for which contested evidentiary hearings have commenced at the Texas Air Control Board before September 1, 1985, or appeals from decisions of the Texas Air Control Board on those applications, are not affected by Sections 361.072–361.073 and 361.075–361.078.

(b) An applicant may not withdraw a permit application to circumvent the intent of Subsection (a). (V.A.C.S. Art. 4477-7, Sec. 4(e)(4)(A)(ii) (part).)

Sec. 361.075. DELEGATION OF AIR CONTROL BOARD AUTHORITY. The Texas Air Control Board may delegate to its executive director the powers and duties conferred on the board under Sections 361.072 and 361.073. (V.A.C.S. Art. 4477-7, Sec. 4(e)(4)(A)(ii) (part).)

Sec. 361.076. OTHER STATE AGENCIES' REVIEW OF PERMIT APPLICATION. (a) An agency other than the Texas Air Control Board may review the lead agency's proposed action concerning a permit application and determine if its concerns have been adequately addressed if the agency:

(1) might otherwise have jurisdiction for permitting the facility; and

(2) requested an opportunity to review the lead agency's proposed action.

(b) The other agency may review the lead agency's proposed action:

(1) after the lead agency completes its technical review of the permit application; and

(2) for a period of 20 days after the date on which the lead agency's technical review period ends.

(c) If the other agency determines that its concerns have not been adequately addressed, the other agency's sole remedy concerning the permit is to present its concerns in the permit proceedings of the lead agency.

(d) The other agency is entitled to:

(1) request a hearing;

(2) intervene as a matter of law;

(3) seek judicial review; and

(4) enforce each aspect of a lead agency permit concerning the other agency's jurisdiction. (V.A.C.S. Art. 4477-7, Sec. 4(e)(4)(A)(iii).)

Sec. 361.077. EXEMPTION OF CERTAIN FACILITIES THAT BURN HAZARDOUS WASTE. Sections 361.070–361.076 do not apply to a facility that burns hazardous waste unless the facility is required to obtain a permit for the burning from the commission under rules adopted by the commission under a state hazardous waste regulatory program. (V.A.C.S. Art. 4477-7, Sec. 4(e)(4)(A)(iv).)

Sec. 361.078. MAINTENANCE OF STATE PROGRAM AUTHORIZATION UNDER FEDERAL LAW. This subchapter does not abridge, modify, or restrict the authority of the commission to adopt rules under Subchapters B and C, to issue permits and to enforce the terms and conditions of the permits, concerning hazardous waste management to the extent necessary for the commission to receive and maintain state program authorization under Section 3006 of the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C. Section 6901 et seq.). (V.A.C.S. Art. 4477-7, Sec. 4(e)(4)(A)(v).)

Sec. 361.079. NOTICE CONCERNING RECEIPT OF PERMIT APPLICATION; HEARING PROCEDURES. (a) The board of health and the commission by rule shall establish procedures for public notice and a public hearing under Section 361.080 or 361.081.

(b) To improve the timeliness of notice to the public of a public hearing under Section 361.080 or 361.081, public notice of receipt of the permit application shall be provided at the time a permit application is administratively complete as determined by the department or the commission. (V.A.C.S. Art. 4477-7, Sec. 4(e)(4)(B) (part).)

Sec. 361.080. HEARING CONCERNING PERMIT APPLICATION FOR HAZARD-OUS INDUSTRIAL SOLID WASTE FACILITY. A hearing on an application for a permit concerning a hazardous industrial solid waste facility must include one session held in the county in which the facility is located. (V.A.C.S. Art. 4477-7, Sec. 4(e)(4)(B) (part).)

Sec. 361.081. NOTICE OF HEARING CONCERNING APPLICATION FOR LAND-FILL PERMIT. (a) The department shall give public notice of an opportunity for a hearing on an application for a landfill permit at least once each week for two consecutive weeks beginning not later than the 14th day from the last day allowed to request the hearing.

(b) The notice shall be published in the newspaper of the largest general circulation that is published in the county in which the proposed landfill will be located, unless a newspaper is not published in the county, in which case the notice shall be published in a newspaper of general circulation in the county.

(c) The department shall mail notice to each residence, business, and owner of real property located within one mile of the proposed landfill listed in the real property records of the county in which the landfill is sought to be permitted as of the date the department determines the permit application is administratively complete. The notice must be sent by certified or registered mail, return receipt requested, and be deposited with the United States postal service not more than 45 days or less than 30 days before the date of the hearing.

(d) The department shall presume that the notice requirements under Subsection (c) have been complied with on the applicant's verification to the department that the mailings were deposited as required by that subsection unless it is demonstrated by at least 35 percent of the affected parties that the applicant did not comply with that subsection.

(e) Hearings under this section shall be conducted in accordance with the hearing rules adopted by the department and the applicable provisions of the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes). (V.A.C.S. Art. 4477-7, Sec. 4(e)(4)(B), as amended by Ch. 781, Acts 70th Leg., Reg. Sess., 1987.)

Sec. 361.082. APPLICATION FOR HAZARDOUS WASTE PERMIT; NOTICE AND HEARING. (a) A person may not process, store, or dispose of hazardous waste without having first obtained a hazardous waste permit issued by the commission.

(b) On its own motion or the request of a person affected, the commission may hold a public hearing on an application for a hazardous waste permit in accordance with this subchapter.

(c) The commission by rule shall establish procedures for public notice and public hearing.

(d) The commission may include any requirement in the permit for remedial action by the applicant that the commission determines is necessary to protect the public health and safety and the environment.

(e) A person who, on or before November 19, 1980, began on-site processing, storing, or disposing of hazardous waste under this section and who has filed a hazardous waste permit application in accordance with commission rules may continue to process, store, or dispose of hazardous waste until the commission approves or denies the application, except as provided by Section 361.110. (V.A.C.S. Art. 4477-7, Sec. 4(f)(2).)

Sec. 361.083. EVIDENCE OF NOTICE OF HEARING. (a) Before the department or the commission may hear testimony in a contested case, evidence must be placed in the record to show that proper notice of the hearing was given to affected persons.

(b) If mailed notice to an affected person is required, the department, commission, or other party to the hearing shall place evidence in the record that notice was mailed to the affected person's address as shown by the appropriate county tax rolls at the time of the mailing.

(c) The affidavit of the department or commission employee responsible for the mailing of the notice, attesting that the notice was mailed to the address shown by the tax rolls at

the time of mailing, is prima facie evidence of proper mailing. (V.A.C.S. Art. 4477-7, Sec. 4(o)(4)(C) (part).)

Sec. 361.084. COMPLIANCE SUMMARIES. (a) The board of health and the commission each by rule shall establish a procedure to prepare compliance summaries relating to the applicant's solid waste management activities under each agency's jurisdiction.

(b) The compliance summaries shall be made available to the applicant and any interested person after the lead agency has completed its technical review of the permit application and before the issuance of the public notice concerning an opportunity for a hearing on the permit application.

(c) Evidence of compliance or noncompliance by an applicant for a solid waste facility permit with agency rules, permits, or other orders concerning solid waste management may be:

(1) offered by a party at a hearing concerning the application; and

(2) admitted into evidence subject to applicable rules of evidence.

(d) The agency shall consider all evidence admitted, including compliance history, in determining whether to issue, amend, extend, or renew a permit. (V.A.C.S. Art. 4477-7, Sec. 4(e)(11).)

Sec. 361.085. FINANCIAL ASSURANCE BY PERMIT APPLICANT. (a) Before a permit may be issued, amended, extended, or renewed for a solid waste facility to store, process, or dispose of hazardous waste, the commission shall determine the type or types of financial assurance that may be given by the applicant to comply with rules adopted by the commission requiring financial assurance.

(b) Before hazardous waste may be received for storage, processing, or disposal at a solid waste facility for which a permit is issued, amended, extended, or renewed, the commission shall require the permit holder to execute the required financial assurance conditioned on the permit holder's satisfactorily operating and closing the solid waste facility.

(c) An agency may condition issuance, amendment, extension, or renewal of a permit for a solid waste facility, other than a solid waste facility for disposal of hazardous waste, on the permit holder's executing a bond or giving other financial assurance conditioned on the permit holder's satisfactorily operating and closing the solid waste facility.

(d) The agency to which the application is submitted shall require an assurance of financial responsibility as may be necessary or desirable consistent with the degree and duration of risks associated with the processing, storage, or disposal of specified solid waste.

(e) Financial requirements established by the agency must at a minimum be consistent with the federal requirements established under the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C. Section 6901 et seq.).

(f) The department and the commission may each:

(1) receive funds as the beneficiary of a financial assurance arrangement established under this section for the proper closure of a solid waste management facility; and

(2) spend the funds from the financial assurance arrangement to close the facility.

(g) If liability insurance is required of an applicant, the applicant may not use a claims made policy as security unless the applicant places in escrow, as provided by the department or commission, an amount sufficient to pay an additional year of premiums for renewal of the policy by the state on notice of termination of coverage.

(h) In addition to other forms of financial assurance authorized by rules of the board of health or commission, the agency may authorize the applicant to use a letter of credit if the issuing institution or another institution that guarantees payment under the letter is:

(1) a bank chartered by the state or the federal government; and

(2) federally insured and its financial practices are regulated by the state or the federal government. (V.A.C.S. Art. 4477-7, Sec. 4(e)(5).)

Sec. 361.086. SEPARATE PERMIT FOR EACH FACILITY. (a) A separate permit is required for each solid waste facility.

(b) A permit under this subchapter may be issued only to the person in whose name the application is made and only for the facility described by the permit.

(c) A permit may not be transferred without first giving written notice to and receiving written approval of the agency that issued the permit. (V.A.C.S. Art. 4477-7, Secs. 4(e)(2) (part), (7).)

Sec. 361.087. CONTENTS OF PERMIT. A permit issued under this subchapter must include:

(1) the name and address of each person who owns the land on which the solid waste facility is located and the person who is or will be the operator or person in charge of the facility;

(2) a legal description of the land on which the facility is located; and

(3) the terms and conditions on which the permit is issued, including the duration of the permit. (V.A.C.S. Art. 4477-7, Sec. 4(e)(2) (part).)

Sec. 361.088. PERMIT ISSUANCE, AMENDMENT, EXTENSION, AND RENEWAL; NOTICE AND HEARING. (a) The department or the commission may amend, extend, or renew a permit it issues in accordance with reasonable procedures prescribed by the department or commission, as appropriate.

(b) The procedures prescribed by Section 361.067 for a permit application apply to an application to amend, extend, or renew a permit.

(c) Before a permit is issued, amended, extended, or renewed, the agency to which the application is submitted shall provide an opportunity for a hearing to the applicant and persons affected. The agency may also hold a hearing on its own motion. (V.A.C.S. Art. 4477-7, Secs. 4(e)(3), (4).)

Sec. 361.089. PERMIT AMENDMENT OR REVOCATION; NOTICE AND HEARING. (a) The department or commission may, for good cause, amend or revoke a permit it issues for reasons pertaining to public health, air or water pollution, or land use, or for a violation of this chapter or other applicable laws or rules controlling the management of solid waste.

(b) Except as provided by Section 361.110, the department or commission shall notify each governmental entity listed under Section 361.067 and provide an opportunity for a hearing to the permit holder and persons affected. The department or commission may also hold a hearing on its own motion.

(c) The board of health and the commission by rule shall establish procedures for public notice and any public hearing under this section.

(d) Hearings under this section shall be conducted in accordance with the hearing rules adopted by the department or commission and the applicable provisions of the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes). (V.A.C.S. Art. 4477-7, Sec. 4(e)(8).)

Sec. 361.090. REGULATION AND PERMITTING OF CERTAIN INDUSTRIAL SOLID WASTE DISPOSAL. (a) The commission may not require a permit under this chapter for the collection, handling, storage, processing, and disposal of industrial solid waste that is disposed of within the boundaries of a tract of land that is:

(1) owned or otherwise effectively controlled by the owners or operators of the particular industrial plant, manufacturing plant, mining operation, or agricultural operation from which the waste results or is produced; and

(2) located within 50 miles from the plant or operation that is the source of the industrial solid waste.

(b) This section does not apply to:

(1) waste collected, handled, stored, processed, or disposed of with solid waste from any other source or sources; or

(2) hazardous waste.

(c) This section does not change or limit any authority the commission may have concerning:

(1) the requirement of permits and the control of water quality, or otherwise, under Chapter 26, Water Code; or

(2) the authority under Section 361.303.

(d) The commission may adopt rules under Section 361.024 to control the collection, handling, storage, processing, and disposal of the industrial solid waste to which this section applies to protect the property of others, public property and rights-of-way, groundwater, and other rights requiring protection.

(e) The commission may require a person who disposes or plans to dispose of industrial solid waste and claims to be exempt under this section to submit to the commission information that is reasonably required to enable the commission to determine if this section applies to the waste disposal activity. (V.A.C.S. Art. 4477-7, Sec. 4(f)(1).)

Sec. 361.091. ENCLOSED CONTAINERS OR VEHICLES; PERMITS; INSPECTIONS; CRIMINAL PENALTY. (a) A solid waste site or operation permitted as a Type IV landfill may not accept solid waste that is in a completely enclosed container or enclosed vehicle unless:

(1) the solid waste is transported on a route approved by the department and designed to eliminate putrescible, hazardous, or infectious waste;

(2) the solid waste is delivered to the site or operation on a date and time designated and approved by the department to eliminate putrescible, hazardous, or infectious waste;

(3) the transporter possesses a special permit issued by the department that includes the approved route, date, and time; and

(4) a department inspector is present to verify that the solid waste is free of putrescible, hazardous, or infectious waste.

(b) The department may issue the special permit under this section and charge a reasonable fee to cover the costs of the permit. The board of health may adopt rules of procedure necessary to carry out the permit program.

(c) The department may employ one or more inspectors and other employees necessary to inspect and determine if Type IV landfills are free of putrescible, hazardous, or infectious waste. The department shall pay the compensation and expenses of inspectors and other necessary employees employed under this subsection, but the holders of Type IV landfill permits shall reimburse the department for the compensation and expenses as provided by this section.

(d) The department shall notify each holder of a Type IV landfill permit of the compensation and expenses that are required annually for the inspection of the landfills.

(e) The department shall hold a public hearing to determine the apportionment of the administration costs of the inspection program among the holders of Type IV landfill permits. After the hearing, the department shall equitably apportion the costs of the inspection program and issue an order assessing the annual costs against each permit holder. The department may provide for payments in installments and shall specify the date by which each payment must be made to the department.

(f) A holder of a permit issued under this section may not accept solid waste if the permit holder is delinquent in the payment of costs assessed under Subsection (e).

(g) The department's order assessing costs is effective until the department:

(1) modifies, revokes, or supersedes an order assessing costs with a subsequent order; or

(2) issues supplementary orders applicable to new Type IV landfill permits.

(h) The board of health may adopt rules necessary to carry out this section.

(i) An operator of a solid waste facility or a solid waste hauler commits an offense if the operator or hauler disposes of solid waste in a completely enclosed container or vehicle at a solid waste site or operation permitted as a Type IV landfill:

(1) without having in possession the special permit required by this section;

(2) on a date or time not authorized by the department; or

(3) without a department inspector present to verify that the solid waste is free of putrescible, hazardous, and infectious waste.

(j) An offense under this section is a Class B misdemeanor.

(k) Penalties under this section are in addition to any other penalty applicable under this chapter.

(*l*) This section does not apply to:

(1) a stationary compactor that is at a specific location and that has an annual permit under this section issued by the department, on certification to the department by the generator that the contents of the compactor are free of putrescible, hazardous, or infectious waste; or

(2) an enclosed vehicle of a municipality if the vehicle has a permit issued by the department to transport brush or construction-demolition waste and rubbish on designated dates, on certification by the municipality to the department that the contents of the vehicle are free of putrescible, hazardous, or infectious waste.

(m) In this section, "putrescible waste" means organic waste, such as garbage, wastewater treatment plant sludge, and grease trap waste, that may:

(1) be decomposed by microorganisms with sufficient rapidity as to cause odors or gases; or

(2) provide food for or attract birds, animals, or disease vectors. (V.A.C.S. Art. 4477-7, Sec. 4A, as added by Ch. 1119, Acts 70th Leg., Reg. Sess., 1987.)

Sec. 361.092. PERMIT FOR EXTRACTING MATERIALS FROM CERTAIN SOLID WASTE FACILITIES. (a) The department and the commission may each require a permit to extract materials for energy and material recovery and for gas recovery from closed or inactive portions of a solid waste facility that has been used for disposal of municipal or industrial solid waste.

(b) The department or the commission shall issue a permit under this section in the same manner as provided by this subchapter for issuance of a permit to operate and maintain a solid waste facility.

(c) Each agency shall adopt standards necessary to ensure that the integrity of a solid waste facility is maintained. (V.A.C.S. Art. 4477-7, Sec. 4(j).)

Sec. 361.093. REGULATION AND PERMITTING OF RENDERING PLANTS. (a) A manufacturing or processing establishment, commonly known as a rendering plant, that processes waste materials originating from animals and from materials of vegetable origin, including animal parts and scraps, offal, paunch manure, and waste cooking grease of animal and vegetable origin, is subject to regulation under the industrial solid waste provisions of this chapter and may be regulated under Chapter 26, Water Code.

(b) If a rendering plant is owned by a person who operates the plant as an integral part of an establishment that manufactures or processes for animal or human consumption food derived wholly or partly from dead, slaughtered, or processed animals, the combined business may operate under a single permit issued under Chapter 26, Water Code.

(c) This section does not apply to a rendering plant in operation and production on or before August 27, 1973.

(d) In this section, "animals" includes only animals, poultry, and fish. (V.A.C.S. Art. 4477-7, Sec. 4(e)(9).)

Sec. 361.094. PERMIT HOLDER EXEMPT FROM LOCAL LICENSE REQUIREMENTS. If a permit is issued, amended, renewed, or extended by the department or the commission in accordance with this subchapter, the solid waste facility owner or operator does not need to obtain a license for the same facility from a political subdivision under Section 361.165 or from a county. (V.A.C.S. Art. 4477-7, Sec. 4(e)(6) (part).)

Sec. 361.095. APPLICANT FOR HAZARDOUS WASTE MANAGEMENT FACILITY PERMIT EXEMPT FROM LOCAL PERMIT. (a) An applicant for a permit under this

subchapter is not required to obtain a permit for the siting, construction, or operation of a hazardous waste management facility from a local government or other political subdivision of the state.

(b) A local government or other political subdivision of the state may not adopt a rule or ordinance that conflicts with or is inconsistent with the requirements for hazardous waste management facilities as specified by the rules of the commission or by a permit issued by the commission.

(c) In an action to enforce a rule or ordinance of a local government or other political subdivision, the burden is on the facility owner or operator or on the applicant to demonstrate conflict or inconsistency with state requirements.

(d) The validity or applicability of a rule or ordinance of a local government or other political subdivision may be determined in an action for declaratory judgment under Chapter 37, Civil Practice and Remedies Code, if it is alleged that the rule or ordinance, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff concerning an application for or the issuance of a permit for the siting, construction, or operation of a hazardous waste management facility.

(e) The local government or other political subdivision whose rule or ordinance is being questioned shall be made a party to the action. The commission shall be given written notice by certified mail of the pendency of the action, and the commission may become a party to the action.

(f) A declaratory judgment may be rendered even if the plaintiff has requested the commission, the local government or political subdivision, or another court to determine the validity or applicability of the rule or ordinance in question. (V.A.C.S. Art. 4477-7, Sec. 4(e)(6) (part).)

Sec. 361.096. EFFECT ON AUTHORITY OF LOCAL GOVERNMENT OR OTHER POLITICAL SUBDIVISION. (a) Except as specifically provided by this chapter, this subchapter does not limit the powers and duties of a local government or other political subdivision of the state as conferred by this or other law.

(b) Sections 361.094 and 361.095 do not affect the power of a local government or other political subdivision to adopt or enforce building codes. (V.A.C.S. Art. 4477-7, Sec. 4(e)(6) (part).)

Sec. 361.097. CONDITION ON ISSUANCE OF PERMIT FOR HAZARDOUS WASTE MANAGEMENT FACILITY. The commission by rule shall condition the issuance of a permit for a new hazardous waste management facility or the areal expansion of an existing hazardous waste management facility on the selection of a facility site that reasonably minimizes possible contamination of surface water and groundwater. (V.A. C.S. Art. 4477-7, Sec. 4(c) (part).)

Sec. 361.098. PROHIBITION ON PERMIT FOR HAZARDOUS WASTE LANDFILL IN 100-YEAR FLOODPLAIN. The commission by rule shall prohibit the issuance of a permit for a new hazardous waste landfill or an areal expansion of such a landfill if the landfill is to be located in the 100-year floodplain existing before site development, unless the landfill is to be located in an area with a flood depth of less than three feet. (V.A.C.S. Art. 4477-7, Sec. 4(c) (part).)

Sec. 361.099. PROHIBITION ON PERMIT FOR HAZARDOUS WASTE MANAGEMENT UNIT IN WETLANDS. (a) The commission by rule shall prohibit the issuance of a permit for a new hazardous waste management unit or an areal expansion of an existing hazardous waste management unit if the unit is to be located in wetlands, as defined by the commission.

(b) In this section and Section 361.100, "hazardous waste management unit" means a landfill, surface impoundment, land treatment facility, waste pile, or storage or processing facility used to manage hazardous waste. (V.A.C.S. Art. 4477-7, Sec. 4(c) (part).)

Sec. 361.100. PROHIBITION ON PERMIT FOR CERTAIN HAZARDOUS WASTE MANAGEMENT UNITS. The commission by rule shall prohibit the issuance of a permit for a new hazardous waste management unit if the landfill:

(1) is in a floodplain of a perennial stream subject to not less than one percent chance of flooding in any year, delineated on a flood map adopted by the Federal Emergency Management Agency after September 1, 1985, as zone A1-99, V0, or V1-30; and

(2) receives hazardous waste for a fee. (V.A.C.S. Art. 4477-7, Sec. 4(c) (part).)

Sec. 361.101. PROHIBITION ON PERMIT FOR FACILITY ON RECHARGE ZONE OF SOLE SOURCE AQUIFER. The commission by rule shall prohibit the issuance of a permit for a new hazardous waste landfill, land treatment facility, surface impoundment, or waste pile, or areal expansion of such a facility, if the facility is to be located on the recharge zone of a sole source aquifer. (V.A.C.S. Art. 4477-7, Sec. 4(c) (part).)

Sec. 361.102. PROHIBITION ON PERMIT FOR FACILITY WITHIN 1,000 FEET OF RESIDENCE, CHURCH, SCHOOL, OR PARK. The commission by rule shall prohibit the issuance of a permit for a new hazardous waste landfill or land treatment facility or the areal expansion of such a facility if the boundary of the landfill or land treatment facility is to be located within 1,000 feet of an established residence, church, school, or dedicated public park that is in use:

(1) when the notice of intent to file a permit application is filed with the commission; or

(2) if no notice of intent is filed, when the permit application is filed with the commission. (V.A.C.S. Art. 4477-7, Sec. 4(c) (part).)

Sec. 361.103. OTHER AREAS UNSUITABLE FOR HAZARDOUS WASTE MANAGEMENT FACILITY. The commission by rule shall define the characteristics that make other areas unsuitable for a hazardous waste management facility, including consideration of:

(1) flood hazards;

(2) discharge from or recharge to a groundwater aquifer;

(3) soil conditions;

(4) areas of direct drainage within one mile of a lake used to supply public drinking water;

(5) active geological processes;

(6) coastal high hazard areas, such as areas subject to hurricane storm surge and shoreline erosion; or

(7) critical habitat of endangered species. (V.A.C.S. Art. 4477-7, Sec. 4(c) (part).)

Sec. 361.104. PROHIBITION ON PERMIT FOR FACILITY IN UNSUITABLE AREA. The commission by rule shall prohibit the issuance of a permit for a new hazardous waste management facility or an areal expansion of an existing hazardous waste management facility if the facility is to be located in an area determined to be unsuitable under rules adopted by the commission under Section 361.103 unless the design, construction, and operational features of the facility will prevent adverse effects from unsuitable site characteristics. (V.A.C.S. Art. 4477-7, Sec. 4(c) (part).)

Sec. 361.105. PETITION BY LOCAL GOVERNMENT FOR RULE ON HAZARDOUS WASTE FACILITY IN UNSUITABLE AREA. (a) The commission by rule shall allow a local government to petition the commission for a rule that restricts or prohibits the siting of a new hazardous waste disposal facility or other new hazardous waste management facility in an area including an area meeting one or more of the characteristics described by Section 361.103.

(b) A rule adopted under this section may not affect the siting of a new hazardous waste disposal facility or other new hazardous waste management facility if an application or a notice of intent to file an application concerning the facility is filed with the commission before the filing of a petition under this section. (V.A.C.S. Art. 4477-7, Sec. 4(c) (part).)

Sec. 361.106. PROHIBITION ON PERMIT FOR LANDFILL IF ALTERNATIVE EXISTS. The commission by rule shall prohibit the issuance of a permit for a new hazardous waste landfill or the areal expansion of an existing hazardous waste landfill if there is a practical, economic, and feasible alternative to the landfill that is reasonably

available to manage the types and classes of hazardous waste that might be disposed of at the landfill. (V.A.C.S. Art. 4477-7, Sec. 4(c) (part).)

Sec. 361.107. HYDROGEOLOGIC REPORT FOR CERTAIN HAZARDOUS WASTE FACILITIES. The commission by rule shall require an applicant for a new hazardous waste landfill, land treatment facility, or surface impoundment that is to be located in the apparent recharge zone of a regional aquifer to prepare and file a hydrogeologic report documenting the potential effects, if any, on the regional aquifer in the event of a release from the waste containment system. (V.A.C.S. Art. 4477-7, Sec. 4(c) (part).)

Sec. 361.108. ENGINEERING REPORT FOR HAZARDOUS WASTE LANDFILL. The commission by rule shall require an applicant for a new hazardous waste landfill filed after January 1, 1986, to provide an engineering report evaluating:

(1) the benefits, if any, associated with constructing the landfill above existing grade at the proposed site;

(2) the costs associated with the above grade construction; and

(3) the potential adverse effects, if any, that would be associated with the above grade construction. (V.A.C.S. Art. 4477-7, Sec. 4(c) (part).)

Sec. 361.109. GRANT OF PERMIT FOR HAZARDOUS WASTE MANAGEMENT FACILITY. The commission may grant an application for a permit in whole or in part for a hazardous waste management facility if it finds that:

(1) the applicant has provided for the proper operation of the proposed hazardous waste management facility;

(2) the applicant for a proposed hazardous waste management facility not located in an area of industrial land use has made a reasonable effort to ensure that the burden, if any, imposed by the proposed hazardous waste management facility on local law enforcement, emergency medical or fire-fighting personnel, or public roadways, will be reasonably minimized or mitigated; and

(3) the applicant, other than an applicant who is not an owner of the facility, owns or has made a good faith claim to, or has an option to acquire, or the authority to acquire by eminent domain, the property or portion of the property on which the hazardous waste management facility will be constructed. (V.A.C.S. Art. 4477-7, Sec. 4(e)(13).)

Sec. 361.110. TERMINATION OF AUTHORIZATION OR PERMIT. Authorization to store, process, or dispose of hazardous waste under Section 361.082 or under a solid waste permit issued under this subchapter that has not been reissued in accordance with an approved state program under Section 3006 of the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C. Section 6901 et seq.), terminates as follows:

(1) in the case of each land disposal facility, on November 8, 1985, unless the facility owner or operator applied for a final determination concerning the issuance of a permit before that date and certified that the facility was in compliance with all applicable groundwater monitoring and financial responsibility requirements;

(2) in the case of each incinerator facility, on November 8, 1989, unless the facility owner or operator applied for a final determination concerning the issuance of a permit by November 8, 1986; or

(3) in the case of any other solid waste facility, on November 8, 1992, unless the facility owner or operator applied for a final determination concerning the issuance of a permit by November 8, 1988. (V.A.C.S. Art. 4477-7, Sec. 4(*l*).)

[Sections 361.111-361.130 reserved for expansion]

SUBCHAPTER D.  HAZARDOUS WASTE GENERATION, FACILITY, AND DISPOSAL; FEES AND FUNDS

Sec. 361.131. DEFINITIONS. In this subchapter:

(1) "Dry weight" means the weight of constituents other than water.

(2) "Generator of hazardous waste" or "generator" means a person whose act or process produces hazardous waste or whose act first causes a hazardous waste to be regulated by the commission.

(3) "Hazardous waste" means solid waste not otherwise exempt that is identified or listed as hazardous waste by the administrator of the United States Environmental Protection Agency under the federal Solid Waste Disposal Act (42 U.S.C. Section 6901 et seq.) as of August 26, 1985.

(4) "Land disposal" does not include:

(A) the normal application of agricultural chemicals or fertilizers; or

(B) disposal of hazardous waste retrieved or created due to remediation of an inactive hazardous waste disposal facility for which a federal or state permit is not issued after August 26, 1985.

(5) "Land disposal facility" includes:

(A) a landfill;

(B) a surface impoundment, excluding an impoundment treating or storing waste that 's disposed of under Chapter 26 or 27, Water Code;

(C) a waste pile;

(D) a facility at which land farming or a land application process is used; and

(E) an injection well.

(6) "Primary metals high volume, low-hazard waste" is hazardous waste from the extraction, beneficiation, and processing of ores, minerals, or scrap metal and whose constituents are subject to the criteria for the identification or listing as a hazardous waste under Section 3001(a) of the Resource Conservation and Recovery Act of 1976 (42 U.S.C. Section 6901 et seq.) and account for 10 percent or less of its total dry weight volume. (V.A.C.S. Art. 4477-7, Sec. 12(a).)

Sec. 361.132. HAZARDOUS WASTE GENERATION AND FACILITY FEES FUND. (a) The hazardous waste generation and facility fees fund is in the state treasury.

(b) The fund consists of money collected by the commission from:

(1) fees imposed on hazardous waste generation and permitted or interim status solid waste facilities for processing, storing, or disposing of hazardous waste under Sections 361.134 and 361.135; and

(2) interest and penalties imposed under Section 361.137 for late payment of hazardous waste generation or facility fees.

(c) The commission may use the money in the fund only for regulation of hazardous waste, including payment to other state agencies for services provided under contract concerning enforcement of this chapter.

(d) The total amount of hazardous waste generation fees and facility fees collected and deposited to the credit of the hazardous waste generation and facility fees fund in a fiscal year may not be less than $3.5 million or more than $4.5 million. (V.A.C.S. Art. 4477-7, Secs. 11a(a) (part), (b); 12(b) (part), (c) (part).)

Sec. 361.133. HAZARDOUS WASTE DISPOSAL FEE FUND. (a) The hazardous waste disposal fee fund is in the state treasury.

(b) The fund consists of money collected by the commission from:

(1) fees imposed on the operator of a solid waste facility for disposal of hazardous waste under Section 361.136;

(2) interest and penalties imposed under Section 361.137 for late payment of a disposal fee or late filing of a report; and

(3) money paid by a person liable for facility cleanup and maintenance under Subchapter F.

(c) The commission may use the money collected and deposited to the credit of the fund under this section only for:

(1) necessary and appropriate removal and remedial action at sites at which hazardous waste or hazardous substances have been disposed if funds from a liable person, independent third person, or the federal government are not sufficient for the removal or remedial action;

(2) necessary and appropriate maintenance of removal and remedial actions for the expected life of those actions if:

(A) funds from a liable person have been collected and deposited to the credit of the fund for that purpose; or

(B) funds from a liable person, independent third person, or the federal government are not sufficient for the maintenance; and

(3) expenses concerning compliance with:

(A) the federal Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. Section 9601 et seq.);

(B) the federal Superfund Amendments and Reauthorization Act of 1986 (10 U.S.C. Section 2701 et seq.); and

(C) Subchapters F and I. (V.A.C.S. Art. 4477-7, Secs. 11a(a) (part), (c), (d), 12(d) (part).)

Sec. 361.134. HAZARDOUS WASTE GENERATION FEE. (a) The annual hazardous waste generation fee prescribed by this section is imposed on each generator of hazardous waste who generates hazardous waste during any part of the year.

(b) The commission shall:

(1) require each generator of hazardous waste to register its activities; and

(2) collect the annual hazardous waste generation fee imposed under this section.

(c) The commission by rule shall adopt a generation fee schedule for use in determining the amount of fees to be charged. The annual generation fee may not be less than $50 or more than $15,000.

(d) A generator of less than 100 kilograms of hazardous waste each month is exempt from the payment of a generation fee under this section. (V.A.C.S. Art. 4477-7, Sec. 12(b) (part).)

Sec. 361.135. HAZARDOUS WASTE FACILITY FEE. (a) The annual facility fee is imposed on each facility that holds one or more permits or is operating a hazardous waste management unit subject to permit authorization to process, store, or dispose of hazardous waste during any part of the year.

(b) The commission by rule shall adopt a facility fee schedule for determining the amount of each annual fee to be charged. In adopting the schedule, the commission shall consider:

(1) the permitted capacity of facilities; and

(2) variations in the costs necessary to regulate different types of facilities.

(c) The annual facility fee may not be less than $250. The maximum fee for a facility may not exceed $25,000. The annual fee to be charged each hazardous waste facility must be that set by the fee schedule adopted by the commission.

(d) The commission shall collect the facility fee imposed under this section.

(e) During a year in which a facility subject to interim status requirements receives a final permit, the facility fee under this section may be imposed only on one of those classifications. (V.A.C.S. Art. 4477-7, Sec. 12(c) (part).)

Sec. 361.136. HAZARDOUS WASTE DISPOSAL FEE. (a) A fee for each dry weight ton of hazardous waste deposited in a land disposal facility is imposed on the operator of a hazardous waste land disposal facility.

(b) The commission by rule shall:

(1) set the fee for each dry weight ton of hazardous waste, as provided by Subsection (e); and

(2) provide for methods of computing the dry weight of hazardous waste.

(c) The amount of the fee for primary metals high volume, low-hazard waste is 25 percent of the amount of the fee set under Subsection (b)(1).

(d) The generator of hazardous waste shall provide certification:

(1) of the computation to the operator of the dry weight of the hazardous waste to be disposed of; or

(2) that the composition of the industrial solid waste meets the definition of a primary metals high volume, low-hazard waste, in the case of primary metals high volume, low-hazard waste.

(e) The commission by rule may provide for a method to determine or estimate the dry weight of small volumes of hazardous waste delivered to commercial hazardous waste disposal facilities for which costs of analyzing the waste to determine dry weight are disproportionate.

(f) The commission by rule shall set the hazardous waste disposal fee and revise it as necessary so that the amount of money collected each biennium equals between $10 million and $12 million or an amount set by legislative appropriation.

(g) In setting a different amount by legislative appropriation to be raised in fees during a biennium, the legislature shall consider only:

(1) the amount necessary to raise the required state matches for remedial actions under the federal Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. Section 9601 et seq.), as amended by the Superfund Amendments and Reauthorization Act of 1986 (10 U.S.C. Section 2701 et seq.); and

(2) the cost of state-funded remedial actions under Subchapter F.

(h) If during the biennium additional funds are necessary to match newly available federal funds under the federal Superfund Amendments and Reauthorization Act of 1986 (10 U.S.C. Section 2701 et seq.), the commission may increase the fee to collect the necessary matching funds.

(i) The commission shall collect the hazardous waste disposal fee quarterly on dates established by rule. (V.A.C.S. Art. 4477-7, Sec. 12(d) (part).)

Sec. 361.137. INTEREST AND PENALTIES. (a) Interest at an annual rate of 15 percent of the amount of a fee due under Section 361.134, 361.135, or 361.136 and unpaid accrues from the date on which the fee is due.

(b) A person is subject to a civil penalty of $100 for each day the violation continues for failure to timely submit a report as required by commission rule under Section 361.035.

(c) Interest collected under this section for late payment of generation or facility fees shall be deposited in the state treasury to the credit of the hazardous waste generation and facility fees fund.

(d) Interest and penalties collected under this section for late payment of disposal fees and late filing of reports shall be deposited in the state treasury to the credit of the hazardous waste disposal fee fund. (V.A.C.S. Art. 4477-7, Sec. 14a.)

[Sections 361.138–361.150 reserved for expansion]

## SUBCHAPTER E. POWERS AND DUTIES OF LOCAL GOVERNMENTS

Sec. 361.151. RELATIONSHIP OF COUNTY AUTHORITY TO STATE AUTHORITY. (a) Each county has the solid waste management powers prescribed under this subchapter.

(b) The exercise of the licensing authority and other powers granted to a county by this chapter does not preclude the department or the commission from exercising the powers vested in the department or the commission under other provisions of this chapter, including the provisions authorizing the department and the commission to issue a permit to construct, operate, and maintain a facility to process, store, or dispose of solid waste.

(c) The department and the commission, each acting within its separate scope of jurisdiction, by specific action or directive, may supersede any authority granted to or exercised by a county under this chapter. (V.A.C.S. Art. 4477-7, Sec. 5(a) (part).)

Sec. 361.152. LIMITATION ON COUNTY POWERS CONCERNING INDUSTRIAL SOLID WASTE. The powers specified by Sections 361.154–361.162 and Sections 364.011 and 364.012 (County Solid Waste Control Act) may not be exercised by a county with respect to the industrial solid waste disposal practices and areas to which Section 361.090 applies. (V.A.C.S. Art. 4477-7, Sec. 5(a) (part).)

Sec. 361.153. COUNTY SOLID WASTE PLANS AND PROGRAM; FEES. A county may:

(1) appropriate and spend money from its general revenues to manage solid waste and to administer a solid waste program and may charge reasonable fees for those services; and

(2) develop county solid waste plans and coordinate those plans with the plans of local governments, regional planning agencies, other governmental entities, the department, and the commission. (V.A.C.S. Art. 4477-7, Secs. 5(b), (c).)

Sec. 361.154. COUNTY LICENSING AUTHORITY. (a) Except as provided by Sections 361.151 and 361.152, a county may require and issue licenses authorizing and governing the operation and maintenance of facilities used to process, store, or dispose of solid waste, other than hazardous waste, in an area not in the territorial limits or extraterritorial jurisdiction of a municipality.

(b) If a county exercises licensing authority, it shall adopt and enforce rules for the management of solid waste. The rules must be:

(1) compatible with and not less stringent than those of the board of health or the commission, as appropriate; and

(2) approved by the department or the commission, as appropriate.

(c) Sections 361.155–361.161 apply if a county exercises licensing authority under this section. (V.A.C.S. Art. 4477-7, Sec. 5(d) (part).)

Sec. 361.155. COUNTY NOTIFICATION OF LICENSE APPLICATION TO STATE AGENCIES. The county shall mail a copy of each license application with pertinent supporting data to the department, the commission, and the Texas Air Control Board. Each agency has at least 60 days to submit comments and recommendations on the license application before the county may act on the application unless that privilege is waived by the affected agency. (V.A.C.S. Art. 4477-7, Sec. 5(d) (part).)

Sec. 361.156. SEPARATE LICENSE FOR EACH FACILITY. (a) A county shall issue a separate license for each solid waste facility.

(b) A license under this subchapter may be issued only to the person in whose name the application is made and only for the facility described in the license.

(c) A license may not be transferred without prior notice to and approval by the county that issued it. (V.A.C.S. Art. 4477-7, Sec. 5(d) (part).)

Sec. 361.157. CONTENTS OF LICENSE. A license for a solid waste facility issued by a county must include:

(1) the name and address of each person who owns the land on which the solid waste facility is located and the person who is or will be the operator or person in charge of the facility;

(2) a legal description of the land on which the facility is located; and

(3) the terms and conditions on which the license is issued, including the duration of the license. (V.A.C.S. Art. 4477-7, Sec. 5(d) (part).)

Sec. 361.158. LICENSE FEE. (a) A county may charge a license fee not to exceed $100, as set by the commissioners court of the county.

(b) The fees shall be deposited to the credit of the county's general fund. (V.A.C.S. Art. 4477-7, Sec. 5(d) (part).)

Sec. 361.159. LICENSE ISSUANCE, AMENDMENT, EXTENSION, AND RENEWAL. (a) A county may amend, extend, or renew a license it issues in accordance with county rules.

(b) The procedures prescribed by Section 361.155 apply to an application to amend, extend, or renew a license.

(c) A license for the use of a facility to process, store, or dispose of solid waste may not be issued, amended, renewed, or extended without the prior approval of the department or the commission, as appropriate. (V.A.C.S. Art. 4477-7, Sec. 5(d) (part).)

Sec. 361.160. LICENSE AMENDMENT AND REVOCATION. (a) A county may, for good cause, after hearing with notice to the license holder and to the state agencies specified by Section 361.155, revoke or amend a license it issues for reasons concerning:

(1) public health;

(2) air or water pollution;

(3) land use; or

(4) a violation of this chapter or of other applicable laws or rules controlling the processing, storage, or disposal of solid waste.

(b) For similar reasons, the department and the commission, each acting within its separate scope of jurisdiction, may for good cause amend or revoke a license issued by a county, after hearing with notice to:

(1) the license holder;

(2) the county that issued the license; and

(3) the other state agencies specified by Section 361.155. (V.A.C.S. Art. 4477-7, Sec. 5(d) (part).)

Sec. 361.161. PERMIT FROM DEPARTMENT OR COMMISSION NOT REQUIRED. If a county issues, amends, renews, or extends a license in accordance with Sections 361.154-361.160, the owner or operator of the facility is not required to obtain a permit from the department or the commission for the same facility. (V.A.C.S. Art. 4477-7, Sec. 5(d) (part).)

Sec. 361.162. DESIGNATION OF AREAS SUITABLE FOR FACILITIES. (a) Subject to the limitation under Sections 361.151 and 361.152, a county may designate land areas not in the territorial limits or extraterritorial jurisdiction of a municipality as suitable for use as solid waste facilities.

(b) The county shall base a designation on the principles of public health, safety, and welfare, including proper land use, compliance with state statutes, and other pertinent factors. (V.A.C.S. Art. 4477-7, Sec. 5(e).)

Sec. 361.163. COOPERATIVE AGREEMENTS WITH LOCAL GOVERNMENTS. A county may enter into cooperative agreements with local governments and other governmental entities to jointly operate solid waste management activities and to charge reasonable fees for the services. (V.A.C.S. Art. 4477-7, Sec. 5(h).)

Sec. 361.164. ENFORCEMENT. A county may enforce this chapter and the rules adopted by the board of health and the commission concerning the management of solid waste. (V.A.C.S. Art. 4477-7, Sec. 5(f).)

Sec. 361.165. POLITICAL SUBDIVISIONS WITH JURISDICTION IN TWO OR MORE COUNTIES. (a) This section applies to a political subdivision of the state that:

(1) has jurisdiction of territory in more than one county; and

(2) has been granted the power by the legislature to regulate solid waste handling or disposal practices or activities in its jurisdiction.

(b) The governing body of the political subdivision may, by resolution, assume for the political subdivision the exclusive authority to exercise, in the area subject to its jurisdiction, the powers granted by this chapter to a county, to the exclusion of the exercise of the same powers by the counties otherwise having jurisdiction over the area.

(c) In the exercise of those powers, the political subdivision is subject to the same duties, limitations, and restrictions applicable to a county under this chapter.

(d) A political subdivision that assumes the authority granted under this section:

(1) serves as the coordinator of all solid waste management practices and activities for municipalities, counties, and other governmental entities in its jurisdiction that have solid waste management regulatory powers or engage in solid waste management practices or activities; and

(2) shall exercise the authority as long as the resolution of the political subdivision is effective. (V.A.C.S. Art. 4477-7, Sec. 6.)

Sec. 361.166. MUNICIPAL RESTRICTIONS. A municipality may not abolish or restrict the use or operation of a solid waste facility in its limits or extraterritorial jurisdiction if the solid waste facility:

(1) was in existence when the municipality was incorporated or was in existence when the municipality annexed the area in which it is located; and

(2) is operated in substantial compliance with applicable state and county regulations. (V.A.C.S. Art. 4477-7, Sec. 6a(a).)

Sec. 361.167. OPERATION OF FACILITY BY POLITICAL SUBDIVISION. A municipality or other political subdivision operating a solid waste facility may not be prevented from operating the solid waste facility on the ground that the facility is located in the limits or extraterritorial jurisdiction of another municipality. (V.A.C.S. Art. 4477-7, Sec. 6(b).)

[Sections 361.168-361.180 reserved for expansion]

SUBCHAPTER F. REGISTRY AND CLEANUP OF CERTAIN
HAZARDOUS WASTE FACILITIES

Sec. 361.181. REGISTRY. (a) The commission shall publish a registry:

(1) identifying each facility listed by the survey required under Section 12, Chapter 566, Acts of the 69th Legislature, Regular Session, 1985;

(2) assigning the relative priority of the need for action at each facility to remedy environmental and health problems resulting from the presence of hazardous waste at those facilities; and

(3) recommending actions to achieve effective, efficient, and timely cleanup or other resolution of the problems identified for each facility.

(b) A recommendation under Subsection (a)(3) is not the remedial investigation and feasibility study for the relevant facility but must form the basis for the study. (V.A.C.S., Art. 4477-7, Sec. 13(a) (part).)

Sec. 361.182. INVESTIGATION OF FACILITIES LISTED IN REGISTRY. The commission may, in accordance with Section 361.032, investigate:

(1) facilities listed in the registry; and

(2) areas or sites that it has reason to believe should be included in the registry. (V.A.C.S. Art. 4477-7, Sec. 13(b)(1).)

Sec. 361.183. RELATIVE PRIORITY FOR ACTION AT EACH FACILITY LISTED IN REGISTRY. The commission shall, in cooperation with the department and as part of the registry, reassess by January 1 of each year the relative priority of the need for action at each facility listed in the registry to remedy environmental and health problems resulting from the presence of hazardous waste at those facilities. The reassessments shall be made according to new information received from public hearings and other sources. (V.A.C.S. Art. 4477-7, Sec. 13(b)(2).)

Sec. 361.184. REVISION OF REGISTRY; FILING NOTICE. The commission shall:

(1) revise the registry periodically to:

(A) add facilities that may be an imminent and substantial endangerment to public health and safety or the environment; and

(B) delete facilities that have been cleaned up under this subchapter or removed from the registry under Section 361.186; and

(2) file an affidavit or notice in the real property records of the county in which a facility is located identifying those facilities included in and deleted from the registry. (V.A.C.S. Art. 4477-7, Secs. 13(c), (d).)

Sec. 361.185. NOTICE OF INCLUSION IN REGISTRY. (a) The commission shall notify in writing any person identified as responsible for all or any part of a facility or area that is not listed in the registry of the contemplated addition of the facility or area in the registry.

(b) The notice must be sent by certified mail, return receipt requested, to each named responsible person at the person's last known address not later than two months before the revised registry is published.

(c) The notice must include a description of the duties and restrictions imposed by Section 361.187.

(d) The failure to receive a notice mailed to a named responsible person under this section does not affect the responsibilities, duties, or liabilities imposed on the person. (V.A.C.S. Art. 4477-7, Secs. 13(e)(1) (part), (2), (3).)

Sec. 361.186. REQUEST FOR CHANGE IN REGISTRY. (a) An owner or operator of a facility or other named person responsible for a facility listed or to be listed in the registry of the commission under this subchapter may, by submitting a written statement setting forth the grounds of the request in the form as the commission may require, request the commission to:

(1) delete the facility from the registry;

(2) modify the facility's priority in the registry; or

(3) modify information concerning the facility.

(b) The commission by rule shall establish procedures, including public hearings, for review of requests submitted under this section to delete a facility. (V.A.C.S. Art. 4477-7, Secs. 13(e)(4), (5) (part).)

Sec. 361.187. CHANGE IN USE OF FACILITY LISTED IN REGISTRY. (a) A person may not substantially change the manner in which a facility listed in the registry is used without notifying the commission and receiving the commission's written approval for the change.

(b) The commission by rule shall define a substantial change of use and include in the definition:

(1) the erection of a building or other structure at the facility and similar actions;

(2) the use of the facility for agricultural production;

(3) the paving of the facility for use as a roadway or parking lot; and

(4) the creation of a park or other public or private recreational facility on the facility.

(c) The notice under Subsection (a) must:

(1) be in writing and addressed to the executive director;

(2) include a brief description of the proposed change of use; and

(3) be submitted at least 60 days before the day physical alteration of the land or construction occurs or, if no alteration or construction is required to initiate the change of use, at least 60 days before the date of change of use.

(d) The executive director may not approve a change of use under this section if the new use will:

(1) interfere significantly with a proposed, ongoing, or completed hazardous waste facility remedial action program at the facility; or

(2) expose the environment or public health to a significantly increased threat of harm. (V.A.C.S. Art. 4477-7, Secs. 13(f)(1), (2).)

Sec. 361.188. CLEANUP OF CERTAIN HAZARDOUS WASTE FACILITIES. The cleanup of a facility identified under Section 361.181 by the commission in the registry

2647

and that is an imminent and substantial endangerment to the public health and safety or the environment shall be expedited. (V.A.C.S. Art. 4477-7, Sec. 13(g)(1) (part).)

Sec. 361.189. PRIORITY OF USE OF FUNDS FOR CLEANUP. (a) Payment for cleanup of a facility identified in the registry shall be made in the following order:

(1) by private funding;

(2) by federal funding; and

(3) by state funding from the hazardous waste permit and disposal fee, if approved by the legislature.

(b) If voluntary assistance from private sources is not available, federal funds must be used for facility cleanup if those funds are available when needed.

(c) State funds may be used only if funds from a liable person, an independent third person, or the federal government are not available when needed. (V.A.C.S. Art. 4477-7, Secs. 13(a) (part), (g)(1) (part).)

Sec. 361.190. IMMEDIATE REMOVAL ACTION; RECOVERY OF COSTS. (a) The commission may, with the funds available to the commission from the hazardous waste permit and disposal fees if approved by the legislature, undertake immediate removal action at a facility to alleviate irreversible or irreparable harm, if the commission after an investigation finds that:

(1) a release or threatened release of hazardous waste that is causing irreversible or irreparable harm to the public health and safety or the environment exists at a facility identified by the registry; and

(2) the immediacy of the situation makes it prejudicial to the public interest to delay action until:

(A) an administrative order can be issued to a person liable under Section 361.191; or

(B) a judgment can be entered in an appeal of an administrative order.

(b) Findings required under Subsection (a) must be made in writing and may be made ex parte. The findings are subject to judicial review under the substantial evidence rule as provided by the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes).

(c) The reasonable expenses of immediate removal action taken by the commission under this section may be recovered from a person identified as liable under Subchapter I. The state may seek to recover the reasonable expenses in a court of appropriate jurisdiction. (V.A.C.S. Art. 4477-7, Sec. 13(g)(3) (part).)

Sec. 361.191. ADMINISTRATIVE ORDER CONCERNING FACILITY LISTED IN REGISTRY. (a) If the commission finds that there exists an actual or threatened release of hazardous waste at a hazardous waste facility listed in the registry that presents an imminent and substantial endangerment to the public health and safety or the environment, or after any immediate danger of irreversible or irreparable harm is alleviated under Section 361.190, the commission may issue an administrative order to:

(1) the owner or operator of the facility;

(2) any other person responsible for the release of hazardous waste or a threatened release at the facility; or

(3) each of the persons under Subdivisions (1) and (2).

(b) The order may require a person liable under Subchapter I to:

(1) develop a remedial action program at the facility, subject to the commission's approval; and

(2) implement the program within a reasonable time specified by the order.

(c) The provisions of Subchapters I, K, and L concerning administrative orders apply to an order issued under this section. (V.A.C.S. Art. 4477-7, Secs. 13(g)(2), (3) (part).)

Sec. 361.192. VOLUNTARY CLEANUP OF FACILITY. (a) If possible, persons identified as persons liable under Subchapter I should be notified by the commission of an opportunity to participate voluntarily in a cleanup of the facility.

(b) If all persons liable under Subchapter I do not volunteer to develop and implement a remedial action program for the facility, private individuals or entities that volunteer to participate in cleanup activities should be allowed to do so and may recover costs under Section 361.344 from liable persons who do not participate in the voluntary cleanup.

(c) If no persons liable under Subchapter I volunteer to develop and implement a remedial action program for the facility, independent third persons who volunteer to participate in the cleanup of the facility should be permitted to contract with the commission to do so. Independent third persons may recover costs under Section 361.344 from liable persons who do not participate in the voluntary cleanup. (V.A.C.S. Art. 4477–7, Sec. 13(g)(1) (part).)

Sec. 361.193. REMEDIAL ACTION PROGRAM BY COMMISSION ON FAILURE OF RESPONSIBLE PERSON. (a) The commission may develop and implement a remedial action program for a facility if:

(1) a person ordered to eliminate an imminent and substantial endangerment to the public health and safety or the environment fails to do so within the time prescribed by the order; and

(2) no third person agrees to develop and implement a remedial action program for the facility under Section 361.192(c).

(b) Persons to whom the order is issued shall pay the commission's reasonable expenses of developing and implementing the remedial action program. The state may recover those reasonable expenses in a court of appropriate jurisdiction.

(c) An action instituted by the commission under this section is subject to Subchapters I, K, and L. (V.A.C.S. Art. 4477–7, Sec. 13(g)(4).)

Sec. 361.194. REMEDIAL ACTION PROGRAM BY COMMISSION IF NO RESPONSIBLE PERSON. (a) The commission may develop and implement a remedial action program for a facility identified by the registry if:

(1) the commission finds that at the facility there exists a release or threatened release of hazardous waste that presents an imminent and substantial endangerment to the public health and safety or the environment;

(2) after a reasonable attempt to determine who may be liable for the release or threatened release in accordance with Section 361.192, the commission cannot:

(A) determine who may be liable; or

(B) locate a person who may be liable; and

(3) no independent third person agrees to develop and implement a remedial action program for the facility under Section 361.192(c).

(b) Federal funds shall be used for a cleanup under this section to the extent available when needed in accordance with Section 361.189(b).

(c) The commission shall make every effort to obtain appropriate relief from a person subsequently identified or located who is liable for the release or threatened release of hazardous waste at the facility, including recovery of:

(1) the cost of developing and implementing a remedial action program;

(2) payment of the cost of the program; and

(3) reasonable expenses incurred by the state. (V.A.C.S. Art. 4477–7, Sec. 13(g)(5).)

Sec. 361.195. GOAL OF REMEDIAL ACTION PROGRAM. (a) The goal of a remedial action program under this subchapter is to eliminate the imminent and substantial endangerment to the public health and safety or the environment posed by a release or threatened release of hazardous waste at a facility.

(b) The commission shall determine the appropriate extent of remedy at a particular facility by selecting the lowest cost remedial alternative that:

(1) is technologically feasible and reliable; and

2649

(2) effectively mitigates and minimizes damage to and provides adequate protection of the public health and safety or the environment. (V.A.C.S. Art. 4477-7, Sec. 13(g)(6).)

Sec. 361.196. LIEN FOR CLEANUP ACTION. (a) The state has a lien on the real property, and any interest in the real property, that is subject to or affected by a cleanup action for cleanup costs for which a person is liable to the state.

(b) The lien imposed by this section is perfected and attaches to the affected real property when and not before an affidavit is recorded in accordance with Subsection (d) in the county in which the real property is located.

(c) The affidavit must be executed by an authorized representative of the commission and must show:

(1) the name and address of each person liable for the costs;

(2) a description of the real property that is affected by the cleanup action; and

(3) the amount of the costs and the amount due.

(d) The county clerk shall:

(1) record the affidavit in records kept for that purpose; and

(2) index the affidavit under the name of each person liable for the costs.

(e) The lien is effective until the liability for the costs is satisfied or becomes unenforceable by operation of law. The commission shall record a relinquishment or satisfaction of the lien when the lien is paid or satisfied. (V.A.C.S. Art. 4477-7, Secs. 13(g)(7)(A), (B), (C), (D).)

Sec. 361.197. VALIDITY AND ENFORCEABILITY OF LIEN. The lien imposed by Section 361.196 is not valid or enforceable if real property or an interest in the real property or a mortgage, lien, or other encumbrance on or against the property is acquired before the lien is perfected unless the person acquiring the real property or an interest in the real property or acquiring the mortgage, lien, or other encumbrance:

(1) had or reasonably should have had actual notice or knowledge that the real property is affected by a cleanup action; or

(2) knows that the state has incurred cleanup costs. (V.A.C.S. Art. 4477-7, Sec. 13(g)(7)(F).)

Sec. 361.198. LIEN FORECLOSURE. The lien may be foreclosed only on judgment of a court of competent jurisdiction foreclosing the lien and ordering the sale of the property subject to the lien. (V.A.C.S. Art. 4477-7, Sec. 13(g)(7)(E).)

Sec. 361.199. FILING OF BOND. (a) If a lien is perfected or attempted to be perfected as provided by Section 361.196, the owner of the real property affected by the lien may file a bond to indemnify against the lien.

(b) The bond must be filed with the county clerk of the county in which the real property subject to the lien is located.

(c) An action to establish, enforce, or foreclose a lien or claim of lien covered by the bond must be brought not later than the 30th day after the date of service of notice of the bond.

(d) The bond must:

(1) describe the real property on which the lien is claimed;

(2) refer to the lien claimed in a manner sufficient to identify it;

(3) be in an amount double the amount of the costs due stated in the lien;

(4) be payable to the commission;

(5) be executed by the party filing the bond as principal and a corporate surety authorized under the law of this state to execute the bond as surety; and

(6) be conditioned substantially that the principal and sureties will pay to the commission the amount of the lien claimed, plus costs, if the claim is proved to be a lien on the real property. (V.A.C.S. Art. 4477-7, Secs. 13(g)(7)(G), (H).)

Sec. 361.200. NOTICE OF BOND TO NAMED OBLIGEE. (a) After the bond is filed, the county clerk shall issue notice of the bond to the named obligee. A copy of the bond must be attached to the notice.

(b) The notice may be served on each obligee by having a copy delivered to the obligee by a person competent to make oath of the delivery.

(c) The original notice shall be returned to the county clerk, and the person making service of copy shall make an oath on the back of each copy showing on whom and on what date the copy is served. The county clerk shall record the bond notice and return in records kept for that purpose.

(d) In acquiring an interest in real property, a purchaser or lender may rely on and is absolutely protected by the record of the bond, notice, and return. (V.A.C.S. Art. 4477-7, Sec. 13(g)(7)(I).)

Sec. 361.201. SUIT ON BOND BY COMMISSION. (a) The commission may sue on the bond after the 30th day following the date on which the notice is served under Section 361.200 but may not sue on the bond later than one year after the date on which the notice is served.

(b) If the commission recovers in a suit on the lien or the bond, it is entitled to recover reasonable attorney's fees. (V.A.C.S. Art. 4477-7, Sec. 13(g)(7)(J).)

Sec. 361.202. COSTS OF CLEANUP PAYAPLE TO COMMISSION FROM PERMIT FEES. (a) Money for actions taken or to be taken by the commission to eliminate an imminent and substantial endangerment to the public health and safety or the environment under this subchapter is payable directly to the commission from the hazardous waste permit and disposal fees, if approved by the legislature.

(b) Costs payable to the commission under this section include costs of inspecting or sampling and laboratory analysis of waste, soil, air, surface water, and groundwater done for the commission. (V.A.C.S. Art. 4477-7, Sec. 13(g)(8).)

Sec. 361.203. PRIVATE PARTY CLEANUP; IMMUNITY. (a) The commission shall seek cleanup of a facility by private individuals or entities before spending federal or state funds for the cleanup.

(b) Private individuals or entities shall coordinate with ongoing federal and state hazardous waste programs and obtain necessary approvals for any cleanup.

(c) An action taken by the private individual or entity to contain or remove a release or threatened release in accordance with an approved remedial action plan is not an admission of liability for the release or threatened release.

(d) If a private individual's or entity's actions to contain or remove a release or threatened release comply with an approved remedial action plan, the individual or entity is not liable for additional cleanup costs at the facility resulting solely from an act or omission of that individual or entity, unless the cleanup costs are caused by that individual's or entity's gross negligence or wilful misconduct.

(e) Except as specifically provided, this section does not expand or diminish the common law tort liability, if any, of a private individual or entity participating in a cleanup action for civil damages to a third person. (V.A.C.S. Art. 4477-7, Sec. 13(g)(9).)

[Sections 361.204–361.220 reserved for expansion]


SUBCHAPTER G. ENFORCEMENT; CRIMINAL AND CIVIL PENALTIES

Sec. 361.221. CRIMINAL PENALTIES. (a) A person commits an offense if the person knowingly:

(1) transports, or causes to be transported, for storage, processing, or disposal, any hazardous waste to any location that does not have a permit as required by the commission exercising jurisdiction under this chapter;

(2) stores, processes, or disposes of, or causes to be stored, processed, or disposed of, any hazardous waste without a permit as required by the commission exercising

jurisdiction under this chapter or in knowing violation of any material condition or requirement of a permit or of an applicable interim status rule or standard;

(3) omits or causes to be omitted material information or makes or causes to be made any false material statement or representation in any application, label, manifest, record, report, permit, or other document filed, maintained, or used to comply with any requirement of this chapter applicable to hazardous waste;

(4) generates, transports, stores, processes, or disposes of, or otherwise handles, or causes to be generated, transported, stored, processed, disposed of, or otherwise handled, hazardous waste, whether the activity took place before or after September 1, 1981, and who knowingly destroys, alters, conceals, or does not file, or causes to be destroyed, altered, concealed, or not filed, any record, application, manifest, report, or other document required to be maintained or filed to comply with the rules adopted by the commission under this chapter; or

(5) transports without a manifest, or causes to be transported without a manifest, any hazardous waste required by rules adopted by the commission under this chapter to be accompanied by a manifest.

(b) Except as provided by Subsection (c), a person who commits an offense under this section shall be subject on conviction to:

(1) a fine of not less than $100 or more than $50,000 for each act of violation and each day of violation;

(2) imprisonment not to exceed five years for a violation under Subsection (a)(1) or (2) or imprisonment not to exceed two years for any other violation under Subsection (a); or

(3) both fine and imprisonment.

(c) If it is shown on the trial of the defendant that the defendant has previously been convicted of an offense under this section, the offense is punishable by:

(1) a fine of not less than $200 or more than $100,000 for each day of violation;

(2) imprisonment not to exceed 10 years for a violation under Subsection (a)(1) or (2) or imprisonment not to exceed four years for any other violation under Subsection (a); or

(3) both fine and imprisonment.

(d) Venue for prosecution for an alleged violation under this section is in the county in which the violation is alleged to have occurred or in Travis County.

(e) Unless otherwise provided by this chapter, a fine recovered under this section shall be equally divided between the state and the local government or governments that first brought the cause.

(f) In this section, "person" means an individual, corporation, company, association, firm, partnership, joint stock company, foundation, institution, trust, society, union, or any other association of individuals. (V.A.C.S. Art. 4477-7, Secs. 8(b), (d), (e) (part), (f) (part).)

Sec. 361.222. KNOWING ENDANGERMENT; CRIMINAL PENALTY. (a) A person commits an offense if the person knowingly transports, processes, stores, exports, or disposes of, or causes to be transported, processed, stored, exported, or disposed of, hazardous waste in violation of this chapter and the person knows at the time that the person by the person's conduct places another person in imminent danger of death or serious bodily injury.

(b) An individual who commits an offense under this section shall be subject on conviction to:

(1) a fine of not more than $250,000;

(2) imprisonment for not more than 15 years; or

(3) both fine and imprisonment.

(c) A person, other than an individual, that commits an offense under this section shall be subject on conviction to a fine of not more than $1 million.

(d) It is an affirmative defense to a prosecution under this section that the person endangered consented to the conduct charged and that the danger and conduct charged were reasonably foreseeable hazards of:

(1) an occupation, business, or profession; or

(2) medical treatment or medical or scientific experimentation conducted by professionally approved methods if the endangered person had been made aware of the risks involved before giving consent.

(e) Venue for prosecution for an alleged violation under this section is in the county in which the violation is alleged to have occurred or in Travis County.

(f) Unless otherwise provided by this chapter, a fine recovered under this section shall be equally divided between the state and the local government or governments that first brought the cause.

(g) In this section, "person" means an individual, corporation, company, association, firm, partnership, joint stock company, foundation, institution, trust, society, union, or any other association of individuals. (V.A.C.S. Art. 4477-7, Secs. 8(c), (d), (e) (part), (f) (part).)

Sec. 361.223. CIVIL PENALTIES. (a) A person may not cause, suffer, allow, or permit the collection, storage, handling, transportation, processing, or disposal of solid waste or the use or operation of a solid waste facility to store, process, or dispose of solid waste or to extract materials under Section 361.092 in violation of this chapter or a rule, permit, license, or other order of the department or commission, or a county or a political subdivision exercising the authority granted by Section 361.165 in whose jurisdiction the violation occurs.

(b) Any person who violates any provision of this chapter or any rule, permit, license, or order of the department or commission, or a county or a political subdivision exercising the authority granted by Section 361.165 in whose jurisdiction the violation occurs is subject to a civil penalty of not less than $100 or more than $25,000 for each act of violation and for each day of violation, as the court may deem proper, to be recovered in the manner provided by this section.

(c) A civil penalty recovered in a suit first brought by a local government or governments under this chapter shall be equally divided between the state and the local government or governments that first brought the suit, and the state shall deposit its recovery to the credit of the general revenue fund.

(d) The penalties imposed under this section do not apply to failure to pay a fee under Sections 361.134-361.136 or failure to file a report under Section 361.035. Subsection (c) does not apply to interest and penalties imposed under Section 361.137. (V.A.C.S. Art. 4477-7, Secs. 8(a)(1), (2), (9); (i) as amended by Ch. 279, Acts 70th Leg., Reg. Sess., 1987.)

Sec. 361.224. SUIT BY STATE. (a) If it appears that a person has violated, is violating, or is threatening to violate any provision of this chapter or of any rule, permit, or other order of the department or commission, the department or the commission may request a civil suit to be brought in a district court for:

(1) injunctive relief to restrain the person from continuing the violation or threat of violation;

(2) the assessment and recovery of a civil penalty as provided by this subchapter, as the court may consider proper; or

(3) both the injunctive relief and civil penalty.

(b) At the request of the commissioner or the executive director, the attorney general shall bring and conduct the suit in the name of the state. (V.A.C.S. Art. 4477-7, Sec. 8(a)(3) (part).)

Sec. 361.225. SUIT BY COUNTY OR POLITICAL SUBDIVISION. If it appears that a violation or threat of violation of any provision of this chapter or any rule, permit, license, or other order of the department, the commission, a county, or a political subdivision exercising the authority granted by Section 361.165 has occurred or is occurring in the jurisdiction of that county or political subdivision, the county or political subdivision, in

the same manner as the commission and the department, may institute a civil suit in a district court by its own attorney for the injunctive relief or civil penalty, or both, as authorized by Section 361.224, against the person who committed, is committing, or is threatening to commit the violation. (V.A.C.S. Art. 4477-7, Sec. 8(a)(4).)

Sec. 361.226. SUIT BY MUNICIPALITY. If it appears that a violation or threat of violation of any provision of this chapter or any rule, permit, license, or other order of the department, the commission, a county, or a political subdivision exercising the authority granted by Section 361.165 has occurred or is occurring in a municipality or its extraterritorial jurisdiction, or is causing or will cause injury to or an adverse effect on the health, welfare, or physical property of the municipality or its inhabitants, the municipality, in the same manner as the department and the commission, may institute a civil suit in a district court by its own attorney for the injunctive relief or civil penalty, or both, as authorized by Section 361.224, against the person who committed, is committing, or is threatening to commit the violation. (V.A.C.S. Art. 4477-7, Sec. 8(a)(5).)

Sec. 361.227. VENUE. A suit for injunctive relief or for recovery of a civil penalty, or for both, may be brought in the county in which the defendant resides or in the county in which the violation or threat of violation occurs. (V.A.C.S. Art. 4477-7, Sec. 8(a)(6) (part).)

Sec. 361.228. INJUNCTION. (a) On application for injunctive relief and a finding that a person is violating or threatening to violate any provision of this chapter or of any rule, permit, or other order of the department or the commission, the district court shall grant appropriate injunctive relief.

(b) In a suit brought to enjoin a violation or threat of violation of this chapter or of any rule, permit, license, or order of the department, the commission, a county, or a political subdivision exercising the authority granted by Section 361.165, the court may grant any prohibitory or mandatory injunction warranted by the facts, including a temporary restraining order after notice and hearing, a temporary injunction, and a permanent injunction. The court shall grant injunctive relief without bond or other undertaking by the governmental entity. (V.A.C.S. Art. 4477-7, Secs. 8(a)(3) (part), (6) (part).)

Sec. 361.229. PARTIES IN SUIT BY LOCAL GOVERNMENT. In a suit brought by a local government under Section 361.225 or 361.226, the department and the commission are necessary and indispensable parties. (V.A.C.S. Art. 4477-7, Sec. 8(a)(7).)

[Sections 361.230–361.250 reserved for expansion]

SUBCHAPTER H.  ENFORCEMENT; ADMINISTRATIVE PENALTIES

Sec. 361.251. ADMINISTRATIVE PENALTY BY DEPARTMENT. (a) The department may assess a civil penalty against a person as provided by this section if the person violates:

(1) a provision of this chapter that is under the department's jurisdiction; or

(2) a rule adopted by the board of health or order, license, or permit issued by the department under this chapter.

(b) The amount of the penalty may not exceed $10,000 a day for a person who violates this chapter or a rule, order, license, or permit issued under this chapter. Each day a violation continues may be considered a separate violation.

(c) In determining the amount of the penalty, the department shall consider:

(1) the seriousness of the violation, including the nature, circumstances, extent, and gravity of the prohibited act and the hazard or potential hazard created to the health or safety of the public;

(2) the history of previous violations;

(3) the amount necessary to deter future violations;

(4) efforts to correct the violation; and

(5) any other matters that justice may require.

2654

(d) If, after examination of a possible violation and the facts surrounding that possible violation, the department concludes that a violation has occurred, the department may issue a preliminary report:

(1) stating the facts that support the conclusion;

(2) recommending that a civil penalty under this section be imposed; and

(3) recommending the amount of the penalty, which shall be based on the seriousness of the violation as determined from the facts surrounding the violation.

(e) Not later than the 10th day after the date on which the report is issued, the department shall give written notice of the report to the person charged with the violation. The notice must include:

(1) a brief summary of the charges;

(2) a statement of the amount of the penalty recommended; and

(3) a statement of the right of the person charged to a hearing on the occurrence of the violation, the amount of the penalty, or both.

(f) Not later than the 20th day after the date on which notice is sent, the person charged may give to the commissioner written consent to the department's report, including the recommended penalty, or make a written request for a hearing.

(g) If the person charged with the violation consents to the penalty recommended by the commissioner or does not timely respond to the notice, the commissioner or the commissioner's designee by order shall assess the penalty or order a hearing to be held on the findings and recommendations in the department's report. If the commissioner or the commissioner's designee assesses the penalty, the department shall give written notice to the person charged of the decision and the person shall pay the penalty.

(h) If the person charged requests or the commissioner orders a hearing, the commissioner shall order and shall give notice of the hearing.

(i) The hearing shall be held by a hearing examiner designated by the commissioner.

(j) The hearing examiner shall make findings of fact and promptly issue to the commissioner a written decision as to the occurrence of the violation and a recommendation of the amount of the proposed penalty if a penalty is warranted.

(k) Based on the findings of fact and the recommendations of the hearing examiner, the commissioner by order may find that a violation has occurred and assess a civil penalty or may find that no violation occurred.

(l) All proceedings under Subsections (h)-(k) are subject to the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes).

(m) The commissioner shall give notice of the commissioner's decision to the person charged, and if the commissioner finds that a violation has occurred and assesses a civil penalty, the commissioner shall give written notice to the person charged of:

(1) the commissioner's findings;

(2) the amount of the penalty; and

(3) the person's right to judicial review of the commissioner's order.

(n) Not later than the 30th day after the date on which the commissioner's order is final, the person charged with the penalty shall pay the penalty in full or file a petition for judicial review.

(o) If the person seeks judicial review of the fact of the violation, the amount of the penalty, or both, the person, within the time provided by Subsection (n), shall:

(1) send the amount of the penalty to the commissioner for placement in an escrow account; or

(2) post with the commissioner a supersedeas bond in a form approved by the commissioner for the amount of the penalty, the bond to be effective until judicial review of the order or decision is final.

(p) A person who fails to comply with Subsection (o) waives the right to judicial review, and the commissioner may refer the matter to the attorney general for enforcement.

(q) Judicial review of the order or decision of the commissioner assessing the penalty shall be under Section 19, Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes).

(r) If the penalty is reduced or not assessed, the commissioner shall:

(1) remit to the person charged the appropriate amount of any penalty payment plus accrued interest; or

(2) execute a release of the bond if a supersedeas bond has been posted.

(s) The accrued interest on amounts remitted by the commissioner shall be paid:

(1) at a rate equal to the rate charged on loans to depository institutions by the New York Federal Reserve Bank; and

(2) for the period beginning on the date the penalty is paid to the commissioner under Subsection (o) and ending on the date the penalty is remitted.

(t) A penalty collected under this section shall be deposited to the credit of the general revenue fund. (V.A.C.S. Art. 4477-7, Secs. 8a(a)-(i), (j) (part), (k)-(n).)

Sec. 361.252. ADMINISTRATIVE PENALTY BY COMMISSION. (a) The commission may assess a civil penalty against a person as provided by this section if the person violates:

(1) a provision of this chapter concerning solid waste that is under the commission's jurisdiction;

(2) a rule or order adopted by the commission concerning solid waste that is under the commission's jurisdiction; or

(3) a solid waste permit or registration issued by the commission under this chapter.

(b) The amount of the penalty may not exceed $10,000 a day for a person who violates this chapter or a rule, order, or permit issued under this chapter. Each day a violation continues may be considered a separate violation.

(c) In determining the amount of the penalty, the commission shall consider:

(1) the nature, circumstances, extent, duration, and gravity of the prohibited act with special emphasis on the hazard or potential hazard created to the health or safety of the public;

(2) the impact of the violation on a receiving stream or underground water reservoir, on the property owners along a receiving stream or underground water reservoir, and on water users of a receiving stream or underground water reservoir;

(3) with respect to the alleged violator:

(A) the history and extent of previous violations;

(B) the degree of culpability, including whether the violation was attributable to mechanical or electrical failures and whether the violation could have been reasonably anticipated and avoided;

(C) the demonstrated good faith, including actions taken by the alleged violator to rectify the cause of the violation;

(D) economic benefit gained by the violation; and

(E) the amount necessary to deter future violations; and

(4) any other matters that justice may require.

(d) If, after examination of a possible violation and the facts surrounding that possible violation, the executive director concludes that a violation has occurred, the executive director may issue a preliminary report:

(1) stating the facts that support the conclusion;

(2) recommending that a civil penalty under this section be imposed; and

(3) recommending the amount of the penalty, which shall be based on the factors prescribed by Subsection (c), including an analysis of each factor for the commission.

(e) Not later than the 10th day after the date on which the report is issued, the executive director shall give written notice of the report to the person charged with the violation. The notice must include:

(1) a brief summary of the charges;

(2) a statement of the amount of the penalty recommended; and

(3) a statement of the right of the person charged to a hearing on the occurrence of the violation, the amount of the penalty, or both.

(f) Not later than the 20th day after the date on which notice is received, the person charged may give to the commission written consent to the executive director's report, including the recommended penalty, or make a written request for a hearing.

(g) If the person charged with the violation consents to the penalty recommended by the executive director or does not timely respond to the notice, the commission by order shall assess the penalty or order a hearing to be held on the findings and recommendations in the executive director's report. If the commission assesses the penalty, the commission shall give written notice to the person charged of its decision.

(h) If the person charged requests or the commission orders a hearing, the commission shall order and shall give notice of the hearing. The commission by order may find that a violation has occurred and may assess a civil penalty, may find that a violation has occurred but that no penalty should be assessed, or may find that no violation has occurred. In making a penalty decision, the commission shall analyze each factor prescribed by Subsection (c). All proceedings under this subsection are subject to the Administrative Procedure and Texas Register Act (Article 6252–13a, Vernon's Texas Civil Statutes).

(i) The commission shall give notice of its decision to the person charged, and if the commission finds that a violation has occurred and assesses a civil penalty, the commission shall give written notice to the person charged of:

(1) the commission's findings;

(2) the amount of the penalty; and

(3) the person's right to judicial review of the commission's order.

(j) If the commission is required to give notice of a civil penalty under Subsection (g) or (i), the commission shall file notice of its decision in the Texas Register not later than the 10th day after the date on which the decision is adopted.

(k) Not later than the 30th day after the date on which the commission's order is final, the person charged with the penalty shall pay the penalty in full or file a petition for judicial review.

(l) If the person seeks judicial review of the fact of the violation, the amount of the penalty, or both, the person, within the time provided by Subsection (k), shall:

(1) send the amount of the penalty to the commission for placement in an escrow account; or

(2) post with the commission a supersedeas bond in a form approved by the commission for the amount of the penalty, the bond to be effective until judicial review of the order or decision is final.

(m) A person who fails to comply with Subsection (l) waives the right to judicial review, and the commission or the executive director may refer the matter to the attorney general for enforcement.

(n) Judicial review of the order or decision of the commission assessing the penalty shall be under Section 19, Administrative Procedure and Texas Register Act (Article 6252–13a, Vernon's Texas Civil Statutes).

(o) The commission may compromise, modify, or remit, with or without conditions, a civil penalty imposed under this section.

(p) Payment of a penalty under this section is full and complete satisfaction of the violation for which the administrative penalty is assessed and precludes any other civil or criminal penalty for the same violation.

(q) A penalty collected under this section shall be deposited to the credit of the general revenue fund. (V.A.C.S. Art. 4477-7, Secs. 8b(a)-(i), (j) (part), (k)-(o).)

[Sections 361.253-361.270 reserved for expansion]

## SUBCHAPTER I. ENFORCEMENT; ADMINISTRATIVE ORDERS CONCERNING IMMINENT AND SUBSTANTIAL ENDANGERMENT

Sec. 361.271. PERSONS RESPONSIBLE FOR SOLID WASTE. For the purpose of this subchapter, a person is responsible for solid waste if the person:

(1) is any owner or operator of a solid waste facility;

(2) owned or operated a solid waste facility at the time of processing, storage, or disposal of any solid waste;

(3) by contract, agreement, or otherwise, arranged to process, store, or dispose of, or arranged with a transporter for transport to process, store, or dispose of, solid waste owned or possessed by the person, by any other person or entity at:

(A) the solid waste facility owned or operated by another person or entity that contains the solid waste; or

(B) the site to which the solid waste was transported that contains the solid waste; or

(4) accepts or accepted any solid waste for transport to a solid waste facility or site selected by the person. (V.A.C.S. Art. 4477-7, Sec. 8(g)(2) (part).)

Sec. 361.272. ADMINISTRATIVE ORDERS CONCERNING IMMINENT AND SUB-STANTIAL ENDANGERMENT. (a) The department or the commission, as appropriate, may issue an administrative order to a person responsible for solid waste if it appears that there is an actual or threatened release of solid waste that presents an imminent and substantial endangerment to the public health and safety or the environment:

(1) from a solid waste facility at which solid waste is stored, processed, or disposed of; or

(2) at any site at which one or more of those activities concerning solid waste have been conducted in the past, regardless of whether the activity was lawful at the time.

(b) An administrative order may be issued under this section to:

(1) restrain the person from allowing or continuing the release or threatened release; and

(2) require the person to take any action necessary to provide and implement a cost effective and environmentally sound remedial action plan designed to eliminate the release or threatened release.

(c) An administrative order issued under this section shall:

(1) be delivered to the persons identified by the order by certified mail, return receipt requested;

(2) be delivered by hand delivery to the person identified by the order; or

(3) on failure of delivery of the order by certified mail or hand delivery, be served on the persons by publication:

(A) once in the Texas Register; and

(B) once in a newspaper of general circulation in each county in which a person identified by the order had the person's last known address. (V.A.C.S. Art. 4477-7, Secs. 8(g)(1) (part), (2) (part).)

Sec. 361.273. INJUNCTION AS ALTERNATIVE TO ADMINISTRATIVE ORDER. The department or commission, as appropriate, may cause a civil suit for injunctive relief to be brought in a district court in the county in which the actual release is occurring or threatened release may occur to:

(1) restrain a person responsible for solid waste under Section 361.271 from allowing or continuing the release or threatened release; and

(2) require the person to take actions necessary to provide and implement a cost effective and environmentally sound remedial action plan designed to eliminate the release or threatened release. (V.A.C.S. Art. 4477-7, Sec. 8(g)(1) (part).)

Sec. 361.274. NO PRIOR NOTICE CONCERNING ADMINISTRATIVE ORDER. An administrative order under Section 361.272 does not require prior notice or an adjudicative hearing before the department or commission. (V.A.C.S. Art. 4477-7, Sec. 8(g)(1) (part).)

Sec. 361.275. DEFENSES. (a) A person responsible for solid waste under Section 361.271 is liable under Section 361.272 or 361.273 unless the person can establish by a preponderance of the evidence that the release or threatened release was caused solely by:

(1) an act of God;

(2) an act of war;

(3) an act or omission of a third person; or

(4) any combination of Subdivisions (1), (2), and (3).

(b) In a defense under Subsection (a)(3), the defendant must establish by a preponderance of the evidence that the defendant:

(1) exercised due care concerning the solid waste, considering the characteristics of the solid waste, in light of all relevant facts and circumstances; and

(2) took precautions against foreseeable acts or omissions of the third person and the consequences that could foreseeably result from those acts or omissions.

(c) The defense under Subsection (a)(3) does not apply if the third person:

(1) is an employee or agent of the defendant; or

(2) has a direct or indirect contractual relationship with the defendant and the act or omission of the third person occurred in connection with the contractual relationship.

(d) In Subsection (c)(2), "contractual relationship" includes land contracts, deeds, or other instruments transferring title or possession of real property.

(e) A defendant who enters into a contractual relationship as provided by Subsection (c)(2) is not liable under this subchapter if:

(1) the sole contractual relationship is acceptance for rail carriage by a common carrier under a published tariff; or

(2) the defendant acquired the real property on which the facility requiring the remedial action is located, after the disposal or placement of the hazardous substance on, in, or at the facility and the defendant establishes by a preponderance of the evidence that:

(A) the defendant has satisfied Subsection (b);

(B) at the time the defendant acquired the facility the defendant did not know and had no reason to know that a hazardous substance that is the subject of the release or threatened release was disposed of on, in, or at the facility;

(C) the defendant is a governmental entity that acquired the facility by escheat, by other involuntary transfer or acquisition, or by the exercise of the power of eminent domain; or

(D) the defendant acquired the facility by inheritance or bequest.

(f) To demonstrate the condition under Subsection (e)(2)(B), the defendant must have made, at the time of acquisition, appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice in an effort to minimize liability. In deciding whether the defendant meets this condition, the court shall consider:

(1) any specialized knowledge or experience of the defendant;

(2) the relationship of the purchase price to the value of the property if the property were uncontaminated;

(3) commonly known or reasonably ascertainable information about the property;

2659

(4) the obvious presence or likely presence of contamination of the property; and

(5) the defendant's ability to detect the contamination by appropriate inspection.

(g) This section does not decrease the liability of a previous owner or operator of a facility who is liable under this chapter. If the defendant obtained actual knowledge of the release or threatened release of a hazardous substance at a facility at the time the defendant owned the real property on which the facility is located and subsequently transferred ownership of the property to another person without disclosing that knowledge, the defendant is liable and a defense under this section is not available to the defendant.

(h) Subsections (e)-(g) do not affect the liability under this chapter of a defendant who, by an act or omission, caused or contributed to the release or threatened release of a hazardous substance that is the subject of the action concerning the facility. (V.A.C.S. Art. 4477-7, Secs. 8(g)(3), (6).)

Sec. 361.276. APPORTIONMENT OF LIABILITY. (a) If the release or threatened release caused by a person's acts or omissions is proved by a preponderance of the evidence to be divisible, that person is liable only for the elimination of that release or threatened release attributable to the person. If the release or threatened release is not proved to be divisible, persons liable under Section 361.272 or 361.273 are jointly and severally liable for eliminating the release or threatened release.

(b) In this section, "divisible" means that the waste released or threatened to be released has been and is capable of being managed separately under the remedial action plan. (V.A.C.S. Art. 4477-7, Sec. 8(g)(4).)

Sec. 361.277. JUDGMENT BY STATE AGAINST NONSETTLING PARTY; ACTION FOR CONTRIBUTION BY NONSETTLING PARTY. (a) If fewer than all of the persons identified as liable under this subchapter agree with the state to take remedial action to abate an actual or threatened release of solid waste that is an imminent and substantial endangerment to the public health and safety or the environment under an administrative order issued under Section 361.272 or an action filed by the state under this subchapter, the state may seek a judgment against a nonsettling person for the total amount of the cost of the remedial action minus that amount the settling persons agree to pay or spend.

(b) In an action for contribution brought by a nonsettling person against a settling person, the nonsettling person has the burden to prove that the amount of cleanup costs that a settling person agreed to pay under an agreement with the state is unreasonable considering the factors under Section 361.343 and the need to undertake timely cleanup action concerning the release or threatened release. (V.A.C.S. Art. 4477-7, Sec. 8(g)(5).)

Sec. 361.278. LIABILITY OF ENGINEER OR CONTRACTOR. (a) An engineer or contractor performing a program of remedial action or cleanup of hazardous waste or solid waste under a contract with a state agency or political subdivision of the state is liable under this subchapter for any negligent act or omission or for wilful misconduct that results in an actual or threatened release of hazardous waste or solid waste after the abandonment or conclusion of the program only to the extent that the endangerment to public health and safety or the environment is aggravated as a result of the act, omission, or misconduct.

(b) In this section, "engineer or contractor" means a person, including the employee or subcontractor of the person, who performs a contract for evaluation, planning, designing, engineering, construction, equipment, or auxiliary services in connection with:

(1) identifying a hazardous or solid waste site;

(2) developing a plan to clean up the site; or

(3) supervising or implementing the plan to clean up the site. (V.A.C.S. Art. 4477-7, Sec. 8(i) as added by Ch. 302, Acts 70th Legis., Reg. Sess., 1987.)

Sec. 361.279. CONTRACTS WITH STATE. A state agency contracting for services or products shall consider whether the person proposing to contract with the state has been adjudicated during the preceding three-year period to have committed substantive, nonclerical violations resulting in an actual release of hazardous waste that presented an

imminent and substantial danger to the public health and safety or the environment. (V.A.C.S. Art. 4477-7, Sec. 8(h).)

Sec. 361.280. REMEDIES CUMULATIVE. (a) The remedies under this subchapter are cumulative of all other remedies.

(b) This subchapter does not exempt a person from complying with or being subject to other law. (V.A.C.S. Art. 4477-7, Sec. 8(g)(1) (part).)

[Sections 361.281-361.300 reserved for expansion]

## SUBCHAPTER J. ENFORCEMENT; EMERGENCY ORDER; CORRECTIVE ACTION

Sec. 361.301. EMERGENCY ORDER. (a) The department and the commission may each issue an emergency mandatory or prohibitory order concerning an activity of solid waste management under its jurisdiction, even if the activity is not covered by a permit, if the agency determines that an emergency requiring immediate action to protect the public health and safety or the environment exists.

(b) The order may be issued without notice and hearing or with notice and hearing the agency considers practicable under the circumstances.

(c) If an emergency order is issued under this section without a hearing, the issuing agency shall set a time and place for a hearing to be held in accordance with the rules of the board of health or commission to affirm, modify, or set aside the emergency order.

(d) The requirements of Section 361.088 concerning public notice do not apply to the hearing, but general notice of the hearing shall be given in accordance with the rules of the board of health or commission. (V.A.C.S. Art. 4477-7, Sec. 4(e)(10).)

Sec. 361.302. ISSUANCE OF ORDER BY COMMISSION. (a) The commission may issue an order to a person requiring compliance with this chapter and prescribing the corrective action that the person must take to achieve compliance if the person violates:

(1) the provisions of this chapter concerning solid waste under the commission's jurisdiction;

(2) a rule or order adopted by the commission concerning solid waste under the commission's jurisdiction; or

(3) a solid waste permit or registration issued by the commission under this chapter.

(b) The order may be issued instead of or in addition to an order under Section 361.252 assessing an administrative civil penalty.

(c) Judicial review of an order issued under this section is in the district court of the county in which the alleged violation occurred. (V.A.C.S. Art. 4477-7, Sec. 8c.)

Sec. 361.303. CORRECTIVE ACTION. (a) The commission shall require corrective action for a release of hazardous waste or hazardous waste constituents from a solid waste management unit at a solid waste processing, storage, or disposal facility that is required to obtain a permit for the management of hazardous waste and whose permit is issued after November 8, 1984, regardless of when the waste is placed in the unit.

(b) The commission shall establish schedules for compliance for the corrective action, if the corrective action cannot be completed before permit issuance, and shall require assurances of financial responsibility for completing the corrective action.

(c) If, before the issuance of a permit, the commission determines that there is or has been a release of hazardous waste into the environment from a facility required to obtain a permit in accordance with an approved state program under Section 3006 of the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C. Section 6901 et seq.), the commission may:

(1) issue an order requiring corrective action or other response measure considered necessary to protect human health or the environment; or

(2) institute a civil action under Section 361.224.

(d) An order issued under this section:

(1) may include a suspension or revocation of authorization to operate;

(2) must state with reasonable specificity the nature of the required corrective action or other response measure; and

(3) must specify a time for compliance.

(e) If any person named in the order does not comply with the order, the agency issuing the order may assess a civil penalty in accordance with this chapter. (V.A.C.S. Art. 4477-7, Sec. 4(m).)

[Sections 361.304-361.320 reserved for expansion]

### SUBCHAPTER K. APPEALS; JOINDER OF PARTIES

Sec. 361.321. APPEALS. (a) A person affected by a ruling, order, decision, or other act of the department or the commission may appeal the action by filing a petition in the district court of Travis County.

(b) A person affected by a ruling, order, decision, or other act of a county, or of a political subdivision exercising the authority granted by Section 361.165, may appeal by filing a petition in a district court with jurisdiction in the county or political subdivision.

(c) Except as provided by Section 361.322(b), the petition must be filed not later than the 30th day after the date of the ruling, order, decision, or other act of the governmental entity whose action is appealed. Service of citation must be accomplished not later than the 30th day after the date on which the petition is filed.

(d) The plaintiff shall pursue the action with reasonable diligence. The court shall presume that the action has been abandoned if the plaintiff does not prosecute the action within one year after it is filed and shall dismiss the suit on a motion for dismissal made by the governmental entity whose action is appealed unless the plaintiff, after receiving notice, can show good and sufficient cause for the delay.

(e) Except as provided by Section 361.322(e), in an appeal from an action of the department, the commission, a county, or a political subdivision exercising the authority granted by Section 361.165, the issue is whether the action is invalid, arbitrary, or unreasonable. (V.A.C.S. Art. 4477-7, Sec. 9(a) (part).)

Sec. 361.322. APPEAL OF ADMINISTRATIVE ORDER ISSUED UNDER SECTION 361.272; JOINDER OF PARTIES. (a) A person filing a petition appealing an administrative order issued under Section 361.272 must join as a party the state agency issuing the administrative order and may join as a party:

(1) any other person named in the administrative order; and

(2) any other person who is or may be liable for the elimination of the actual or threatened release of solid waste governed by the administrative order.

(b) The plaintiff shall pursue the action with reasonable diligence. The court shall presume that the action has been abandoned if the plaintiff does not prosecute the action within one year after it is filed and shall dismiss the suit on a motion for dismissal made by the governmental entity whose action is appealed unless the plaintiff, after receiving notice, can show good and sufficient cause for the delay.

(c) The filing of the petition before the 46th day after the date of receipt, hand delivery, or publication service of the order stays the order as to the appealing party pending action by the district court. The filing of the petition does not affect other enforcement powers of the department or commission.

(d) The administrative order is final as to a nonappealing party on the 46th day after the date of receipt, hand delivery, or publication service of the order by, to, or on the nonappealing party.

(e) The district court shall uphold the order if the department or the commission, by a preponderance of the evidence, proves that:

(1) there is an actual or threatened release of solid waste that is an imminent and substantial endangerment to the public health and safety or the environment; and

(2) the person made subject to the administrative order is liable for the elimination of the release or threatened release, in whole or in part.

(f) A person made a party to the appeal may join as a party any other person who is or may be liable for the elimination of the release or threatened release, but the failure by a party to file an action for contribution or indemnity does not waive any right under this chapter or other law.

(g) In an appeal under this section, the district court on establishing the validity of the order shall issue an injunction requiring any person named or joined against whom liability has been established by the department or the commission or other party to comply with the order.

(h) As between parties determined to be liable under Subchapter I, the court may, as equity requires, apportion cleanup costs in accordance with Section 361.343 and grant any other appropriate relief. (V.A.C.S. Art. 4477-7, Secs. 9(a) (part), (b)-(g).)

Sec. 361.323. JOINDER OF PARTIES IN ACTION FILED BY STATE. (a) In an action brought by the attorney general under Section 361.273 seeking an injunction to eliminate a release or threatened release, the attorney general shall, and a party may, join as a party a person reasonably believed to be liable for the release or threatened release in accordance with Section 361.272.

(b) Failure of the attorney general or a party to name or join a person as a party is not a defense to an action against that person for contribution or indemnity.

(c) In an action brought by the attorney general under Section 361.273, the district court shall grant relief on the grounds provided by Section 361.322(d), and Sections 361.322(f) and (g) apply to the action. (V.A.C.S. Art. 4477-7, Sec. 10.)

[Sections 361.324-361.340 reserved for expansion]

## SUBCHAPTER L. COST RECOVERY

Sec. 361.341. COST RECOVERY BY STATE. (a) The state is entitled to recover reasonable attorney's fees, reasonable costs to prepare and provide witnesses, and reasonable costs of investigating and assessing the facility or site if it prevails in:

(1) an appeal of an administrative order issued under Section 361.272 or Section 361.191;

(2) an action to enforce such an administrative order;

(3) a civil suit seeking injunctive relief under Section 361.273; or

(4) a cost recovery suit under Section 361.190.

(b) The court shall apportion the costs among liable parties as it determines is equitable and just.

(c) Costs recovered by the state under this section shall be:

(1) remitted to the commission; and

(2) placed in a separate account in the hazardous waste generation and facility fees fund for use by the commission to administer the hazardous waste management program. (V.A.C.S. Art. 4477-7, Secs. 9(h)(1), (2).)

Sec. 361.342. COST RECOVERY BY APPEALING OR CONTESTING PARTY. If the court finds that an administrative order referred to by Section 361.341 is frivolous, unreasonable, or without foundation with respect to a party named by the order, the party appealing or contesting the order is entitled to recover from the state its reasonable:

(1) attorney's fees;

(2) costs to prepare and provide witnesses; and

(3) costs of studies, analyses, engineering reports, tests, or other projects the court finds were necessary to prepare the party's case. (V.A.C.S. Art. 4477-7, Sec. 9(h)(3).)

Sec. 361.343. APPORTIONMENT OF COSTS. (a) Apportionment of costs for the elimination of the release or threatened release of solid waste among the persons responsible for solid waste under Section 361.271 shall be made according to:

(1) the relationship between the parties' actions in storing, processing, and disposing of solid waste and the remedy required to eliminate the release or threatened release;

(2) the volume of solid waste each party is responsible for at the solid waste facility or site to the extent that the costs of the remedy are based on the volume of solid waste present;

(3) consideration of toxicity or other waste characteristics if those characteristics affect the cost to eliminate the release or threatened release; and

(4) a party's cooperation with state agencies, its cooperation or noncooperation with the pending efforts to eliminate the release or threatened release, or a party's actions concerning storing, processing, or disposing of solid waste, as well as the degree of care that the party exercised.

(b) The apportionment of costs only adjusts the rights of parties identified by Section 361.271 and does not affect a person's liability to the state. (V.A.C.S. Art. 4477-7, Sec. 11(a).)

Sec. 361.344. COST RECOVERY BY LIABLE PARTY OR THIRD PARTY. (a) A person subject to a court injunction or an administrative order issued under this chapter, or a third person identified by Section 361.192(c) who acts to eliminate a release or threatened release, in addition to having the right to file an action for contribution or indemnity, or both, in an appeal proceeding or in an action brought by the attorney general, may bring suit in a district court to recover costs incurred to eliminate the release or threatened release and other costs as the court, in its discretion, considers reasonable.

(b) Venue for the suit is:

(1) in the county in which the release or threatened release is or was located; or

(2) in any other county in which venue is proper under Chapter 15, Civil Practice and Remedies Code.

(c) To recover costs under this section in a proceeding that is not an appeal proceeding or an action brought by the attorney general under this subchapter, the person seeking cost recovery must have made reasonable attempts to notify the person against whom cost recovery is sought:

(1) of the existence of the release or threatened release; and

(2) that the person seeking cost recovery intended to take steps to eliminate the release or threatened release.

(d) The court shall determine the amount of cost recovery according to the criteria prescribed by Section 361.343.

(e) A fact determination or ruling by a district court in an appeal of an administrative order under Section 361.322 is not res judicata or collateral estoppel as to an issue brought in a proceeding under this section concerning a party not joined in the appeal. (V.A.C.S. Art. 4477-7, Secs. 11(b), (c).)

Sec. 361.345. CREATION OF RIGHTS. Subchapter I and Section 361.344 and the enforcement by the department or the commission of that subchapter and section do not:

(1) create rights or causes of action on behalf of a person other than those expressly stated by this chapter; or

(2) change common law or a rule of decision except as limited by this chapter to actions by the department or the commission to eliminate an actual release or threatened release of solid waste that is an imminent and substantial endangerment to the public health and safety or the environment. (V.A.C.S. Art. 4477-7, Sec. 11b.)

The changes made by this Act to Section 3(d) are intended to be nonsubstantive and do not affect the requirements for executing a written directive or the information that should be included in a written directive.

SECTION 13. REPEALER. The following laws are repealed:

(1) the following articles and Acts, as compiled in Vernon's Texas Civil Statutes: 165-2; 165-3; 180; 181; 182; 182a; 186; 190; 190a; 190a-1; 190a-2; 190b; 190c; 190d; 190d-1; 190e; 190f; 190g; 190g-1; 190g-2; 190g-3; 190g-4; 190h; 190i; 190j; 191; 192b; 192-2; 192-3; 192-4; 912a-1; 912a-2; 912a-3; 912a-4; 912a-5; 912a-6; 912a-7; 912a-8; 912a-9; 912a-10; 912a-11; 912a-12; 912a-13; 912a-14; 912a-15; 912a-16; 912a-17; 912a-18; 912a-19; 912a-20; 912a-21; 912a-22; 912a-23; 912a-24; 912a-25; 912a-26; 912a-26a; 912a-27; 912a-28; 912a-29; 912a-30; 912a-31; 912a-32; 912a-33; 912a-34; 930a-1; 931b-1; 931c; 969c; 969c-1; 969c-2; 1015q; 1070a; 1071; 1072; 1073; 1074; 1075; 1146A; 1269j-10; 1432c; 1432d; 1432e; 1432f; 1432g; 1436c; 1528j; 2338-1a; 2351a-6; 2351a-8; 2351a-9; 2351f-1; 2351f-2; 2351f-3; 2351g-1; 2368a.6; 2372i; 2372t; 2372ee; 3196a-1; 3196c; 3196c-1; 3201a; 3201a-1; 3201a-2; 3201a-2.1; 3201a-3; 3201a-4; 3955; 3956; 3957; 3958; 3959; 3959a; 3960; 3961; 3962; 3963; 3964; 3965; 3966; 3967; 3968; 3969; 3970; 3971; 3972; 3972.1; 3972.2; 3972.3; 3972b; 3972c; 4414b; 4414c; 4418f-1; 4418g-2; 4418g-3; 4418h; 4419b-1; 4419b-1.5; 4419b-2; 4419c; 4419g; 4419h; 4420a; 4420b; 4421; 4436; 4436a-2; 4436a-3; 4436a-4; 4436b; 4437; 4437a; 4437b; 4437c; 4437c-1; 4437c-2; 4437d; 4437e; 4437e-1; 4437e-2; 4437e-3; 4437f; 4437f-1; 4437f-2; 4437f-3; 4437g; 4437h; 4438a; 4438b; 4438c; 4438d; 4438e; 4438f; 4442a; 4442c; 4443a; 4446; 4447d; 4447d-1; 4447d-2; 4447e; 4447e-1; 4447e-2; 4447f; 4447i; 4447j; 4447k; 4447l; 4447n; 4447o; 4447o-1; 4447p; 4447q; 4447r; 4447s; 4447t; 4447u; 4447v; 4447w; 4447x; 4447y; 4474; 4475; 4476; 4476-1a; 4476-5; 4476-5a; 4476-5b; 4476-5d; 4476-5e; 4476-5f; 4476-5g; 4476-6b; 4476-7; 4476-8; 4476-9; 4476-10; 4476-10b; 4476-10c; 4476-11; 4476-13; 4476-13a; 4476-14; 4476-15; 4476-15a; 4476-15b; 4476-15d; 4476-16; 4476a; 4477; 4477c; 4477e; 4477f; 4477-1; 4477-1c; 4477-2; 4477-5; 4477-5a; 4477-5b; 4477-6; 4477-6a; 4477-6b; 4477-7; 4477-7a; 4477-7c; 4477-7d; 4477-7e, as added by Chapters 162, 406, and 810, Acts of the 70th Leg., R.S., 1987; 4477-7f; 4477-8; 4477-8a; 4477-9a, Articles II and III and Section 1.01; 4477-9b; 4477-10; 4477-11; 4477-12; 4477-20; 4477-30; 4477-40; 4477-41; 4477-50; 4477-60; 4477-70; 4477-80; 4478; 4478a; 4479; 4480; 4481; 4482; 4483; 4484; 4485; 4486; 4487; 4488; 4489; 4490; 4491; 4492; 4493; 4493a; 4494; 4494a; 4494b; 4494c; 4494c-1; 4494d; 4494e; 4494f; 4494g; 4494h; 4494i; 4494i-1; 4494j; 4494k; 4494l; 4494m; 4494m-1; 4494n; 4494n-1; 4494n-2; 4494n-3; 4494o; 4494p; 4494r; 4494r-1; 4494r-2; 4494r-2.1; 4494r-3; 4494r-4; 4494r-5; 4494s; 4494t; 4512.8; 4583; 4583a; 4584; 4585; 4585A; 4586; 4587; 4589; 4590; 4590.1; 4590-2; 4590-4; 4590-5; 4590-6; 4590f; 4590f-1; 4590h; 4596d; 5182b; 5182c; 5221c; 5561cc; 5561c-1; 5561c-2; 5561c-2a; 5561c-3; 6145a; 6145b; 6145c; 8876; 9002; 9013; 9201; 9202; and 9203.

(2) Subchapter D, Chapter 76, Parks and Wildlife Code.

(3) Chapter 301, Acts of the 70th Legislature, Regular Session, 1987 (designated by Vernon's Texas Session Law Service as Article 1528j-1, but printed in Vernon's Texas Civil Statutes as Article 1527j-1); and Section 9, Chapter 236, Acts of the 70th Legislature, Regular Session, 1987.

SECTION 14. LEGISLATIVE INTENT OF NO SUBSTANTIVE CHANGE. This Act is enacted under Article III, Section 43, of the Texas Constitution. This is intended as a recodification only, and no substantive change in the law is intended by this Act.

SECTION 15. EFFECTIVE DATE. This Act takes effect September 1, 1989.

SECTION 16. EMERGENCY. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended.

Passed by the House on April 27, 1989, by a non-record vote; and that the House concurred in Senate amendments to H.B. No. 2136 on May 18, 1989, by a non-record vote; passed by the Senate, with amendments, on May 16, 1989, by a viva-voce vote.

Approved June 14, 1989.

Effective Sept. 1, 1989.

# TAB 2

(5) the Texas Juvenile Probation Commission;

(6) the Texas Department of Human Services;

(7) the Texas Department of Corrections;

(8) the Texas Employment Commission;

(9) the Texas Commission on Alcohol and Drug Abuse;

(10) the Texas Department of Mental Health and Mental Retardation; and

(11) the Texas Department of Health.

SECTION 2. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted.

Passed the Senate on May 9, 1989, by the following vote: Yeas 31, Nays 0; passed the House on May 22, 1989, by the following vote: Yeas 141, Nays 1, one present not voting.

Approved June 14, 1989.

Effective June 14, 1989.

---

# CHAPTER 703

## S.B. No. 1502

### AN ACT

relating to regulation of hazardous substances and solid waste.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1. Section 2, Solid Waste Disposal Act (Article 4477-7, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 2. DEFINITIONS. As used in this Act, unless the context requires a different definition:

(1) "Administratively complete" means that a complete permit application form, as well as the report and fees required to be submitted with a permit application, have been submitted to the department or the commission and the permit application is ready for technical review in accordance with the rules of the department or commission.

(2) "Apparent recharge zone" means that recharge zone designated on maps prepared or compiled by, and located in the offices of, the commission.

(3) "Board of health" means the Texas Board of Health.

(4) "Class I industrial solid waste" means any industrial solid waste or mixture of industrial solid wastes which because of its concentration or physical or chemical characteristics is toxic, corrosive, flammable, a strong sensitizer or irritant, a generator of sudden pressure by decomposition, heat, or other means and may pose a substantial present or potential danger to human health or the environment when improperly processed, stored, transported, or otherwise managed, including hazardous industrial waste.

(5) "Commission" means the Texas Water Commission.

(6) "Commissioner" means the Commissioner of Health.

(7) "Composting" means the controlled biological decomposition of organic solid waste under aerobic conditions.

(8) "Department" means the Texas Department of Health.

(9) "Disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste (whether containerized or uncontainer-

community and institutional activities, but does not include: (i) solid or dissolved material in domestic sewage, or solid or dissolved material in irrigation return flows, or industrial discharges subject to regulation by permit issued pursuant to Chapter 26, Water Code; (ii) soil, dirt, rock, sand and other natural or man-made inert solid materials used to fill land if the object of the fill is to make the land suitable for the construction of surface improvements; or (iii) waste materials which result from activities associated with the exploration, development, or production of oil or gas or geothermal resources, and any other substance or material regulated by the Railroad Commission of Texas pursuant to Section 91.101, Natural Resources Code. *For the purposes of Sections 8(g), 11, and 11b, the term "solid waste" shall also include hazardous substances, as they are defined by this Act.*

*(31)* [(30)] "Solid waste facility" means all contiguous land, and structures, other appurtenances, and improvements on the land, used for processing, storing, or disposing of solid waste. A facility may be publicly or privately owned and consist of several processing, storage, or disposal operational units; e.g., one or more landfills, surface impoundments, or combinations of them.

*(32)* [(31)] "Solid waste technician" means an individual who is trained in the practical aspects of the design, operation, and maintenance of a solid waste facility in accordance with standards, rules, or orders established by the commission or board of health.

*(33)* [(32)] "Storage" means the holding of solid waste for a temporary period, at the end of which the solid waste is processed, disposed of, or stored elsewhere.

SECTION 2. Subsection (h), Section 3, Solid Waste Disposal Act (Article 4477-7, Vernon's Texas Civil Statutes), is amended to read as follows:

(h) The department and department of water resources shall submit a report to the presiding officers of the legislature and the governor on January 1, 1987, and each two years thereafter, providing the following information:

(1) a summary of a performance report of the imposed hazardous waste permit and disposal fees, if the fees are approved by the legislature, and related activities to determine the appropriateness of the fee structure;

(2) an evaluation of progress made in accomplishing the public policy of the state in regard to the preference of waste management methods as set forth in Section (3)(e)(1) of this Act;

(3) projections, [for a period of three years from the due date of the report,] of waste volumes by type of waste, disposition of wastes, and remaining capacity *or capacity utilized* for the *treatment and* disposal of the wastes. The *commission* [department and the department of water resources] shall adopt rules requiring persons who generate, store, treat, or dispose of hazardous waste to *respond to a periodic survey* [submit to the state agency of appropriate jurisdiction on an annual basis reports] detailing projections of waste volumes *generated and handled, assumptions used as the bases for these projections,* disposition, and remaining capacity, as it relates to *a surveyed* [each] facility owned or operated by such persons, in order that the *commission* [state agencies] may develop *its* [their] report. [The first report shall be submitted by March 1, 1986, and subsequent reports shall be submitted annually by March 1 thereafter.]

SECTION 3. Subsections (a), (b), (c), (f), and (h), Section 9, Solid Waste Disposal Act (Article 4477-7, Vernon's Texas Civil Statutes), are amended to read as follows:

(a) A person affected by any ruling, order, decision, or other act of the department or the commission may appeal by filing a petition in a district court of Travis County. A person affected by any ruling, order, decision, or other act of a county, or of a political subdivision exercising the authority granted in Section 6 of this Act, may appeal by filing a petition in a district court having jurisdiction in the county or political subdivision. Except as provided in Section 9(b), the petition must be filed within 30 days after the date of the action, ruling, order, or decision of the governmental entity complained of. Service of citation must be accomplished within 30 days after the date the petition is filed. [Any person filing a petition appealing an administrative order issued pursuant to Section 8(g)

~~must join as parties the state agency issuing the administrative order and may join as parties any other person named in the administrative order and any other person who is or may be liable for the elimination of the actual or threatened release of solid waste governed by the administrative order.~~] The plaintiff shall pursue his action with reasonable diligence. If the plaintiff does not prosecute his action within one year after the action is filed, the court shall presume that the action has been abandoned. The court shall dismiss the suit on a motion for dismissal made by the governmental entity whose action is appealed, unless the plaintiff, after receiving due notice, can show good and sufficient cause for the delay.  Except as provided in Section 9(c), in an appeal from an action of the department, the commission, a county, or a political subdivision exercising the authority granted in Section 6 of this Act, the issue is whether the action is invalid, arbitrary or unreasonable.

(b) *Any person subject to an administrative order under Section 8(g) may appeal the order by filing a petition* [~~The filing of a petition appealing an order issued pursuant to Section 8(g)~~] within 45 days after the date of receipt, hand delivery, or publication service of the order [~~shall stay the administrative order as to the appealing party pending action by the district court~~].  *The filing of a motion for rehearing under the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes) shall not be a prerequisite for an appeal of the order.  The person appealing the order must join the state agency issuing the administrative order as a party and may join as parties any other person named as a responsible party in the administrative order and any other person who is or may be liable for the elimination of the actual or threatened release of solid waste or hazardous substances governed by the administrative order.  The filing of the petition shall not prevent the state agency issuing the administrative order from proceeding with the remedial action program under Section 13 of this Act unless the court enjoins the remedial action under its general equity jurisdiction.* [~~However, the filing of the petition shall not affect any other enforcement powers of the department or department of water resources.~~] An *administrative* order [~~issued pursuant to Section 8(g)~~] shall become final as to non-appealing parties 45 days after the date of receipt, hand delivery, or publication service of the order by, to, or upon such non-appealing parties.

(c)*(1)* The district court shall uphold an administrative order issued pursuant to Section 8(g) if the *commission* [~~department or department of water resources, by a preponderance of the evidence,~~] proves *by a preponderance of the evidence that*:

(A) [~~(1) that~~] there is an actual or threatened release of solid waste *or hazardous substances* that is an imminent and substantial endangerment to the public health and safety or the environment; and

(B) [~~(2) that~~] the person made subject to the administrative order is liable for the elimination of the release or threatened release, in whole or in part.

*(2) If the appropriateness of the selected remedial action is contested in the appeal of the administrative order, the remedial action shall be upheld unless the court determines that the remedy is arbitrary or unreasonable.*

(f) In appeals of an administrative order issued pursuant to Section 8(g), the district court upon establishing the validity of the order, shall issue an injunction requiring all persons named or joined against whom liability has been established by the department or *the commission* [~~department of water resources~~] or any other party to comply with the terms of the administrative order.

(h)(1) In appeals of an administrative order issued pursuant to Section 8(g) or Section 13(g)(2) of this Act, in any action to enforce such an administrative order, in civil suits seeking injunctive relief under Section 8(g)(1) of this Act, and in cost recovery suits under Section 13(g)(3) or Section 13(g)(4) of this Act, the state, if it prevails, shall be entitled to recover from parties against whom liability has been established its reasonable attorney's fees, its reasonable costs of preparing and providing witnesses, and its reasonable costs of having investigated and assessed the facility or site.  The court shall apportion such costs among liable parties as it determines is equitable and just. *All such costs recovered by the state pursuant to Section 13 shall be remitted to the commission and placed in a separate account of the hazardous waste disposal fee fund.  All other costs recovered*

*by the state under Section 8(g) shall be remitted to the commission and placed in a separate account of the hazardous waste generation and facility fees fund.*

(2) *In the event an appeal or third party claim is found by the court to be frivolous, unreasonable, or without foundation, the court may assess damages against the party bringing such appeal or third party claim in an amount not to exceed twice the costs incurred by the state or the third party defendant, including reasonable attorney's fees, reasonable costs of preparing and providing witnesses, and reasonable costs of studies, analyses, engineering reports, tests, or other projects the court finds were necessary for the preparation of the party's case.* [Costs recovered by the state under Subdivision (1) of this subsection shall be remitted to the commission and placed in the hazardous waste generation and facility fees fund to be used by the commission for the administration of the hazardous waste management program. All amounts recovered under this subsection shall be placed by the commission in a separate account within the hazardous waste generation and facility fees fund.]

(3) In the event the state's orders enumerated under Subdivision (1) of this subsection are found by the court to be frivolous, unreasonable, or without foundation as regarding any party named in the order, such party appealing or contesting the order shall be entitled to recover from the state its reasonable attorney's fees, its reasonable costs of preparing and providing witnesses, and its reasonable costs of studies, analyses, engineering reports, tests, or other projects the court finds were necessary for the preparation of the party's case.

SECTION 4. Subsections (c) and (d), Section 11a, Solid Waste Disposal Act (Article 4477-7, Vernon's Texas Civil Statutes), are amended to read as follows:

(c) The hazardous waste disposal fee fund shall consist of money collected by the commission from fees imposed on the operator of a solid waste facility for disposal of hazardous waste under Section 12 of this Act, from interest and penalties imposed under Section 14a of this Act for late payment of a disposal fee or late filing of a report, and from money paid by a liable party for facility cleanup and maintenance under Subsection *(m)* [(g)] of Section 13 of this Act. *In addition, the interest received from the investment of this fund, in accounts under the charge of the treasurer, shall be credited to the hazardous waste disposal fee fund on a pro rata basis. The commission may use the money credited to the account from interest received from the investment of the fund for only those purposes specified in Subsection (d) of this section.*

(d) The commission may use the money collected and deposited in the fund under Subsection (c) of this section only for:

(1) necessary and appropriate removal and remedial action at sites at which *solid* [hazardous] waste or hazardous substances have been disposed if funds from a liable party, independent third party, or the federal government are not sufficient for the removal or remedial action;

(2) necessary and appropriate maintenance of removal and remedial actions for the expected life of those actions if funds from a liable party have been collected and deposited in the fund for that purpose or if funds from a liable party, independent third party, or the federal government are not sufficient for the maintenance; and

(3) expenses related to complying with the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. Section 9601 et seq.), the federal Superfund Amendments and Reauthorization Act of 1986, and Sections 8(g) and 13 of this Act.

SECTION 5. Section 13, Solid Waste Disposal Act (Article 4477-7, Vernon's Texas Civil Statutes), is revised to read as follows:

*Sec. 13. IDENTIFICATION, ASSESSMENT, AND CLEANUP OF HAZARDOUS WASTE FACILITIES. (a) The commission shall annually publish an updated state registry identifying, to the extent feasible, every facility that may constitute an imminent and substantial endangerment to public health and safety or the environment due to a release or threatened release of hazardous substances into the environ-*

ment. The registry shall identify the relative priority for action at each listed facility. The relative priority for action at facilities listed on the registry shall be periodically reviewed and revised by the commission, as necessary to accurately reflect the need for action at the facilities. For the purposes of this section, "facility" means (1) any building, structure, installation, equipment, pipe, or pipeline (including any pipe into a sewer or publicly owned treatment works, well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft), or (2) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

(b) The executive director may conduct investigations of facilities which are listed on the state registry, or which it has reason to believe should be included on the state registry, in accordance with Section 7 of this Act. If there is a reasonable basis to believe there may be a release or threatened release of a hazardous substance at a facility, the executive director may submit requests for information and requests for the production of documents to any person who has or may have information or documents relevant to:

(1) the identification, nature, or quantity of materials that have been generated, treated, stored, or disposed of at a facility or transported to a facility;

(2) the identification of soils, ground water, or surface water at a facility that have been or may be affected by an actual or threatened release of a hazardous substance;

(3) the nature or extent of a release or threatened release of a hazardous substance at or from a facility; or

(4) the ability of a person to pay for or to perform a remedial action.

If the requested information or documents are not produced in a timely manner, the commission may issue an order directing compliance with the requests for information or production of documents. Information or documents requested under this subsection shall be public records, except that, if a showing satisfactory to the commission is made by the owner of the records that the records would divulge trade secrets if made public, then the commission shall consider the copied records as confidential. Nothing in this subsection shall require the commission to consider the composition or characteristics of hazardous substances being processed, stored, disposed of, or otherwise handled to be held confidential. The commission shall promulgate rules regarding the provision of notice and an opportunity for a hearing before the commission on whether the requested information or documents should be produced.

(c) Prior to the listing of a facility on the state registry, the executive director shall first determine whether the potential endangerment to public health and safety or the environment at the facility can be resolved by the present owner or operator under the federal Resource Conservation and Recovery Act of 1976 (42 U.S.C. 6901) or by some or all of the potentially responsible parties identified in Section 8(g), pursuant to an agreed administrative order issued by the commission. If the potential endangerment to public health and safety or the environment can be resolved in such a manner, the facility shall not be listed on the state registry. Notice of the approach selected to resolve the apparent endangerment to health and public safety or the environment and the fact that this action is being taken in lieu of listing the facility on the state registry shall be published in the Texas Register. If after reasonable efforts the executive director determines that the potential endangerment to public health and safety or the environment cannot be resolved by either of these approaches, the executive director shall evaluate the facility to determine whether the site exceeds the commission's minimum criteria for listing on the state registry. These minimum criteria shall be promulgated by rule. The executive director shall also evaluate the facility to determine whether it is eligible for listing on the federal National Priorities List. The commission shall proceed under this section only if, based on information available to the executive director, the facility is eligible for listing on the state registry but not eligible for the federal National Priorities List.

*(1) Once the executive director has determined that the facility is eligible for listing on the state registry, the commission shall publish in the Texas Register and in a newspaper of general circulation in the county in which the facility is located a notice of intent to list the facility on the state registry. The notice shall at least specify the name and location of the facility, the general nature of the potential endangerment to public health and safety or the environment as determined by information available to the executive director at that time, and the duties and restrictions imposed by Subsection (c)(3) of this section. The notice also shall provide that interested parties may do either or both of the following: (A) submit written comments to the commission relative to the proposed listing of the facility; or (B) request a public meeting to discuss the proposed listing by submitting a request within 30 days of issuance of the notice.*

*(2) Once the facility is determined to be eligible for listing on the state registry, the executive director shall make all reasonable efforts to identify all potentially responsible parties for remediation of the facility. Concurrent with the publication of general notice in accordance with Subdivision (1) of this subsection, the executive director shall provide to each identified potentially responsible party direct, written notification of the proposed listing of the facility on the state registry and of the procedures for requesting a public meeting to discuss the listing and the information included in the general notice as required by Subdivision (1) of this subsection. Written notifications under this subsection shall be by certified mail, return receipt requested, by mailing notice to each named responsible party at the party's last known address.*

*(3) If a public meeting is requested regarding the proposed listing of a facility on the state registry, the commission shall publish general notice of the date, time, and location of the public meeting in the Texas Register and in the same newspaper in which the notice of the opportunity to request the public meeting was published. The public meeting notice shall be provided at least 30 days in advance of the meeting. Notice of the meeting also shall be provided by certified mail, return receipt requested, to all identified potentially responsible parties at the parties' last known addresses. Nonreceipt of any notice mailed to a potentially responsible party pursuant to this subdivision or Subdivision (2) of this subsection shall in no way affect the responsibilities, duties, or liabilities imposed on the party. Contemporaneously with the issuance of notice of the public meeting, the executive director shall make available to all interested parties the public records he has regarding the facility. For the purposes of providing this information, the executive director shall provide a brief summary of the public records he has and make these public records available for inspection and copying during regular business hours.*

*(4) The public meetings will be legislative in nature and not contested case hearings under the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes). The meeting shall be held for the purpose of obtaining additional information regarding the facility relative to the eligibility of the facility for listing on the state registry and the identification of potentially responsible parties.*

*(5) Subsequent to the public meeting or after opportunity to request a public meeting has passed, the commission shall file or cause to be filed an affidavit or notice in the real property records of the county in which a facility is located identifying the facility as one proposed for listing on the state registry, unless the executive director determines, based on information presented at the public meeting, that efforts to list the facility on the state registry should not be pursued.*

*(6)(A) Subsequent to the public meeting or after opportunity to request a public meeting has passed, but prior to any listing of the facility on the state registry, the commission shall allow all identified potentially responsible parties the opportunity to fund or conduct, if appropriate, a remedial investigation/feasibility study, or similar study as approved by the executive director, for the facility. The potentially responsible parties shall have 90 days from the date of the issuance of notice of the opportunity to request a public meeting to make a good faith offer to conduct the*

*study. If a good faith offer from all or some of the potentially responsible parties is received by the commission within 90 days, those making the offer shall have an additional 60 days within which to negotiate an agreed administrative order from the commission, which shall include a scope of work. The commission shall not require the participating potentially responsible parties to agree to perform the remedial action or admit liability for the facility remediation in this agreed administrative order.*

*(B) If no potentially responsible party makes a good faith offer to conduct the remedial investigation/feasibility study or similar study as approved by the executive director or .if the participating potentially responsible parties fail to conduct or complete an-approved study, the commission is authorized to conduct or complete the study using funds from the hazardous waste disposal fee fund.*

*(C) To encourage potentially responsible parties to perform the remedial investigation/feasibility study or other similar study as approved by the executive director, no costs for commission oversight of the study may be assessed against those parties who fund or perform the study. Nonparticipating potentially responsible parties who are ultimately determined to be liable for remediation of the facility under this Act or who subsequently enter into an agreed order relative to the remediation of the facility may be assessed up to the full costs for commission oversight of the study process. If all potentially responsible parties participate or agree to fund the remedial investigation/feasibility study or other similar study, all commission oversight costs shall be borne by the hazardous waste disposal fee fund.*

*(D) Once the executive director has determined that a facility is eligible for listing on the state registry, no person shall perform at the facility any partial or total removal activities except as authorized by the executive director in appropriate circumstances after notice and opportunity for comment to all other potentially responsible parties. The commission may develop rules determining what constitutes an appropriate circumstance to take removal action under this paragraph. Authorization by the executive director to conduct a partial or total removal action shall not constitute a final determination of the party's ultimate liability for remediation of the facility, nor a determination of divisibility.*

*(7)(A) Once the facility is determined to be eligible for listing on the state registry, the owner or operator of the facility must provide the executive director with written notice of any substantial change in use of the facility at least 60 days before the change in use is made. Notice of a proposed substantial change in use shall be in writing, addressed to the executive director, provided by certified mail, return receipt requested, and shall include a brief description of the proposed change in use. A substantial change in use shall be defined by rule and shall include but not be limited to actions such as the erection of a building or other structure at the facility, the use of the facility for agricultural production, the paving of the facility for use as a roadway or parking lot, and the creation of a park or other public or private recreational use on the facility.*

*(B) If, within 30 days of the notice, the executive director determines that the proposed substantial change in use will interfere significantly with a proposed or ongoing remedial investigation/feasibility study, or similar study approved by the executive director, or expose the public health and safety or the environment to a significantly increased threat of harm, then he shall notify the owner or operator of his determination. Once the determination is made and notification given, the owner or operator shall not proceed with the proposed substantial change in use. The owner or operator may request a hearing before the commission on whether the determination should be modified or set aside by submitting a request within 30 days of receipt of the executive director's determination. If a hearing is requested, the commission shall initiate the hearing within 45 days of the receipt of the request. The hearing shall be conducted in accordance with the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's*

*Texas Civil Statutes). The executive director's determination shall become unappealable 30 days after issuance if a hearing is not requested.*

*(8) Within a reasonable time following the completion of the remedial investigation/feasibility study or other similar study, if required, the executive director shall select a proposed remedial action. Subsequent to its selection of a proposed remedial action, the commission shall hold a public meeting to discuss the proposed action. The commission shall publish notice of the meeting in the Texas Register and in a newspaper of general circulation in the county where the facility is located at least 45 days prior to the public meeting. The notice shall provide information regarding the proposed remedial action and the date, time, and place of the meeting. The commission shall also mail the same information to each potentially responsible party by certified mail, return receipt requested, at each party's last known address at least 45 days prior to the public meeting Contemporaneously with the issuance of notice of the public meeting, the executive director shall make available to all interested parties the public records he has regarding the facility. For purposes of providing this information, the executive director shall provide a brief summary of the public records he has and make these public records available for inspection and copying during regular business hours. Nonreceipt of any notice mailed to a potentially responsible party pursuant to this subdivision shall in no way affect the responsibilities, duties, or liabilities imposed on any such party.*

*(9) The public meeting shall be legislative in nature and not conducted as a contested case hearing under the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes). The meeting shall be held for the purpose of obtaining additional information regarding the facility and the identification of additional potentially responsible parties. Those in attendance may present their comments on the proposed remedial action, and the executive director may revise its proposed remedial action in light of the presentations.*

*(10)(A) Subsequent to the public meeting on the proposed remedial action, the commission shall provide all identified potentially responsible parties an opportunity to fund or perform the proposed remedial action. The potentially responsible parties shall have 60 days from the date of the public meeting in which to make a good faith offer to perform or fund the proposed remedial action. If a good faith offer is made by all or some of the potentially responsible parties within the 60-day period, then these parties will have an additional 60 days to negotiate an agreed administrative order from the commission, which shall include a scope of work. The commission shall not require an admission of liability in the agreed administrative order.*

*(B) To encourage potentially responsible parties to perform the remedial action, no costs for commission oversight of the remedial action may be assessed against those parties who fund or perform the remedial action. Nonparticipating potentially responsible parties who are ultimately determined to be liable for remediation of the facility may be assessed up to the full costs for commission oversight of the remedial action. If all potentially responsible parties conduct or fund the remedial action, all commission oversight costs shall be borne by the hazardous waste disposal fee fund. Participation in the remedial action does not relieve those who did not conduct or fund the remedial investigation/feasibility study or other similar study approved by the executive director from paying their portion of the oversight costs of that phase of the remediation.*

*(C) The executive director may authorize a potentially responsible party to conduct a partial remedial action at a portion of the facility if the executive director determines that the release or threatened release is divisible after notice and opportunity for comment to all other potentially responsible parties. For purposes of this section, "divisible" means that the hazardous substance released or threatened to be released is capable of being managed separately under the remedial action plan. A determination of divisibility by the executive director shall have no res judicata or collateral estoppel effect on a potentially responsible party's ultimate liability for remediation of the facility under Section 8.*

*(11) After consideration of all good faith offers to perform a remedial action, the commission shall issue a final administrative order that shall:*

*(A) list the facility on the state registry, thus determining that the facility poses an imminent and substantial endangerment to public health and safety or the environment;*

*(B) specify the selected remedial action;*

*(C) list the parties determined to be responsible for remediating the facility;*

*(D) make findings of fact describing actions voluntarily undertaken by responsible parties;*

*(E) order the responsible parties to remediate the facility and, if appropriate, reimburse the hazardous waste disposal fee fund for remedial investigation/feasibility study and remediation costs;*

*(F) establish a schedule for completion of the remedial action;*

*(G) state any determination of divisibility of responsible party liability; and*

*(H) give notice of the duties and restrictions imposed by Subsection (f) of this section.*

The provisions in Sections 8(g), 9, 10, and 11 of this Act relating to administrative orders shall apply to orders issued pursuant to this paragraph.

*(12) If a potentially responsible party is newly identified after a final administrative order has been issued by the commission pursuant to Subdivision (11) of this subsection, that party shall have 60 days to negotiate an amendment to the existing order. The commission shall not be prohibited from issuing a separate order for the newly identified potentially responsible party if it determines that the circumstances warrant a separate order. The responsible parties identified in the order issued pursuant to Subdivision (11) of this subsection shall be allowed to comment on the issuance of a separate order for the newly identified potentially responsible party.*

(d) The commission shall file or cause to be filed an affidavit or notice in the real property records of the county in which the facility is located stating that the facility has been listed on or deleted from the state registry or is no longer proposed for listing on the state registry, within a reasonable period after a determination has been made.

(e) Any owner or operator or other named responsible party of a facility listed or to be listed in the state registry may request the commission to delete the facility from the state registry, modify the facility's priority within the state registry, or modify any information regarding the facility by submitting a written statement setting forth the grounds of the request in the form as the commission may require pursuant to its promulgated rules. The commission shall promulgate rules establishing procedures, including public hearings, for review of requests submitted pursuant to this subsection.

(f) Subsequent to the listing of a facility on the state registry, no person may substantially change the manner in which the facility is used without notifying the executive director and receiving written approval of the executive director for the change. A substantial change in use shall be defined by rule and shall include but not be limited to actions such as the erection of a building or other structure at the facility, the use of the facility for agricultural production, the paving of the facility for use as a roadway or parking lot, and the creation of a park or other public or private recreational use on the facility. The notice shall be in writing, addressed to the executive director, provided by certified mail, return receipt requested, and shall include a brief description of the proposed change of use. The executive director shall approve or disapprove the proposed action within 60 days of receipt of the notice of proposed change in use. The executive director shall not approve the proposed change of use if such new use will significantly interfere with a proposed, ongoing, or completed remedial action program at a facility or expose the public health and safety or the environment to a significantly increased threat of harm.

*(g)(1) Whenever the commission, after investigation, finds that there exists a release or threatened release of a hazardous substance at a facility that: (A) is causing irreversible or irreparable harm to the public health and safety or the environment; and (B) the immediacy of the situation makes it prejudicial to the public interest to delay action until an administrative order can be issued to potentially responsible parties or until a judgment can be entered in an appeal of an administrative order; the commission may, with the funds available to the commission from the hazardous waste disposal fee fund, undertake immediate removal action at the facility to alleviate the harm. After the immediate danger of irreversible or irreparable harm has been alleviated, the commission shall proceed pursuant to the provisions of this section. Findings required pursuant to this subsection shall be in writing and may be made by the commission on an ex parte basis subject to judicial review pursuant to the substantial evidence rule as provided by the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes).*

*(2) The reasonable expenses of any immediate removal action taken by the commission may be recoverable from the persons described in Section 8, and the state may seek to recover the reasonable expenses in any court of appropriate jurisdiction.*

*(h) Whenever a person ordered to eliminate an imminent and substantial endangerment to the public health and safety or the environment has failed to do so within the time limits specified in the order or any extension of time approved by the commission, the commission may implement the remedial action program for the facility. The reasonable expenses of implementing the remedial action program by the commission shall be paid by the persons to whom the order was issued and shall be recoverable under the provisions of Subsection (m) of this section.*

*(i)(1) The goal of any remedial action shall be the elimination of the imminent and substantial endangerment to the public health and safety or the environment posed by a release or threatened release of a hazardous substance at a facility. The appropriate extent of the remedial action at any particular facility shall be determined by the commission's selection of the remedial alternative which the state agency determines is cost effective (i.e., the lowest cost alternative that is technologically feasible and reliable and which effectively mitigates and minimizes damage to and provides adequate protection of the public health and safety or the environment).*

*(2) In considering the appropriate remedial action program at a particular facility, the commission may approve a program that does not attain a level or standard of control at least equivalent to a legally applicable or relevant and appropriate standard, requirement, criterion, or limitation, as required by state or local law, if the commission finds that:*

*(A) the remedial action selected is only part of a total remedial action that will attain such level or standard of control when completed;*

*(B) compliance with the requirement at that facility will result in greater risk to public health and safety or the environment than alternative options;*

*(C) compliance with the requirement is technically impracticable from an engineering perspective;*

*(D) the remedial action selected will attain a standard of performance that is equivalent to that required under the otherwise applicable standard, requirement, criterion, or limitation through use of another method or approach;*

*(E) with respect to a local standard, requirement, criterion, or limitation, the locality has not consistently applied (or demonstrated the intention to consistently apply) the standard, requirement, criterion, or limitation in similar circumstances of other remedial actions within the locality; or*

*(F) with respect to an action using solely state funds, selection of a remedial action that attains such levels or standards of control will not provide a balance between the need for protection of public health and safety or the environment at the facility and the availabilty of state funds to respond to other sites that present*

3224

*a threat to public health and safety or the environment, taking into consideration the relative immediacy of the threats.*

*(j) In addition to all other remedies available to the state under this Act or any other law or statute, all remediation costs for which a person is liable to the state shall constitute a lien in favor of the state on the real property and the rights to the real property that are subject to or affected by a remedial action. This provision is cumulative of other remedies available to the state under this Act.*

*(1) The lien imposed by this subsection shall arise and attach to the real property subject to or affected by a remedial action at the time an affidavit is recorded and indexed in accordance with this subsection in the county in which the real property is located. For the purpose of determining rights of all affected parties, the lien shall not relate back to a time prior to the date on which the affidavit is recorded, which date shall be the lien inception date. The lien shall continue until the liability for the costs is satisfied or becomes unenforceable through operation of law.*

*(2) The affidavit shall be executed by an authorized representative of the commission and must show:*

*(A) the names and addresses of the persons liable for the costs;*

*(B) a description of the real property that is subject to or affected by the remediation action for the costs or claims; and*

*(C) the amount of the costs and the balance due.*

*(3) The county clerk shall record the affidavit in records kept for that purpose and shall index the affidavit under the names of the persons liable for the costs.*

*(4) The commission shall record a relinquishment or satisfaction of the lien when the lien is paid or satisfied.*

*(5) The lien may be foreclosed only on judgment of a court of competent jurisdiction foreclosing the lien and ordering the sale of the property subject to the lien.*

*(6) The lien imposed by this subsection shall not be valid or enforceable if real property or an interest therein or a mortgage, lien, or other encumbrance upon or against real property is acquired before the affidavit is recorded, unless the person acquiring the real property or an interest therein or acquiring the mortgage, lien, or other encumbrance thereon had or reasonably should have had actual notice or knowledge that the real property is subject to or affected by a clean-up action or has knowledge that the state has incurred clean-up costs.*

*(7) If a lien is fixed or attempted to be fixed as provided in this subsection, the owner of the real property affected by the lien may file a bond to indemnify against the lien. The bond shall be filed with the county clerk of the county in which the real property subject to the lien is located. An action to establish, enforce, or foreclose any lien or claim of lien covered by the bond must be brought not later than the 30th day after the date of service of notice of the bond.*

*(8) The bond must:*

*(A) describe the real property upon which the lien is claimed;*

*(B) refer to the lien claimed in a manner sufficient to identify it;*

*(C) be in an amount double the amount of the lien referred to;*

*(D) be payable to the commission;*

*(E) be executed by the party filing the bond as principal and a corporate surety authorized under the law of this state to execute the bond as surety; and*

*(F) be conditioned substantially that the principal and sureties will pay to the commission the amount of the lien claimed, plus costs, if the claim is proved to be a lien on the real property.*

*(9) After the bond is filed, the county clerk shall issue notice of the bond to the named obligee. A copy of the bond must be attached to the notice. The notice may be served on each obligee by having a copy delivered to the obligee by any person competent to make oath of the delivery. The original notice shall be returned to the*

*office of the county clerk, and the person making service of copy shall make an oath on the back of the copies showing on whom and on what date the copies were served. The county clerk shall record the bond notice and return in records kept for that purpose. In acquiring an interest in real property, a purchaser or lender may rely on and is absolutely protected by the record of the bond, notice, and return.*

*(10) The commission may sue on the bond after the 30th day following the date on which the notice is served but may not sue on the bond later than one year after the date on which the notice is served. If the commission recovers in a suit on the lien or on the bond, it is entitled to also recover reasonable attorney's fees.*

*(k) Money for actions taken or to be taken by the commission in connection with the elimination of an imminent and substantial endangerment to the public health and safety or the environment pursuant to this section shall be payable directly to the commission from the hazardous waste disposal fee fund. This includes any costs of inspection or sampling and laboratory analysis of wastes, soils, air, surface water, and ground water done on behalf of a state agency and the costs of investigations to identify and locate potentially responsible parties.*

*(l) The commission shall seek remediation of facilities by potentially responsible parties prior to expenditure of federal or state funds for the remediations. Potentially responsible parties shall coordinate with ongoing federal and state hazardous waste programs, although no state or local permit shall be required for any removal or remedial action conducted on site. Subject to the provisions of Subsection (i) of this section, the state may enforce any federal or state standard, requirement, criterion, or limitation to which the remedial action would otherwise be required to conform if a permit were required. No action taken by the person to contain or remove a release or threatened release in accordance with an approved remedial action plan shall be construed as an admission of liability for said release or threatened release. No person who renders assistance in containing or removing a release or threatened release in accordance with an approved remedial action plan shall be liable for any additional remediation costs at the facility resulting solely from acts or omissions of the person in rendering the assistance in compliance with the approvals required by this subsection, unless the remediation costs were caused by the person's gross negligence or wilful misconduct. Except as specifically provided in this subsection, these provisions shall not be construed to expand or diminish the common law tort liability, if any, of private parties participating in a remediation action for civil damages to third parties.*

*(m) The commission shall file a cost recovery action against all responsible parties who have not complied with the terms of an administrative order issued pursuant to Subdivision (11) or (12) of Subsection (c) of this section. The commission shall file the cost recovery action no later than one year after all remedial action has been completed. The state may seek a judgment against the noncompliant parties for the total amount of the cost of the remedial action, including costs of any necessary studies and oversight costs, minus the amount agreed to be paid or expended by any other responsible parties pursuant to an order issued pursuant to Subdivision (11) or (12) of Subsection (c) of this section. The action may also include a plea seeking civil penalties for noncompliance with the commission's administrative order and a claim for up to double the state's costs if the responsible party's defenses are determined by the court to be unreasonable, frivolous, or without foundation.*

*(n)(1) A responsible party named in an administrative order who does not comply with the order shall become subject to the imposition of administrative or civil penalties under Section 8b of this Act. The penalties may be assessed only from the date after which the administrative order becomes nonappealable.*

*(2) The commission is authorized to include provisions within an agreed administrative order that stipulate administrative penalty amounts for failure to comply with the order. The penalty provisions may be applicable to either or both of the remedial investigation/feasibility study and remedial action orders.*

*(o)(1) The commission shall promulgate rules necessary to develop a mixed funding program in which available money from potentially responsible parties is combined*

*with state or federal funds to clean up a facility in a timely manner. Use of the state or federal funds in a mixed funding approach shall not preclude the state or federal government from seeking recovery of its costs from nonparticipating potentially responsible parties.*

*(2) The commission shall assess and may, through rulemaking, develop and implement a de minimis settlement program. Under the program, the commission shall be required to consider the advantages of developing a final settlement with potentially responsible parties that are responsible for only a minor portion of the response costs at a facility because the hazardous substances the party is responsible for are minimal in amount or in hazardous effect by comparison with the hazardous substances attributable to other parties.*

*(3) The commission shall investigate additional alternative programs to encourage potentially responsible parties to investigate or remediate facilities and report its findings to the 72nd Legislature with recommendations for legislative action.*

*(p) The commission is authorized to determine whether a potentially responsible party is financially capable of conducting any necessary remediation studies or remedial action. The commission shall promulgate rules to develop the criteria for determination of financial capability. If no financially capable potentially responsible parties exist for a facility, the commission shall issue an administrative order stating its determination that the facility constitutes an imminent and substantial endangerment and that there are no financially capable potentially responsible parties. The commission shall then conduct its own remediation study and remedial action, using federal funds if available. If federal funds are not available, state funds from the hazardous waste disposal fee fund shall be used. Generally, the remediation of listed facilities shall be achieved first by private party funding, second with the aid of federal funds, and third, if necessary, with state funds from the hazardous waste disposal fee fund.*

*(q) The executive director or the commission shall have the authority to extend any time period specified in this section if deemed appropriate.*

[Sec. 13. IDENTIFICATION AND ASSESSMENT OF HAZARDOUS WASTE FACILITIES. (a) The department of water resources, in cooperation with the department, shall conduct and complete a survey of the state by July 1, 1986, the purpose of which is to identify to the extent feasible every hazardous waste facility which may constitute an imminent and substantial endangerment to public health and safety or the environment. The work already performed to identify candidate sites for inclusion in the federal National Priorities List shall serve as the basis for such a survey. As soon as possible after completion of a draft survey, the department of water resources shall conduct a public hearing to solicit comments on the draft survey and information on additional candidate sites. Not later than January 1, 1987, the department of water resources shall publish a registry identifying each facility listed by the survey, the relative priority of the need for action at each facility to remedy environmental and health problems resulting from the presence of hazardous wastes at such facilities, and setting forth recommendations for actions which may be pursued to achieve effective, efficient, and timely cleanup or other resolution of the problems identified for each facility. Such recommendations shall not constitute the remedial investigation/feasibility study for the relevant facility, but shall form the preliminary basis for such a study. The cleanup of such facilities shall be achieved first by private party funding, second with the aid of federal funds, and third, if necessary, with state funds from the hazardous waste permit and disposal fee, if the fee is approved by the legislature. A draft copy of the registry shall be circulated to the department for comment prior to publication. Three copies of the registry, as published, shall be delivered to the Office of the Governor.

[(b)(1) The department of water resources may conduct investigations of the facilities listed in the registry and may investigate areas or sites which it has reason to believe should be included in the registry, in accordance with Section 7 of this Act.

[(2) The department of water resources shall, as part of the registry, assess by January 1, 1987, and each year thereafter, and, based upon new information received from sources including but not limited to public hearings, reassess, in cooperation with

the department, the relative priority of the need for action at each facility listed in the registry to remedy environmental and health problems resulting from the presence of hazardous wastes at such facilities.

[(c) The department of water resources shall update the registry periodically to add facilities which may constitute an imminent and substantial endangerment to public health and safety or the environment and to delete facilities which have been cleaned up pursuant to Subsection (g) of this section or delisted pursuant to Subsection (e) of this section.

[(d) The department of water resources shall file an affidavit or notice in the real property records of the county in which a facility is located identifying those facilities included in the registry, as well as those facilities deleted from the registry.

[(e)(1) Within thirty (30) days after the survey pursuant to Subsection (a) of this section is completed, the department of water resources shall notify in writing the parties identified as responsible for all or any part of each facility or area included in the registry prepared pursuant to such Subsection (a) of the inclusion of the facility or area on such survey. Thereafter, two months before any unincluded facility or area is added to the registry, the department of water resources shall notify in writing the parties identified as responsible for all or any part of such facility or area of the contemplated inclusion of such facility or area on such registry. Written notifications under this subsection shall be by certified mail, return receipt requested, by mailing notice to each such named responsible party at the party's last known address.

[(2) Notice pursuant to Paragraph (1) of this subsection shall include but not be limited to a description of the duties and restrictions imposed by Subsection (f) of this section.

[(3) Non-receipt of any notice mailed to a named responsible party pursuant to this subsection shall in no way affect the responsibilities, duties or liabilities imposed on any such party.

[(4) Any owner or operator or other named responsible party of a facility listed or to be listed in the registry of the department of water resources pursuant to this section may request the department of water resources to delete such facility from the registry, modify the facility's priority within the registry or modify any information regarding such facility by submitting a written statement setting forth the grounds of the request in such form as the department of water resources may require.

[(5) Within one hundred and eighty (180) days after the effective date of this provision, the department of water resources shall propose rules establishing procedures, including public hearings, for review of delisting requests submitted pursuant to this subsection.

[(f)(1) Subsequent to the listing of a facility on the registry prepared and maintained by the department of water resources, no person may substantially change the manner in which the facility is used without notifying the department of water resources and receiving written approval of the department of water resources for such change. A substantial change of use shall be defined in rules adopted by the board and shall include, but not be limited to, actions such as the erection of a building or other structure at such facility, the use of such facility for agricultural production, the paving of such facility for use as a roadway or parking lot, and the creation of a park or other public or private recreational facility on such facility. Such notice shall be in writing, addressed to the executive director and shall include a brief description of the proposed change of use. Such notice shall be submitted in writing at least sixty days before any physical alteration of the land or construction will occur or, in the event any alteration or construction is not required to initiate such change of use, at least sixty days before any change of use.

[(2) The executive director shall not approve such change of use if such new use will interfere significantly with a proposed, ongoing or completed hazardous waste facility remedial action program at such facility or expose the environment or public health to a significantly increased threat of harm.

[(g)(1) The cleanup of a facility identified by the department of water resources in the registry which constitutes an imminent and substantial endangerment to the public health

and safety or the environment shall proceed on an expedited basis pursuant to the following guidelines:

[(A) wherever possible, parties identified as liable parties pursuant to Section 8(g)(1) should be notified by the department of water resources of an opportunity to participate in a voluntary cleanup of the facility;

[(B) if all persons liable under Section 8(g)(1) do not volunteer to develop and implement a remedial action program for the facility, then private parties who are willing to participate in cleanup activities voluntarily should be allowed to do so and they may seek cost recovery pursuant to Section 11(b) from those liable parties not participating in the voluntary cleanup;

[(C) if no parties identified as liable under Section 8(g)(1) volunteer to develop and implement a remedial action program for the facility, then independent third parties who are willing to participate voluntarily in the cleanup of the facility should be permitted to contract with the department of water resources to do so and they may seek cost recovery pursuant to Section 11(b) from those liable parties not participating in the voluntary cleanup;

[(D) where voluntary assistance from the private sector is not forthcoming, federal funds should be used for facility cleanup if such funds are timely available; and

[(E) state funds should be used only when a liable party or independent third party cleanup or federal funds are not timely available.

[(2) Whenever the department of water resources finds that there exists an actual or threatened release of hazardous wastes at a hazardous waste facility listed on the registry that presents an imminent and substantial endangerment to the public health and safety or the environment, it may order the owner and/or operator of such facility and/or any other person responsible for the release or threatened release at such facility (A) to develop a remedial action program, subject to the approval of the department of water resources, at such facility, and (B) to implement such program within reasonable time limits specified in the order. The provisions in Sections 8(g), 9, 10 and 11 of this Act relating to administrative orders shall apply to orders issued pursuant to this paragraph.

[(3) Whenever the commission, after investigation, finds that there exists a release or threatened release of hazardous wastes at a facility identified in the registry that:

[(A) is causing irreversible or irreparable harm to the public health and safety or the environment; and

[(B) the immediacy of the situation makes it prejudicial to the public interest to delay action until an administrative order can be issued to liable parties pursuant to Paragraph (2) of this subsection or until a judgment can be entered in an appeal of an administrative order; the commission may, with the funds available to the commission from the hazardous waste permit and disposal fees, if approved by the Legislature, undertake immediate removal action at the facility to alleviate the harm. After the immediate danger of irreversible or irreparable harm has been alleviated, the commission shall proceed pursuant to Paragraph (2) of this subsection. Findings required pursuant to this paragraph shall be in writing and may be made by the commission on an ex parte basis subject to judicial review pursuant to the substantial evidence rule as provided by the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes).

[(C) The reasonable expenses of any immediate removal action taken by the Texas Water Commission may be recoverable from the persons described in Section 8(g)(2) and the state may seek to recover such reasonable expenses in any court of appropriate jurisdiction.

[(4) Whenever a person ordered to eliminate an imminent and substantial endangerment to the public health and safety or the environment has failed to do so within the time limits specified in the order, and no third party has agreed to develop and implement a remedial action program for the facility pursuant to Paragraph (1)(C) of this subsection, the department of water resources may develop and implement a remedial action program for such facility. The reasonable expenses of developing and

implementing such remedial action program by the department of water resources shall be paid by the persons to whom the order was issued and the state may seek to recover such reasonable expenses in any court of appropriate jurisdiction. Any action instituted by the department of water resources pursuant to this paragraph shall be subject to the provis ons of Sections 8(g), 9, 10, and 11 of this Act.

[(5) In the event that the department of water resources has found that there exists a release or threatened release of hazardous wastes at a facility on the registry which presents an imminent and substantial endangerment to the public health and safety or the environment but, after a reasonable attempt to determine who may be liable for such release or threatened release in accordance with Section 8(g), is either unable to determine who may be liable, or is unable to locate a person who may be liable, and no independent third party agrees to develop and implement a remedial action program for the facility in accordance with Paragraph (1)(C) of this subsection, the department of water resources may develop and implement a remedial action program for such facility. Federal funds shall be used for such cleanup to the maximum extent timely available in accordance with Paragraph (1)(D) of this subsection. The department of water resources shall make every effort to secure appropriate relief from any person subsequently identified or located who is liable for the release or threatened release of hazardous waste at such facility, including, but not limited to, development and implementation of a remedial action program, payment of the cost of such a program and recovery of any reasonable expenses incurred by the state.

[(6) The goal of any remedial action program shall be the elimination of the imminent and substantial endangerment to the public health and safety or the environment posed by a release or threatened release of hazardous wastes at a facility. The appropriate extent of remedy at any particular facility shall be determined by the department of water resources' selection of the remedial alternative which the state agency determines is cost effective (i.e., the lowest cost alternative that is technologically feasible and reliable and which effectively mitigates and minimizes damage to and provides adequate protection of the public health and safety or the environment).

[(7) All cleanup costs for which a person is liable to the state shall constitute a lien in favor of the state on the real property and the rights to such real property that are subject to or affected by a cleanup action.

[(A) The lien imposed by this paragraph shall arise and attach to the real property subject to or affected by a cleanup action at the time an affidavit is recorded and indexed in accordance with this paragraph in the county in which such real property is located. For the purpose of determining rights of all affected parties, the lien shall not relate back to a time prior to the date on which the affidavit is recorded, which date shall be the lien inception date. The lien shall continue until the liability for the costs is satisfied or becomes unenforceable through operation of law.

[(B) The affidavit shall be executed by an authorized representative of the department of water resources and must show:

[(i) the names and addresses of the persons liable for such costs;

[(ii) a description of the real property that is subject to or affected by the cleanup action for the costs or claims; and

[(iii) the amount of the costs and the balance due.

[(C) The county clerk shall record the affidavit in records kept for that purpose and shall index the affidavit under the names of the persons liable for such costs.

[(D) The department of water resources shall record a relinquishment or satisfaction of the lien when the lien is paid or satisfied.

[(E) The lien may be foreclosed only on judgment of a court of competent jurisdiction foreclosing the lien and ordering the sale of the property subject to the lien.

[(F) The lien imposed by this paragraph shall not be valid or enforceable if:

[(i) real property or an interest therein, or

[(ii) a mortgage, lien, or other encumbrance upon or against real property, is acquired before the affidavit is recorded unless the person acquiring the real property or an interest therein or acquiring the mortgage, lien or other encumbrance thereon had or reasonably should have had actual notice or knowledge that the real property is subject to or affected by a clean-up action, or has knowledge that the state has incurred clean-up costs.

[(G) If a lien is fixed or attempted to be fixed as provided in this paragraph, the owner of the real property affected by the lien may file a bond to indemnify against the lien. The bond shall be filed with the county clerk of the county in which the real property subject to the lien is located. An action to establish, enforce, or foreclose any lien or claim of lien covered by the bond must be brought not later than the 30th day after the date of service of notice of the bond.

[(H) The bond must:

[(i) describe the real property upon which the lien is claimed;

[(ii) refer to the lien claimed in a manner sufficient to identify it;

[(iii) be in an amount double the amount of the lien referred to;

[(iv) be payable to the department of water resources;

[(v) be executed by the party filing the bond as principal, and a corporate surety authorized under the law of this state to execute the bond as surety; and

[(vi) be conditioned substantially that the principal and sureties will pay to the department of water resources the amount of the lien claimed, plus costs, if the claim is proved to be a lien on the real property.

[(I) After the bond is filed, the county clerk shall issue notice of the bond to the named obligee. A copy of the bond must be attached to the notice. The notice may be served on each obligee by having a copy delivered to the obligee by any person competent to make oath of the delivery. The original notice shall be returned to the office of the county clerk, and the person making service of copy shall make an oath on the back of the copies showing on whom and on what date the copies were served. The county clerk shall record the bond notice and return in records kept for that purpose. In acquiring an interest in real property, a purchaser or lender may rely on and is absolutely protected by the record of the bond, notice, and return.

[(J) The department of water resources may sue on the bond after the 30th day following the date on which the notice is served, but may not sue on the bond later than one year after the date on which the notice is served. If the department of water resources recovers in a suit on the lien or on the bond, it is entitled to also recover a reasonable attorney's fee.

[(8) Money for actions taken or to be taken by the department of water resources in connection with the elimination of an imminent and substantial endangerment to the public health and safety or the environment pursuant to this section shall be payable directly to the agency from the hazardous waste permit and disposal fees, if approved by the legislature. This includes any costs of inspection or sampling and laboratory analysis of wastes, soils, air, surface water and groundwater done on behalf of a state agency.

[(9) The department of water resources shall seek private party cleanup of facilities prior to expenditure of federal or state funds for such cleanups. Private parties shall coordinate with ongoing federal and/or state hazardous waste programs and obtain necessary approvals for any such cleanup actions. No action taken by any such person to contain or remove a release or threatened release in accordance with an approved remedial action plan shall be construed as an admission of liability for said release or threatened release. No person who renders assistance in containing or removing a release or threatened release in accordance with an approved remedial action plan shall be liable for any additional cleanup costs at the facility resulting solely from acts or omissions of such person in rendering such assistance in compliance with the approvals required by this subsection, unless such cleanup costs were caused by such person's gross negligence or willful misconduct. Except as specifically provided herein, the

provisions of this subsection shall not be construed to expand or diminish the common law tort liability, if any, of private parties participating in a cleanup action for civil damages to third parties.]

SECTION 6. The Solid Waste Disposal Act (Article 4477-7, Vernon's Texas Civil Statutes) is amended by adding Section 15 to read as follows:

*Sec. 15. CONTRACTS AND COOPERATIVE AGREEMENTS FOR REMOVAL AND REMEDIAL ACTION. (a) In this section:*

*(1) "Disposal facility" means a site or area at which a hazardous substance, pollutant, or contaminant has been deposited, stored, disposed of, or placed or otherwise come to be located that no longer receives hazardous substances, pollutants, and contaminants.*

*(2) "Fund" means the hazardous waste disposal fee fund created by Section 11a of this Act.*

*(3) "Pollutant or contaminant" means any element, substance, compound, or mixture, including disease-causing agents, that after release into the environment and on exposure, ingestion, inhalation, or assimilation into any organism, either directly from the environment or indirectly by ingestion through food chains, will or may reasonably be anticipated to cause death, disease, behavioral abnormalities, cancer, genetic mutation, physiological malfunctions, including malfunctions in reproduction, or physical deformations in those organisms or their offspring. The term does not include petroleum, which means crude oil or any fraction of crude oil that is not otherwise specifically listed or designated as a hazardous substance under Sections 2(14)(A) through (F) of this Act; nor does it include natural gas, liquefied natural gas, or synthetic gas of pipeline quality or mixtures of natural gas and synthetic gas.*

*(4) "Release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment, but excludes:*

*(A) a release that results in exposure to persons solely within a workplace, with respect to a claim which those persons may assert against the employer of those persons;*

*(B) emissions from the engine exhaust of a motor vehicle, rolling stock, aircraft, vessel, or pipeline pumping station engine;*

*(C) release of source, by-product, or special nuclear material from a nuclear incident, as those terms are defined in the Atomic Energy Act of 1954, as amended (42 U.S.C. 2011 et seq.), if the release is subject to requirements with respect to financial protection established by the Nuclear Regulatory Commission under Section 170 of that Act, or, for the purposes of Section 104 of the environmental response law or any other response action, any release of source, by-product, or special nuclear material from any processing site designated under Section 102(a)(1) or 302(a) of the Uranium Mill Tailings Radiation Control Act of 1978 (42 U.S.C. 7912 and 7942); and*

*(D) the normal application of fertilizer.*

*(5) "Removal" means the cleanup or removal of released hazardous substances, pollutants, or contaminants from the environment; the actions necessary to be taken in the event of the threat of release of hazardous substances, pollutants, or contaminants into the environment; the actions necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, pollutants, or contaminants; the disposal of removed material; or the taking of other actions as may be necessary to prevent, minimize, or mitigate damage to the public health and safety or to the environment that may otherwise result from a release or threat of release. The term also includes security fencing or other measures to limit access, provision of alternate water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under Section 104(b) of the environmental response law, and any emergency assistance that may be provided under the Disaster Relief Act of 1974 (42 U.S.C. 5121 et seq.).*

proved as of September 1, 1989, the executive director shall notify all potentially responsible parties that they have 90 days from receipt of the notice within which to make a good faith offer under Subdivision (7) of Subsection (c) of Section 13 of the Solid Waste Disposal Act (Article 4477-7, Vernon's Texas Civil Statutes), as amended by this Act. All other activities regarding the facility shall take place in accordance with that Act as amended by this legislation.

SECTION 9. This Act takes effect September 1, 1989.

SECTION 10. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended.

Passed the Senate on April 27, 1989, by a viva-voce vote; and that the Senate concurred in House amendment on May 24, 1989, by a viva-voce vote; passed the House, with amendment, on May 22, 1989, by a non-record vote.

Approved June 14, 1989.

Effective Sept. 1, 1989.

---

## CHAPTER 704

## S.B. No. 1521

### AN ACT

relating to the creation of the waste reduction advisory committee and to waste minimization and reduction activities of the Texas Water Commission.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1. Subsection (g), Section 3, Solid Waste Disposal Act (Article 4477-7, Vernon's Texas Civil Statutes), is amended by adding Paragraphs (3) and (4) to read as follows:

*(3) The waste reduction advisory committee, which shall advise the commission and interagency coordination council on matters the council is required to consider under Subdivision (2) of this subsection, is created. The committee also shall advise the commission and council on:*

*(A) the appropriate organization of state agencies and the financial and technical resources required to aid the state in its efforts to promote waste reduction and minimization;*

*(B) the development of public awareness programs to educate citizens about hazardous waste and the appropriate disposal of hazardous waste and hazardous materials that are used and collected by households;*

*(C) the provision of technical assistance to local governments for the development of waste management strategies designed to assist small quantity generators of hazardous waste; and*

*(D) other possible programs to more effectively implement the state's hierarchy of preferred waste management technologies as set forth in Section 3(e)(1) of this Act. The committee shall be composed of nine members with a balanced representation of environmental and public interest groups and the regulated community.*

*(4) The commission shall establish a waste minimization and reduction group to assist in developing waste minimization and reduction programs and to provide incentives for their use so as to make such programs economically and technologically feasible.*

SECTION 2. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be

# TAB 3

Approved June 14, 1990.

Effective Sept. 6, 1990, 90 days after date of adjournment.

---

# CHAPTER 9

## H.B. No. 48

### AN ACT

relating to an exemption for full-service gasoline stations during certain times from the requirement to provide refueling service to disabled persons.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1. Section 3, Chapter 948, Acts of the 71st Legislature, Regular Session, 1989 (Article 8613, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 3. EXEMPTIONS. This Act does not apply to:

(1) a gasoline service station or other facility that offers gasoline or other motor vehicle fuel for sale to the public from the facility:

*(A)* if the station or other facility has only remotely controlled pumps and never provides pump island service; or

*(B) during regularly scheduled hours in which, for security reasons, a station or facility that ordinarily provides pump island service does not provide that service; or*

(2) refueling service to provide liquefied gas, as that term is defined by Section 153.001, Tax Code.

SECTION 2. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended.

Passed the House on June 6, 1990, by a non-record vote; passed by the Senate on June 6, 1990, by a viva-voce vote.

Approved June 13, 1990.

Effective Sept. 6, 1990, 90 days after date of adjournment.

---

# CHAPTER 10

## S.B. No. 43

### AN ACT

relating to conforming Chapters 361 and 363, Health and Safety Code (the Solid Waste Disposal Act and the Comprehensive Municipal Solid Waste Management, Resource Recovery, and Conservation Act), to certain enactments of the 71st Legislature, Regular Session, 1989, and to making certain corrective and other conforming amendments to the Health and Safety Code.

*Be it enacted by the Legislature of the State of Texas:*

### Article 1. General Provisions

SECTION 1. (a) This Act is enacted as part of the state's continuing statutory revision program under Chapter 323, Government Code. This Act is a revision of statutes, without substantive change, for purposes of Article III, Section 43, of the Texas Constitution and has the purposes of:

*(2) the funding needed to support the adequate regulation of industrial solid waste and hazardous waste generation, storage, processing, and disposal activities, which considers authorized facility capacity and the variation in the cost of regulating different types of facilities;*

*(3) promoting the efficient and effective use of existing hazardous waste storage, processing, and disposal facilities within the state;*

*(4) whether a volume of waste received by a commercial facility has been or will be assessed a commercial hazardous waste fee at other commercial facilities under Section 361.138; and*

*(5) the prevailing rates of similar fees for hazardous waste activities charged in other states to which wastes from this state may be exported or from which wastes may be imported for storage, processing, or disposal.*

SECTION 25. Section 361.153, Health and Safety Code, is amended to conform to Section 2, Chapter 1143 (S.B. 1519), Acts of the 71st Legislature, Regular Session, 1989, and to read as follows:

Sec. 361.153. COUNTY SOLID WASTE PLANS AND PROGRAM; FEES. *(a)* A county may[:

[(1)] appropriate and spend money from its general revenues to manage solid waste and to administer a solid waste program and may charge reasonable fees for those services.

*(b) As sufficient funds are made available by the department, a county shall* [; and (2)] develop county solid waste plans and coordinate those plans with the plans of:

*(1) local governments, regional planning agencies, other governmental entities, and the department, as prescribed by Subchapter D, Chapter 363; and*

*(2) the commission.*

SECTION 26. Section 361.227, Health and Safety Code, is amended to conform to Section 1, Chapter 639 (S.B. 1511), Acts of the 71st Legislature, Regular Session, 1989, and to read as follows:

Sec. 361.227. VENUE. A suit for injunctive relief or for recovery of a civil penalty, or for both, may be brought in:

*(1) the county in which the defendant resides;*

*(2)* [or in] *the county in which the violation or threat of violation occurs; or*

*(3) Travis County if the suit involves an unpermitted municipal solid waste facility.*

SECTION 27. Chapter 361, Health and Safety Code, is amended to conform to Section 2, Chapter 639 (S.B. 1511), Acts of the 71st Legislature, Regular Session, 1989, by adding Section 361.230 to read as follows:

*Sec. 361.230. FEES AND COSTS RECOVERABLE. If the attorney general or a local government institutes a suit under this subchapter or Subchapter I for injunctive relief, recovery of a civil penalty, or both injunctive relief and a civil penalty, the prevailing party may recover its reasonable attorney's fees, court costs, and reasonable investigative costs incurred in relation to the proceeding. However, the amount awarded by the court may not exceed $250,000.*

SECTION 28. Subsection (c), Section 361.321, and Sections 361.322 and 361.341, Health and Safety Code, are amended to conform to Section 3, Chapter 703 (S.B. 1502), Acts of the 71st Legislature, Regular Session, 1989, and to read as follows:

(c) Except as provided by *Section 361.322(a)* [Section 361.322(b)], the petition must be filed not later than the 30th day after the date of the ruling, order, decision, or other act of the governmental entity whose action is appealed. Service of citation must be accomplished not later than the 30th day after the date on which the petition is filed.

Sec. 361.322. APPEAL OF ADMINISTRATIVE ORDER ISSUED UNDER SECTION 361.272; JOINDER OF PARTIES. (a) *Any person subject to an administrative order under Section 361.272 may appeal the order by filing a petition before the 46th day*

*after the date of receipt, hand delivery, or publication service of the order.* [A person filing a petition appealing an administrative order issued under Section 361.272 must join as a party the state agency issuing the administrative order and may join as a party:

[(1) any other person named in the administrative order; and

[(2) any other person who is or may be liable for the elimination of the actual or threatened release of solid waste governed by the administrative order.]

(b) The plaintiff shall pursue the action with reasonable diligence. The court shall presume that the action has been abandoned if the plaintiff does not prosecute the action within one year after it is filed and shall dismiss the suit on a motion for dismissal made by the governmental entity whose action is appealed unless the plaintiff, after receiving notice, can show good and sufficient cause for the delay.

(c) The filing of *a motion for rehearing under the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes) is not a prerequisite for an appeal of the order.*

*(d) The person appealing the order must join the state agency issuing the administrative order as a party and may join as parties any other person named as a responsible party in the administrative order and any other person who is or may be liable for the elimination of the actual or threatened release of solid waste or hazardous substances governed by the administrative order.*

*(e) The filing of the petition does not prevent the state agency issuing the administrative order from proceeding with the remedial action program under Subchapter F unless the court enjoins the remedial action under its general equity jurisdiction* [the petition before the 46th day after the date of receipt, hand delivery, or publication service of the order stays the order as to the appealing party pending action by the district court. The filing of the petition does not affect other enforcement powers of the department or commission].

*(f)* [(d)] The administrative order is final as to a nonappealing party on the 46th day after the date of receipt, hand delivery, or publication service of the order by, to, or on the nonappealing party.

*(g)* [(e)] The district court shall uphold the *administrative* order if the [department or the] commission[, by a preponderance of the evidence,] proves *by a preponderance of the evidence* that:

(1) there is an actual or threatened release of solid waste *or hazardous substances* that is an imminent and substantial endangerment to the public health and safety or the environment; and

(2) the person made subject to the administrative order is liable for the elimination of the release or threatened release, in whole or in part.

*(h) If the appropriateness of the selected remedial action is contested in the appeal of the administrative order, the remedial action shall be upheld unless the court determines that the remedy is arbitrary or unreasonable.*

*(i)* [(f)] A person made a party to the appeal may join as a party any other person who is or may be liable for the elimination of the release or threatened release, but the failure by a party to file an action for contribution or indemnity does not waive any right under this chapter or other law.

*(j)* [(g)] In an appeal under this section, the district court on establishing the validity of the order shall issue an injunction requiring any person named or joined against whom liability has been established by the department or the commission or other party to comply with the order.

*(k)* [(h)] As between parties determined to be liable under Subchapter I, the court may, as equity requires, apportion cleanup costs in accordance with Section 361.343 and grant any other appropriate relief.

Sec. 361.341. COST RECOVERY BY STATE. (a) The state is entitled to recover reasonable attorney's fees, reasonable costs to prepare and provide witnesses, and reasonable costs of investigating and assessing the facility or site if it prevails in:

(1) an appeal of an administrative order issued under Section 361.272 or Section *361.188* [361.191];

(2) an action to enforce such an administrative order;

(3) a civil suit seeking injunctive relief under Section 361.273; or

(4) a cost recovery suit under Section *361.197* [361.190].

(b) The court shall apportion the costs among liable parties as it determines is equitable and just.

(c) *All such costs recovered by the state under Subchapter F shall be remitted to the commission and deposited to the credit of a separate account of the hazardous waste disposal fee fund. All other costs recovered by the state under Sections 361.271 through 361.277 shall be remitted to the commission and deposited to the credit of a separate account of the hazardous waste generation and facility fees fund* [Costs recovered by the state under this section shall be:

[(1) remitted to the commission; and

[(2) placed in a separate account in the hazardous waste generation and facility fees fund for use by the commission to administer the hazardous waste management program].

*(d) If an appeal or third party claim is found by the court to be frivolous, unreasonable, or without foundation, the court may assess damages against the party bringing the appeal or third party claim in an amount not to exceed twice the costs incurred by the state or the third party defendant, including reasonable attorney's fees, reasonable costs of preparing and providing witnesses, and reasonable costs of studies, analyses, engineering reports, tests, or other projects the court finds were necessary for the preparation of the party's case.*

SECTION 29. Subchapter F, Chapter 361, Health and Safety Code, is amended to conform to Section 5, Chapter 703 (S.B. 1502), Acts of the 71st Legislature, Regular Session, 1989, and to read as follows:

## SUBCHAPTER F. REGISTRY AND CLEANUP OF CERTAIN

## HAZARDOUS WASTE FACILITIES

*Sec. 361.181. STATE REGISTRY: ANNUAL PUBLICATION. (a) The commission shall annually publish an updated state registry identifying, to the extent feasible, each facility that may constitute an imminent and substantial endangerment to public health and safety or the environment due to a release or threatened release of hazardous substances into the environment.*

*(b) The registry shall identify the relative priority for action at each listed facility. The relative priority for action at facilities listed on the registry shall be periodically reviewed and revised by the commission as necessary to accurately reflect the need for action at the facilities.*

*(c) In this subchapter, "facility" means any building, structure, installation, equipment, pipe, or pipeline (including any pipe into a sewer or publicly owned treatment works, well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft), or any site or area where a hazardous substance has been deposited, stored, disposed of, or placed or otherwise come to be located. The term does not include any consumer product in consumer use or any vessel.*

*Sec. 361.182. INVESTIGATIONS. (a) The executive director may conduct investigations of facilities that are listed on the state registry, or that the executive director has reason to believe should be included on the state registry, in accordance with Sections 361.032, 361.033, and 361.037.*

*(b) If there is a reasonable basis to believe there may be a release or threatened release of a hazardous substance at a facility, the executive director may submit requests for information and requests for the production of documents to any person who has or may have information or documents relevant to:*

66

(1) the identification, nature, or quantity of materials that have been generated, treated, stored, or disposed of at a facility or transported to a facility;

(2) the identification of soils, groundwater, or surface water at a facility that have been or may be affected by an actual or threatened release of a hazardous substance;

(3) the nature or extent of a release or threatened release of a hazardous substance at or from a facility; or

(4) the ability of a person to pay for or to perform a remedial action.

(c) If the requested information or documents are not produced in a timely manner, the commission may issue an order directing compliance with the requests for information or production of documents. Information or documents requested under Subsection (b) or this subsection are public records, except that the commission shall consider the copied records as confidential if a showing satisfactory to the commission is made by the owner of the records that the records would divulge trade secrets if made public. This subsection does not require the commission to consider the composition or characteristics of hazardous substances being processed, stored, disposed of, or otherwise handled to be held confidential.

(d) The commission shall adopt rules regarding the provision of notice and an opportunity for a hearing before the commission on whether the requested information or documents should be produced.

Sec. 361.183. REGISTRY LISTING PROCEDURE: DETERMINATION OF ELIGIBILITY. (a) Before the listing of a facility on the state registry, the executive director shall determine whether the potential endangerment to public health and safety or the environment at the facility can be resolved by the present owner or operator under the federal Resource Conservation and Recovery Act of 1976 (42 U.S.C. Section 6901) or by some or all of the potentially responsible parties identified in Subchapter I, under an agreed administrative order issued by the commission.

(b) If the potential endangerment to public health and safety or the environment can be resolved in such a manner, the facility may not be listed on the state registry. Notice of the approach selected to resolve the apparent endangerment to public health and safety or the environment and the fact that this action is being taken in lieu of listing the facility on the state registry shall be published in the Texas Register.

(c) If after reasonable efforts the executive director determines that the potential endangerment to public health and safety or the environment cannot be resolved by either of the approaches under Subsection (a), the executive director shall evaluate the facility to determine whether the site exceeds the commission's minimum criteria for listing on the state registry. The commission by rule shall adopt the minimum criteria. The executive director shall also evaluate the facility to determine whether it is eligible for listing on the federal National Priorities List.

(d) The commission shall proceed under this subchapter only if, based on information available to the executive director, the facility is eligible for listing on the state registry but not eligible for the federal National Priorities List.

Sec. 361.184. REGISTRY LISTING PROCEDURE: NOTICES AND HEARING. (a) If the executive director determines that a facility is eligible for listing on the state registry, the commission shall publish in the Texas Register and in a newspaper of general circulation in the county in which the facility is located a notice of intent to list the facility on the state registry. The notice shall at least specify the name and location of the facility, the general nature of the potential endangerment to public health and safety or the environment as determined by information available to the executive director at that time, and the duties and restrictions imposed by Subsection (c). The notice also shall provide that interested parties may do either or both of the following:

(1) submit written comments to the commission relative to the proposed listing of the facility; or

(2) request a public meeting to discuss the proposed listing by submitting a request not later than the 30th day after the date on which the notice is issued.

(b) If the facility is determined to be eligible for listing on the state registry, the executive director shall make all reasonable efforts to identify all potentially responsible parties for remediation of the facility. Concurrent with the publication of general notice under Subsection (a), the executive director shall provide to each identified potentially responsible party direct, written notification of the proposed listing of the facility on the state registry and of the procedures for requesting a public meeting to discuss the listing and the information included in the general notice as required by Subsection (a). Written notifications under this subsection shall be by certified mail, return receipt requested, to each named responsible party at the party's last known address.

(c) If a public meeting is requested regarding the proposed listing of a facility on the state registry, the commission shall publish general notice of the date, time, and location of the public meeting in the Texas Register and in the same newspaper in which the notice of the opportunity to request the public meeting was published. The public meeting notice shall be provided not later than the 31st day before the date of the meeting. Notice of the meeting also shall be provided by certified mail, return receipt requested, to each identified potentially responsible party at the party's last known address.

(d) Nonreceipt of any notice mailed to a potentially responsible party under Subsection (b) or this subsection does not affect the responsibilities, duties, or liabilities imposed on the party. Contemporaneously with issuing the notice of the public meeting, the executive director shall make available to all interested parties the public records the executive director has regarding the facility. For the purposes of providing this information, the executive director shall provide a brief summary of those public records and make those public records available for inspection and copying during regular business hours.

(e) A public meeting is legislative in nature and not a contested case hearing under the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes). The meeting shall be held for the purpose of obtaining additional information regarding the facility relative to the eligibility of the facility for listing on the state registry and the identification of potentially responsible parties.

(f) After the public meeting or after opportunity to request a public meeting has passed, the commission shall file or cause to be filed an affidavit or notice in the real property records of the county in which the facility is located identifying the facility as one proposed for listing on the state registry unless the executive director determines, based on information presented at the public meeting, that efforts to list the facility on the state registry should not be pursued.

Sec. 361.185. INVESTIGATION/FEASIBILITY STUDY. (a) After the public meeting or after opportunity to request a public meeting has passed, but before any listing of the facility on the state registry, the commission shall allow all identified potentially responsible parties the opportunity to fund or conduct, if appropriate, a remedial investigation/feasibility study, or a similar study as approved by the executive director, for the facility. Not later than the 90th day after notice under Section 361.184(a) is issued, the potentially responsible parties may make a good faith offer to conduct the study. If a good faith offer from all or some of the potentially responsible parties is received by the commission within that period, those making the offer have an additional 60 days within which to negotiate an agreed administrative order from the commission, which must include a scope of work. In the agreed administrative order the commission may not require the participating potentially responsible parties to agree to perform the remedial action or admit liability for the facility remediation.

(b) If no potentially responsible party makes a good faith offer to conduct the remedial investigation/feasibility study or similar study as approved by the executive director or if the participating potentially responsible parties fail to conduct or

complete an approved study, the commission may conduct or complete the study using funds from the hazardous waste disposal fee fund.

(c) To encourage potentially responsible parties to perform the remedial investigation/feasibility study or other similar study as approved by the executive director, costs for commission oversight of the study may not be assessed against those parties who fund or perform the study. Nonparticipating potentially responsible parties who are ultimately determined to be liable for remediation of the facility under this chapter or who subsequently enter into an agreed order relative to the remediation of the facility may be assessed up to the full costs for commission oversight of the study process. If all potentially responsible parties participate or agree to fund the remedial investigation/feasibility study or other similar study, all commission oversight costs shall be paid from the hazardous waste disposal fee fund.

Sec. 361.186. FACILITY ELIGIBLE FOR LISTING: ACTIVITIES AND CHANGE OF USE. (a) If the executive director determines that a facility is eligible for listing on the state registry, a person may not perform at the facility any partial or total removal activities except as authorized by the executive director in appropriate circumstances after notice and opportunity for comment to all other potentially responsible parties. The commission may adopt rules determining what constitutes an appropriate circumstance to take removal action under this subsection. Authorization by the executive director to conduct a partial or total removal action does not constitute:

(1) a final determination of the party's ultimate liability for remediation of the facility; or

(2) a determination of divisibility.

(b) If the facility is determined to be eligible for listing on the state registry, the owner or operator of the facility must provide the executive director with written notice of any substantial change in use of the facility before the 60th day before the date on which the change in use is made. Notice of a proposed substantial change in use must be in writing, addressed to the executive director, sent by certified mail, return receipt requested, and include a brief description of the proposed change in use. A substantial change in use shall be defined by rule and must include actions such as the erection of a building or other structure at the facility, the use of the facility for agricultural production, the paving of the facility for use as a roadway or parking lot, and the creation of a park or other public or private recreational use on the facility.

(c) If, within 30 days after the date of the notice, the executive director determines that the proposed substantial change in use will interfere significantly with a proposed or ongoing remedial investigation/feasibility study or similar study approved by the executive director or expose the public health and safety or the environment to a significantly increased threat of harm, the executive director shall notify the owner or operator of the determination. After the determination is made and notification given, the owner or operator may not proceed with the proposed substantial change in use. The owner or operator may request a hearing before the commission on whether the determination should be modified or set aside by submitting a request not later than the 30th day after the receipt of the executive director's determination. If a hearing is requested, the commission shall initiate the hearing not later than the 45th day after the receipt of the request. The hearing shall be conducted in accordance with the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes). The executive director's determination becomes unappealable on the 31st day after issuance if a hearing is not requested.

Sec. 361.187. PROPOSED REMEDIAL ACTION. (a) Within a reasonable time after the completion of the remedial investigation/feasibility study or other similar study, if required, the executive director shall select a proposed remedial action. After the selection of a proposed remedial action, the commission shall hold a public meeting to discuss the proposed action.

69

*(b) The commission shall publish notice of the meeting in the Texas Register and in a newspaper of general circulation in the county in which the facility is located at least 45 days before the date of the public meeting. The notice shall provide information regarding the proposed remedial action and the date, time, and place of the meeting. The commission shall also mail the same information to each potentially responsible party by certified mail, return receipt requested, at the party's last known address at least 45 days before the public meeting. Contemporaneously with the issuance of notice of the public meeting, the executive director shall make available to all interested parties the public records the executive director has regarding the facility. For purposes of providing this information, the executive director shall provide a brief summary of those public records and make those public records available for inspection and copying during regular business hours. Nonreceipt of any notice mailed to a potentially responsible party under this section does not affect the responsibilities, duties, or liabilities imposed on the party.*

*(c) The public meeting is legislative in nature and not a contested case hearing under the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes). The meeting shall be held for the purpose of obtaining additional information regarding the facility and the identification of additional potentially responsible parties. Those in attendance may comment on the proposed remedial action, and the executive director may revise the proposed remedial action in light of the presentations.*

*(d) After the public meeting on the proposed remedial action, the commission shall provide all identified potentially responsible parties an opportunity to fund or perform the proposed remedial action. Not later than the 60th day after the date of the public meeting, the potentially responsible parties may make a good faith offer to fund or perform the proposed remedial action. If a good faith offer is made by all or some of the potentially responsible parties within this period, those parties have an additional 60 days to negotiate an agreed administrative order from the commission, which shall include a scope of work. The commission may not require an admission of liability in the agreed administrative order.*

*(e) To encourage potentially responsible parties to perform the remedial action, costs for commission oversight of the remedial action may not be assessed against those parties who fund or perform the remedial action. Nonparticipating potentially responsible parties who are ultimately determined to be liable for remediation of the facility may be assessed up to the full costs for commission oversight of the remedial action. If all potentially responsible parties conduct or fund the remedial action, all commission oversight costs shall be paid from the hazardous waste disposal fee fund. Participation in the remedial action does not relieve those who did not conduct or fund the remedial investigation/feasibility study or other similar study approved by the executive director from paying their portion of the oversight costs of that phase of the remediation.*

*(f) The executive director may authorize a potentially responsible party to conduct a partial remedial action at a portion of the facility if after notice and opportunity for comment to all other potentially responsible parties the executive director determines that the release or threatened release is divisible. In this subchapter, "divisible" means that the hazardous substance released or threatened to be released is capable of being managed separately under the remedial action plan. A determination of divisibility by the executive director does not have res judicata or collateral estoppel effect on a potentially responsible party's ultimate liability for remediation of the facility under Subchapter G or I.*

Sec. 361.188. *FINAL ADMINISTRATIVE ORDER. (a) After consideration of all good faith offers to perform a remedial action, the commission shall issue a final administrative order that must:*

*(1) list the facility on the state registry, thus determining that the facility poses an imminent and substantial endangerment to public health and safety or the environment;*

*(2) specify the selected remedial action;*

70

(3) list the parties determined to be responsible for remediating the facility;

(4) make findings of fact describing actions voluntarily undertaken by responsible parties;

(5) order the responsible parties to remediate the facility and, if appropriate, reimburse the hazardous waste disposal fee fund for remedial investigation/feasibility study and remediation costs;

(6) establish a schedule for completion of the remedial action;

(7) state any determination of divisibility of responsible party liability; and

(8) give notice of the duties and restrictions imposed by Section 361.190.

(b) The provisions in Subchapters I, K, and L relating to administrative orders apply to orders issued under this section.

(c) If a potentially responsible party is newly identified after a final administrative order under Subsection (a) has been issued by the commission, that party has 60 days to negotiate an amendment to the existing order. The commission is not prohibited from issuing a separate order for the newly identified potentially responsible party if the commission determines that the circumstances warrant a separate order. The responsible parties identified in the order issued under Subsection (a) shall be allowed to comment on the issuance of a separate order for the newly identified potentially responsible party.

(d) Within a reasonable period after a determination has been made, the commission shall file or cause to be filed in the real property records of the county in which the facility is located an affidavit or notice stating that the facility has been listed on or deleted from the state registry or is no longer proposed for listing on the state registry.

Sec. 361.189. DELETIONS FROM REGISTRY. (a) Any owner or operator or other named responsible party of a facility listed or to be listed on the state registry may request the commission to delete the facility from the state registry, modify the facility's priority within the state registry, or modify any information regarding the facility by submitting a written statement setting forth the grounds of the request in the form the commission may by rule require.

(b) The commission by rule shall establish procedures, including public hearings, for review of requests submitted under this section.

Sec. 361.190. CHANGE IN USE OF LISTED FACILITY. (a) After the listing of a facility on the state registry, a person may not substantially change the manner in which the facility is used without notifying the executive director and receiving written approval of the executive director for the change.

(b) A substantial change in use shall be defined by rule and shall include actions such as the erection of a building or other structure at the facility, the use of the facility for agricultural production, the paving of the facility for use as a roadway or parking lot, and the creation of a park or other public or private recreational use on the facility.

(c) The notice must be in writing, addressed to the executive director, sent by certified mail, return receipt requested, and include a brief description of the proposed change in use.

(d) The executive director shall approve or disapprove the proposed action within 60 days after the date of receipt of the notice of proposed change in use. The executive director may not approve the proposed change in use if the new use will significantly interfere with a proposed, ongoing, or completed remedial action program at a facility or expose the public health and safety or the environment to a significantly increased threat of harm.

Sec. 361.191. IMMEDIATE REMOVAL. (a) If the commission, after investigation, finds that there exists a release or threatened release of a hazardous substance at a facility that is causing irreversible or irreparable harm to the public health and safety or the environment and that the immediacy of the situation makes it preju-

dicial to the public interest to delay action until an administrative order can be issued to potentially responsible parties or until a judgment can be entered in an appeal of an administrative order, the commission may, with the funds available to the commission from the hazardous waste disposal fee fund, undertake immediate removal action at the facility to alleviate the harm.

(b) After the immediate danger of irreversible or irreparable harm has been alleviated, the commission shall proceed under this subchapter.

(c) Findings required under this section must be in writing and may be made ex parte by the commission subject to judicial review under the substantial evidence rule as provided by the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes).

(d) The reasonable expenses of any immediate removal action taken by the commission may be recoverable from the persons described in Subchapter G or I, and the state may seek to recover the reasonable expenses in any court of appropriate jurisdiction.

Sec. 361.192. REMEDIAL ACTION BY COMMISSION. (a) If a person ordered to eliminate an imminent and substantial endangerment to the public health and safety or the environment has failed to do so within the time limits specified in the order or any extension of time approved by the commission, the commission may implement the remedial action program for the facility.

(b) The reasonable expenses of implementing the remedial action program by the commission shall be paid by the persons to whom the order was issued and shall be recoverable under Section 361.197.

Sec. 361.193. GOAL OF REMEDIAL ACTION. (a) The goal of any remedial action is the elimination of the imminent and substantial endangerment to the public health and safety or the environment posed by a release or threatened release of a hazardous substance at a facility. The appropriate extent of the remedial action at any particular facility shall be determined by the commission's selection of the remedial alternative that the commission determines is the lowest cost alternative that is technologically feasible and reliable and that effectively mitigates and minimizes damage to and provides adequate protection of the public health and safety or the environment.

(b) In considering the appropriate remedial action program at a particular facility, the commission may approve a program that does not attain a level or standard of control at least equivalent to a legally applicable or relevant and appropriate standard, requirement, criterion, or limitation, as required by state or local law, if the commission finds that:

(1) the remedial action selected is only part of a total remedial action that will attain that level or standard of control when completed;

(2) compliance with the requirement at that facility will result in greater risk to public health and safety or the environment than alternative options;

(3) compliance with the requirement is technically impracticable from an engineering perspective;

(4) the remedial action selected will attain a standard of performance that is equivalent to that required under the otherwise applicable standard, requirement, criterion, or limitation through use of another method or approach;

(5) with respect to a local standard, requirement, criterion, or limitation, the locality has not consistently applied or demonstrated the intention to consistently apply the standard, requirement, criterion, or limitation in similar circumstances of other remedial actions within the locality; or

(6) with respect to an action using solely state funds, selection of a remedial action that attains those levels or standards of control will not provide a balance between the need for protection of public health and safety or the environment at the facility and the availability of state funds to respond to other sites that present

*a threat to public health and safety or the environment, taking into consideration the relative immediacy of the threats.*

*Sec. 361.194. LIEN. (a) In addition to all other remedies available to the state under this chapter or other law, all remediation costs for which a person is liable to the state constitute a lien in favor of the state on the real property and the rights to the real property that are subject to or affected by a remedial action. This provision is cumulative of other remedies available to the state under this chapter.*

*(b) The lien imposed by this section arises and attaches to the real property subject to or affected by a remedial action at the time an affidavit is recorded and indexed in accordance with this section in the county in which the real property is located. For the purpose of determining rights of all affected parties, the lien does not relate back to a time before the date on which the affidavit is recorded, which date is the lien inception date. The lien continues until the liability for the costs is satisfied or becomes unenforceable through operation of law.*

*(c) An authorized representative of the commission shall execute the affidavit. The affidavit must show:*

*(1) the names and addresses of the persons liable for the costs;*

*(2) a description of the real property that is subject to or affected by the remediation action for the costs or claims; and*

*(3) the amount of the costs and the balance due.*

*(d) The county clerk shall record the affidavit in records kept for that purpose and shall index the affidavit under the names of the persons liable for the costs.*

*(e) The commission shall record a relinquishment or satisfaction of the lien when the lien is paid or satisfied.*

*(f) The lien may be foreclosed only on judgment of a court of competent jurisdiction foreclosing the lien and ordering the sale of the property subject to the lien.*

*(g) The lien imposed by this section is not valid or enforceable if real property, an interest in real property, or a mortgage, lien, or other encumbrance on or against real property is acquired before the affidavit is recorded, unless the person acquiring the real property, an interest in the property, or the mortgage, lien, or other encumbrance on the property had or reasonably should have had actual notice or knowledge that the real property is subject to or affected by a clean-up action or has knowledge that the state has incurred clean-up costs.*

*(h) If a lien is fixed or attempted to be fixed as provided by this section, the owner of the real property affected by the lien may file a bond to indemnify against the lien. The bond must be filed with the county clerk of the county in which the real property subject to the lien is located. An action to establish, enforce, or foreclose any lien or claim of lien covered by the bond must be brought not later than the 30th day after the date of service of notice of the bond. The bond must:*

*(1) describe the real property on which the lien is claimed;*

*(2) refer to the lien claimed in a manner sufficient to identify it;*

*(3) be in an amount double the amount of the lien referred to;*

*(4) be payable to the commission;*

*(5) be executed by the party filing the bond as principal and a corporate surety authorized under the law of this state to execute the bond as surety; and*

*(6) be conditioned substantially that the principal and sureties will pay to the commission the amount of the lien claimed, plus costs, if the claim is proved to be a lien on the real property.*

*(i) After the bond is filed, the county clerk shall issue notice of the bond to the named obligee. A copy of the bond must be attached to the notice. The notice may be served on each obligee by having a copy delivered to the obligee by any person competent to make oath of the delivery. The original notice shall be returned to the office of the county clerk, and the person making service of copy shall make an oath on the back of the copies showing on whom and on what date the copies were served.*

*The county clerk shall record the bond notice and return in records kept for that purpose. In acquiring an interest in real property, a purchaser or lender may rely on and is absolutely protected by the record of the bond, notice, and return.*

*(j) The commission may sue on the bond after the 30th day after the date on which the notice is served but may not sue on the bond later than one year after the date on which the notice is served. The commission is entitled to recover reasonable attorney's fees if the commission recovers in a suit on the lien or on the bond.*

*Sec. 361.195. PAYMENTS FROM HAZARDOUS WASTE DISPOSAL FEE FUND. (a) Money for actions taken or to be taken by the commission in connection with the elimination of an imminent and substantial endangerment to the public health and safety or the environment under this subchapter is payable directly to the commission from the hazardous waste disposal fee fund. These payments include any costs of inspection or sampling and laboratory analysis of wastes, soils, air, surface water, and groundwater done on behalf of a state agency and the costs of investigations to identify and locate potentially responsible parties.*

*(b) The commission shall seek remediation of facilities by potentially responsible parties before expenditure of federal or state funds for the remediations.*

*Sec. 361.196. REMEDIATION: PERMITS NOT REQUIRED; LIABILITY. (a) Potentially responsible parties shall coordinate with ongoing federal and state hazardous waste programs although a state or local permit may not be required for any removal or remedial action conducted on site.*

*(b) Subject to Section 361.193, the state may enforce any federal or state standard, requirement, criterion, or limitation to which the remedial action would otherwise be required to conform if a permit were required.*

*(c) An action taken by the person to contain or remove a release or threatened release in accordance with an approved remedial action plan may not be construed as an admission of liability for the release or threatened release.*

*(d) A person who renders assistance in containing or removing a release or threatened release in accordance with an approved remedial action plan is not liable for any additional remediation costs at the facility resulting solely from acts or omissions of the person in rendering the assistance in compliance with the approvals required by this section, unless the remediation costs were caused by the person's gross negligence or wilful misconduct.*

*(e) Except as specifically provided by this section, these provisions do not expand or diminish the common law tort liability, if any, of private parties participating in a remediation action for civil damages to third parties.*

*Sec. 361.197. COST RECOVERY. (a) The commission shall file a cost recovery action against all responsible parties who have not complied with the terms of an administrative order issued under Section 361.188. The commission shall file the cost recovery action no later than one year after all remedial action has been completed.*

*(b) The state may seek a judgment against the noncompliant parties for the total amount of the cost of the remedial action, including costs of any necessary studies and oversight costs, minus the amount agreed to be paid or expended by any other responsible parties under an order issued under Section 361.188.*

*(c) The action may also include a plea seeking civil penalties for noncompliance with the commission's administrative order and a claim for up to double the state's costs if the responsible party's defenses are determined by the court to be unreasonable, frivolous, or without foundation.*

*Sec. 361.198. ADMINISTRATIVE OR CIVIL PENALTY. (a) A responsible party named in an administrative order who does not comply with the order is subject to the imposition of administrative or civil penalties under Section 361.252. The penalties may be assessed only from the date after which the administrative order becomes nonappealable.*

*(b) The commission may include provisions within an agreed administrative order that stipulate administrative penalty amounts for failure to comply with the order.*

74

*The penalty provisions may be applicable to either or both the remedial investigation/feasibility study and remedial action orders.*

Sec. 361.199. *MIXED FUNDING PROGRAM. The commission by rule shall adopt a mixed funding program in which available money from potentially responsible parties is combined with state or federal funds to clean up a facility in a timely manner. Use of the state or federal funds in a mixed funding approach does not preclude the state or federal government from seeking recovery of its costs from nonparticipating potentially responsible parties.*

Sec. 361.200. *DE MINIMIS SETTLEMENT. The commission shall assess and by rule may develop and implement a de minimis settlement program. Under the program, the commission shall consider the advantages of developing a final settlement with potentially responsible parties that are responsible for only a minor portion of the response costs at a facility because the hazardous substances the party is responsible for are minimal in amount or in hazardous effect by comparison with the hazardous substances attributable to other parties.*

Sec. 361.201. *FINANCIAL CAPABILITY AND FUNDING PRIORITY. (a) The commission may determine whether a potentially responsible party is financially capable of conducting any necessary remediation studies or remedial action. The commission by rule shall adopt the criteria for determination of financial capability.*

*(b) If no financially capable, potentially responsible parties exist for a facility, the commission shall issue an administrative order stating its determination that the facility constitutes an imminent and substantial endangerment and that there are no financially capable, potentially responsible parties. The commission shall then conduct its own remediation study and remedial action, using federal funds if available, or, if federal funds are not available, using state funds from the hazardous waste disposal fee fund.*

*(c) Generally, the remediation of listed facilities shall be achieved first by private party funding, second with the aid of federal funds, and third, if necessary, with state funds from the hazardous waste disposal fee fund.*

Sec. 361.202. *DEADLINE EXTENSIONS. The executive director or the commission may extend any period specified in this section if considered appropriate.*

[Sec. 361.181. REGISTRY. (a) The commission shall publish a registry:

[(1) identifying each facility listed by the survey required under Section 12, Chapter 566, Acts of the 69th Legislature, Regular Session, 1985;

[(2) assigning the relative priority of the need for action at each facility to remedy environmental and health problems resulting from the presence of hazardous waste at those facilities; and

[(3) recommending actions to achieve effective, efficient, and timely cleanup or other resolution of the problems identified for each facility.

[(b) A recommendation under Subsection (a)(3) is not the remedial investigation and feasibility study for the relevant facility but must form the basis for the study.

[Sec. 361.182. INVESTIGATION OF FACILITIES LISTED IN REGISTRY. The commission may, in accordance with Section 361.032, investigate:

[(1) facilities listed in the registry; and

[(2) areas or sites that it has reason to believe should be included in the registry.

[Sec. 361.183. RELATIVE PRIORITY FOR ACTION AT EACH FACILITY LISTED IN REGISTRY. The commission shall, in cooperation with the department and as part of the registry, reassess by January 1 of each year the relative priority of the need for action at each facility listed in the registry to remedy environmental and health problems resulting from the presence of hazardous waste at those facilities. The reassessments shall be made according to new information received from public hearings and other sources.

[Sec. 361.184. REVISION OF REGISTRY; FILING NOTICE. The commission shall:

[(1) revise the registry periodically to:

[(A) add facilities that may be an imminent and substantial endangerment to public health and safety or the environment; and

[(B) delete facilities that have been cleaned up under this subchapter or removed from the registry under Section 361.186; and

[(2) file an affidavit or notice in the real property records of the county in which a facility is located identifying those facilities included in and deleted from the registry.

[Sec. 361.185.  NOTICE OF INCLUSION IN REGISTRY. (a) The commission shall notify in writing any person identified as responsible for all or any part of a facility or area that is not listed in the registry of the contemplated addition of the facility or area in the registry.

[(b) The notice must be sent by certified mail, return receipt requested, to each named responsible person at the person's last known address not later than two months before the revised registry is published.

[(c) The notice must include a description of the duties and restrictions imposed by Section 361.187.

[(d) The failure to receive a notice mailed to a named responsible person under this section does not affect the responsibilities, duties, or liabilities imposed on the person.

[Sec. 361.186.  REQUEST FOR CHANGE IN REGISTRY. (a) An owner or operator of a facility or other named person responsible for a facility listed or to be listed in the registry of the commission under this subchapter may, by submitting a written statement setting forth the grounds of the request in the form as the commission may require, request the commission to:

[(1) delete the facility from the registry;

[(2) modify the facility's priority in the registry; or

[(3) modify information concerning the facility.

[(b) The commission by rule shall establish procedures, including public hearings, for review of requests submitted under this section to delete a facility.

[Sec. 361.187.  CHANGE IN USE OF FACILITY LISTED IN REGISTRY. (a) A person may not substantially change the manner in which a facility listed in the registry is used without notifying the commission and receiving the commission's written approval for the change.

[(b) The commission by rule shall define a substantial change of use and include in the definition:

[(1) the erection of a building or other structure at the facility and similar actions;

[(2) the use of the facility for agricultural production;

[(3) the paving of the facility for use as a roadway or parking lot; and

[(4) the creation of a park or other public or private recreational facility on the facility.

[(c) The notice under Subsection (a) must:

[(1) be in writing and addressed to the executive director;

[(2) include a brief description of the proposed change of use; and

[(3) be submitted at least 60 days before the day physical alteration of the land or construction occurs or, if no alteration or construction is required to initiate the change of use, at least 60 days before the date of change of use.

[(d) The executive director may not approve a change of use under this section if the new use will:

[(1) interfere significantly with a proposed, ongoing, or completed hazardous waste facility remedial action program at the facility; or

[(2) expose the environment or public health to a significantly increased threat of harm.

[Sec. 361.188. CLEANUP OF CERTAIN HAZARDOUS WASTE FACILITIES. The cleanup of a facility identified under Section 361.181 by the commission in the registry and that is an imminent and substantial endangerment to the public health and safety or the environment shall be expedited.

[Sec. 361.189. PRIORITY OF USE OF FUNDS FOR CLEANUP. (a) Payment for cleanup of a facility identified in the registry shall be made in the following order:

[(1) by private funding;

[(2) by federal funding; and

[(3) by state funding from the hazardous waste permit and disposal fee, if approved by the legislature.

[(b) If voluntary assistance from private sources is not available, federal funds must be used for facility cleanup if those funds are available when needed.

[(c) State funds may be used only if funds from a liable person, an independent third person, or the federal government are not available when needed.

[Sec. 361.190. IMMEDIATE REMOVAL ACTION; RECOVERY OF COSTS. (a) The commission may, with the funds available to the commission from the hazardous waste permit and disposal fees if approved by the legislature, undertake immediate removal action at a facility to alleviate irreversible or irreparable harm, if the commission after an investigation finds that:

[(1) a release or threatened release of hazardous waste that is causing irreversible or irreparable harm to the public health and safety or the environment exists at a facility identified by the registry; and

[(2) the immediacy of the situation makes it prejudicial to the public interest to delay action until:

[(A) an administrative order can be issued to a person liable under Section 361.191; or

[(B) a judgment can be entered in an appeal of an administrative order.

[(b) Findings required under Subsection (a) must be made in writing and may be made ex parte. The findings are subject to judicial review under the substantial evidence rule as provided by the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes).

[(c) The reasonable expenses of immediate removal action taken by the commission under this section may be recovered from a person identified as liable under Subchapter I. The state may seek to recover the reasonable expenses in a court of appropriate jurisdiction.

[Sec. 361.191. ADMINISTRATIVE ORDER CONCERNING FACILITY LISTED IN REGISTRY. (a) If the commission finds that there exists an actual or threatened release of hazardous waste at a hazardous waste facility listed in the registry that presents an imminent and substantial endangerment to the public health and safety or the environment, or after any immediate danger of irreversible or irreparable harm is alleviated under Section 361.190, the commission may issue an administrative order to:

[(1) the owner or operator of the facility;

[(2) any other person responsible for the release of hazardous waste or a threatened release at the facility; or

[(3) each of the persons under Subdivisions (1) and (2).

[(b) The order may require a person liable under Subchapter I to:

[(1) develop a remedial action program at the facility, subject to the commission's approval; and

[(2) implement the program within a reasonable time specified by the order.

[(c) The provisions of Subchapters I, K, and L concerning administrative orders apply to an order issued under this section.

[Sec. 361.192.  VOLUNTARY CLEANUP OF FACILITY. (a)  If possible, persons identified as persons liable under Subchapter I should be notified by the commission of an opportunity to participate voluntarily in a cleanup of the facility.

[(b)  If all persons liable under Subchapter I do not volunteer to develop and implement a remedial action program for the facility, private individuals or entities that volunteer to participate in cleanup activities should be allowed to do so and may recover costs under Section 361.344 from liable persons who do not participate in the voluntary cleanup.

[(c)  If no persons liable under Subchapter I volunteer to develop and implement a remedial action program for the facility, independent third persons who volunteer to participate in the cleanup of the facility should be permitted to contract with the commission to do so. Independent third persons may recover costs under Section 361.344 from liable persons who do not participate in the voluntary cleanup.

[Sec. 361.193.  REMEDIAL ACTION PROGRAM BY COMMISSION ON FAILURE OF RESPONSIBLE PERSON. (a)  The commission may develop and implement a remedial action program for a facility if:

[(1)  a person ordered to eliminate an imminent and substantial endangerment to the public health and safety or the environment fails to do so within the time prescribed by the order; and

[(2)  no third person agrees to develop and implement a remedial action program for the facility under Section 361.192(c).

[(b)  Persons to whom the order is issued shall pay the commission's reasonable expenses of developing and implementing the remedial action program. The state may recover those reasonable expenses in a court of appropriate jurisdiction.

[(c)  An action instituted by the commission under this section is subject to Subchapters I, K, and L.

[Sec. 361.194.  REMEDIAL ACTION PROGRAM BY COMMISSION IF NO RESPONSIBLE PERSON. (a)  The commission may develop and implement a remedial action program for a facility identified by the registry if:

[(1)  the commission finds that at the facility there exists a release or threatened release of hazardous waste that presents an imminent and substantial endangerment to the public health and safety or the environment;

[(2)  after a reasonable attempt to determine who may be liable for the release or threatened release in accordance with Section 361.192, the commission cannot:

[(A)  determine who may be liable; or

[(B)  locate a person who may be liable; and

[(3)  no independent third person agrees to develop and implement a remedial action program for the facility under Section 361.192(c).

[(b)  Federal funds shall be used for a cleanup under this section to the extent available when needed in accordance with Section 361.189(b).

[(c)  The commission shall make every effort to obtain appropriate relief from a person subsequently identified or located who is liable for the release or threatened release of hazardous waste at the facility, including recovery of:

[(1)  the cost of developing and implementing a remedial action program;

[(2)  payment of the cost of the program; and

[(3)  reasonable expenses incurred by the state.

[Sec. 361.195.  GOAL OF REMEDIAL ACTION PROGRAM. (a)  The goal of a remedial action program under this subchapter is to eliminate the imminent and substantial endangerment to the public health and safety or the environment posed by a release or threatened release of hazardous waste at a facility.

[(b)  The commission shall determine the appropriate extent of remedy at a particular facility by selecting the lowest cost remedial alternative that:

[(1)  is technologically feasible and reliable; and

78

[(2) effectively mitigates and minimizes damage to and provide adequate protection of the public health and safety or the environment.

[Sec. 361.196. LIEN FOR CLEANUP ACTION. (a) The state has a lien on the real property, and any interest in the real property, that is subject to or affected by a cleanup action for cleanup costs for which a person is liable to the state.

[(b) The lien imposed by this section is perfected and attaches to the affected real property when and not before an affidavit is recorded in accordance with Subsection (d) in the county in which the real property is located.

[(c) The affidavit must be executed by an authorized representative of the commission and must show:

[(1) the name and address of each person liable for the costs;

[(2) a description of the real property that is affected by the cleanup action; and

[(3) the amount of the costs and the amount due.

[(d) The county clerk shall:

[(1) record the affidavit in records kept for that purpose; and

[(2) index the affidavit under the name of each person liable for the costs.

[(e) The lien is effective until the liability for the costs is satisfied or becomes unenforceable by operation of law. The commission shall record a relinquishment or satisfaction of the lien when the lien is paid or satisfied.

[Sec. 361.197. VALIDITY AND ENFORCEABILITY OF LIEN. The lien imposed by Section 361.196 is not valid or enforceable if real property or an interest in the real property or a mortgage, lien, or other encumbrance on or against the property is acquired before the lien is perfected unless the person acquiring the real property or an interest in the real property or acquiring the mortgage, lien, or other encumbrance:

[(1) had or reasonably should have had actual notice or knowledge that the real property is affected by a cleanup action; or

[(2) knows that the state has incurred cleanup costs.

[Sec. 361.198. LIEN FORECLOSURE. The lien may be foreclosed only on judgment of a court of competent jurisdiction foreclosing the lien and ordering the sale of the property subject to the lien.

[Sec. 361.199. FILING OF BOND. (a) If a lien is perfected or attempted to be perfected as provided by Section 361.196, the owner of the real property affected by the lien may file a bond to indemnify against the lien.

[(b) The bond must be filed with the county clerk of the county in which the real property subject to the lien is located.

[(c) An action to establish, enforce, or foreclose a lien or claim of lien covered by the bond must be brought not later than the 30th day after the date of service of notice of the bond.

[(d) The bond must:

[(1) describe the real property on which the lien is claimed;

[(2) refer to the lien claimed in a manner sufficient to identify it;

[(3) be in an amount double the amount of the costs due stated in the lien;

[(4) be payable to the commission;

[(5) be executed by the party filing the bond as principal and a corporate surety authorized under the law of this state to execute the bond as surety; and

[(6) be conditioned substantially that the principal and sureties will pay to the commission the amount of the lien claimed, plus costs, if the claim is proved to be a lien on the real property.

[Sec. 361.200. NOTICE OF BOND TO NAMED OBLIGEE. (a) After the bond is filed, the county clerk shall issue notice of the bond to the named obligee. A copy of the bond must be attached to the notice.

[(b) The notice may be served on each obligee by having a copy delivered to the obligee by a person competent to make oath of the delivery.

[(c) The original notice shall be returned to the county clerk, and the person making service of copy shall make an oath on the back of each copy showing on whom and on what date the copy is served. The county clerk shall record the bond notice and return in records kept for that purpose.

[(d) In acquiring an interest in real property, a purchaser or lender may rely on and is absolutely protected by the record of the bond, notice, and return.

[Sec. 361.201. SUIT ON BOND BY COMMISSION. (a) The commission may sue on the bond after the 30th day following the date on which the notice is served under Section 361.200 but may not sue on the bond later than one year after the date on which the notice is served.

[(b) If the commission recovers in a suit on the lien or the bond, it is entitled to recover reasonable attorney's fees.

[Sec. 361.202. COSTS OF CLEANUP PAYABLE TO COMMISSION FROM PERMIT FEES. (a) Money for actions taken or to be taken by the commission to eliminate an imminent and substantial endangerment to the public health and safety or the environment under this subchapter is payable directly to the commission from the hazardous waste permit and disposal fees, if approved by the legislature.

[(b) Costs payable to the commission under this section include costs of inspecting or sampling and laboratory analysis of waste, soil, air, surface water, and groundwater done for the commission.

[Sec. 361.203. PRIVATE PARTY CLEANUP; IMMUNITY. (a) The commission shall seek cleanup of a facility by private individuals or entities before spending federal or state funds for the cleanup.

[(b) Private individual or entities shall coordinate with ongoing federal and state hazardous waste programs and obtain necessary approvals for any cleanup.

[(c) An action taken by the private individual or entity to contain or remove a release or threatened release in accordance with an approved remedial action plan is not an admission of liability for the release or threatened release.

[(d) If a private individual's or entity's actions to contain or remove a release or threatened release comply with an approved remedial action plan, the individual or entity is not liable for additional cleanup costs at the facility resulting solely from an act or omission of that individual or entity, unless the cleanup costs are caused by that individual's or entity's gross negligence or wilful misconduct.

[(e) Except as specifically provided, this section does not expand or diminish the common law tort liability, if any, of a private individual or entity participating in a cleanup action for civil damages to a third person.]

SECTION 30. Chapter 361, Health and Safety Code, is amended to conform to Section 6, Chapter 703 (S.B. 1502), Acts of the 71st Legislature, Regular Session, 1989, by adding Subchapter M to read as follows:

### SUBCHAPTER M. REMOVAL AND REMEDIAL ACTION AGREEMENTS

*Sec. 361.401. DEFINITIONS. In this subchapter:*

*(1) "Disposal facility" means a site or area at which a hazardous substance, pollutant, or contaminant has been deposited, stored, disposed of, or placed or otherwise come to be located that no longer receives hazardous substances, pollutants, and contaminants.*

*(2) "Fund" means the hazardous waste disposal fee fund.*

*(3) "Petroleum" means crude oil or any fraction of crude oil that is not otherwise listed or designated as a hazardous substance under Section 361.003(13)(A).*

*(4) "Pollutant" or "contaminant" means any element, substance, compound, or mixture, including disease-causing agents, that after release into the environment*

Sec. 14a(c); and

Sec. 15.

### Article 4.  Emergency

SECTION 1.  The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted.

Passed the Senate on June 5, 1990, by the following vote: Yeas 30, Nays 0; passed the House on June 6, 1990, by a non-record vote.

Approved June 14, 1990.

Effective Sept. 6, 1990, 90 days after date of adjournment.

---

## CHAPTER 11

### S.B. No. 49

AN ACT

relating to the County Court at Law of Nacogdoches County.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1.  Subsection (a), Section 25.1762, Government Code, is amended to read as follows:

(a) In addition to the jurisdiction provided by Section 25.0003 and other law, a county court at law in Nacogdoches County has:

*(1)  the probate jurisdiction provided by general law for county courts; and*

*(2)  concurrent jurisdiction with the district court in:*

*(A)  civil cases in which the matter in controversy exceeds $500 and does not exceed $50,000, excluding interest and attorney's fees;*

*(B)  appeals of final rulings and decisions of the Industrial Accident Board, regardless of the amount in controversy; and*

*(C)  family law cases and proceedings.*

SECTION 2.  Effective January 1, 1991, Subsection (a), Section 25.1762, Government Code, is amended to read as follows:

(a) In addition to the jurisdiction provided by Section 25.0003 and other law, a county court at law in Nacogdoches County has:

*(1)  the probate jurisdiction provided by general law for county courts; and*

*(2)  concurrent jurisdiction with the district court in:*

*(A)  civil cases in which the matter in controversy exceeds $500 and does not exceed $50,000, excluding interest and attorney's fees;*

*(B)  appeals of final rulings and decisions of the Texas Workers' Compensation Commission, regardless of the amount in controversy; and*

*(C)  family law cases and proceedings.*

SECTION 3.  Subsection (d), Section 25.1762, Government Code, is amended to read as follows:

(d) A judge of a county court at law shall be paid an annual salary that is at least $15,000 but not more than *90* [80] percent of the total annual salary paid to the judge of the 145th Judicial District.  The salary shall be paid out of the county treasury on orders from the commissioners court.  A county court at law judge is entitled to reasonable